# **Exhibit E**

Document: Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582  Actions

Folders  History  Help  More

Go to  Page  Page #  Search Document

## Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582

Copy Citation

United States Court of Appeals for the Fifth Circuit

March 14, 1980

No. 78-1061.

**Reporter**
613 F.2d 582 * | 1980 U.S. App. LEXIS 19628 ** | 205 U.S.P.Q. (BNA) 489 ***

MALTINA CORPORATION and Julio Blanco-Herrera, Plaintiffs-Appellees, v. CAWY BOTTLING CO., INC., Defendant-Appellant.

**Prior History:** [**1] Appeal from the United States District Court for the Southern District of Florida.

## Core Terms

infringement, expenses, district court, sales, accounting, deductions, gross profit, overhead, trademark, unjust enrichment, plaintiffs', cases, damages, RATIO, actual damage, total sale, net loss, diverted, register, profits, willful, deter

## Case Summary

**Procedural Posture**
Defendant appealed the judgment of the United States District Court for the Southern District of Florida enjoining it from further trademark infringement, awarding plaintiffs actual damages, and ordering defendant to account for gross profits earned from the sale of infringing products under 15 U.S.C.S. § 1117.

**Overview**
The district court had dismissed plaintiffs' suit under 15 U.S.C.S. § 1117 for trademark infringement and unfair competition, which sought an injunction against further use of their mark, damages, and an accounting. The appellate court reversed, holding that Cuba's confiscation decree did not extend to a mark registered by the United States Patent Office. On remand, the district court determined that plaintiffs had a valid trademark, and defendant sought review. On appeal, the court found that it was proper to order defendant to account for the profits it earned from its willful infringement, as defendant had been unjustly enriched and an accounting was necessary to deter defendant from future infringement. The court affirmed the order for defendant to account for its entire gross profit, holding that defendant had failed to meet its burden of showing its expenses, but reversed the award of actual damages because plaintiffs had failed to show their damages.

**Outcome**
An injunction and order of accounting was affirmed because defendant had been unjustly enriched by its willful trademark infringement, and it was necessary to deter future infringements; the award of actual damages to plaintiffs was reversed because plaintiffs had failed to prove damages from the infringement.

## LexisNexis® Headnotes

Copyright Law > ... > Damages > Types of Damages > Infringement Profits
Trademark Law > ... > Remedies > Equitable Relief > Equitable Accountings

View more legal topics

**HN1** Types of Damages, Infringement Profits

15 U.S.C.S. § 1117 entitles a markholder to recover, subject to the principles of equity, the profits earned by a defendant from infringement of the mark. More like this Headnote

Shepardize® - Narrow by this Headnote (5) 1

Civil Procedure > Preliminary Considerations > Equity > General Overview
Trademark Law > ... > Remedies > Damages > General Overview

Contracts Law > Personal Property ▾
Trademark Law > ... > Remedies ▾ > Equitable Relief ▾ > Equitable Accountings ▾
View more legal topics

**HN3** Contracts Law, Personal Property

A trademark is a protected property right.  More like this Headnote

*Shepardize® - Narrow by this Headnote (2)*

Copyright Law > ... > Damages ▾ > Types of Damages ▾ > Infringement Profits ▾
Trademark Law > ... > Remedies ▾ > Damages ▾ > General Overview ▾

**HN4** Types of Damages, Infringement Profits

An accounting is proper even if the defendant and plaintiff are not in direct competition, and the defendants' infringement has not diverted sales from the plaintiff.  More like this Headnote

*Shepardize® - Narrow by this Headnote (20)*   2

Evidence > Burdens of Proof ▾ > General Overview ▾
Trademark Law > ... > Remedies ▾ > Damages ▾ > General Overview ▾
View more legal topics

**HN5** Evidence, Burdens of Proof

Under 15 U.S.C.S. § 1117, the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product. The defendant has the burden of showing all elements of cost and other deductions.  More like this Headnote

*Shepardize® - Narrow by this Headnote (9)*  2

Trademark Law > ... > Remedies ▾ > Damages ▾ > General Overview ▾

**HN6** Remedies, Damages

A proportionate share of overhead is not deductible when the sales of an infringing product constitute only a small percentage of total sales.  More like this Headnote

*Shepardize® - Narrow by this Headnote (11)*   2   3

**Counsel:** Hal. P. Dekle ▾, 412 Madison St., Suite 808, Tampa, FL 33602

Peter M. Lopez, Suite 202, Roberts Bldg., 28 W. Flagler St., Miami, FL 33130 For Appellant

GIPPLE & HALE ▾, P.O. Box 40513 Washinton, D.C. 20016

J. W. Gipple ▾, P.O. Box 40513 Washington, D.C. 20016 For Appellee

**Opinion by:** JOHNSON ▾

## Opinion

[***490]  [*583]  Before GEWIN, RUBIN and SAM D. JOHNSON ▾, Circuit Judges.

SAM D. JOHNSON ▾, Circuit Judge:

I. The Facts

Cawy Bottling Company (Cawy), defendant below, appeals from the judgment of the district court in favor of the plaintiffs Maltina Corporation and Julio Blanco-Herrera in their trademark infringement action. The district court enjoined Cawy from further infringement, awarded the plaintiffs $35,000 actual damages, and ordered the defendant to account for $55,050 of gross profit earned from the sale of infringing products.

Julio Blanco-Herrera fled to this country from Cuba in late 1960 after that country nationalized the company of which he was president and, along with his family, majority stockholder. Before that year, this company was one of the largest breweries and beverage [**2] distributors in Cuba. Among its products was malta, a dark, non-alcoholic carbonated beverage brewed similar to beer. The Cuban company distributed malta under the trademarks "Malta Cristal" and "Cristal" in Cuba and in the United States. The Cuban company had registered the marks both in Cuba and the United States. When Blanco-Herrera arrived in the United States, he formed the Maltina Corporation and assigned the "Cristal" trademark to it. He attempted to produce and distribute "Cristal" in this country, but despite his efforts Maltina Corporation was never able to obtain sufficient financial backing to produce more than $356 worth of "Cristal".

In 1970 the plaintiffs sued Cawy under 15 U.S.C. [**3] § 1117 for trademark infringement and unfair competition. They sought an injunction against further use of their mark, damages, and an accounting. The district court dismissed the suit on the ground that Cuba's confiscation of the assets of Blanco-Herrera's Cuban corporation made Blanco-Herrera's assignment of the "Cristal" mark to the Maltina Corporation invalid. This Court reversed, holding Cuba's confiscation decree did not extend to the "Cristal" mark registered by the United States Patent Office.Maltina Corp. v. Cawy Bottling Co ., 462 F.2d 1021 (5th Cir.), cert. denied, 409 U.S. 1060, 93 S.Ct. 555 (1972). On remand, the district court determined that the plaintiffs had a valid trademark. Cawy appealed, and we affirmed. Maltina Corp. v. Cawy Bottling Co., 491 F.2d 1391 (1974) (per curiam).

At trial on the merits, from which this appeal is taken, the district court determined **[*584]** that Cawy had infringed the plaintiffs' mark and assigned the case to a magistrate for determination of what recovery was appropriate under 15 U.S.C. Section 1117. Before holding a hearing the magistrate wrote a memorandum to the district court stating that he thought that the plaintiffs [**4] were entitled to an injunction but not to an accounting for defendant's profits.

After holding the hearing, however, the magistrate changed his recommendation. He noted that Cawy designed its "Cristal" label to resemble the label used by Maltina's predecessor in Cuba. He found that Cawy intended to exploit the reputation and good will of the "Cristal" mark and to deceive and mislead the Latin community into believing that the "Cristal" once sold in Cuba was now being sold in the United States.The magistrate further found that Cawy wilfully infringed the plaintiffs' mark and had been unjustly enriched to the detriment of plaintiffs' reputation and good will. He recommended that Cawy account to the plaintiffs for the profit it earned from the infringement, and he directed Cawy to report its sales of "Cristal" and associated costs to the plaintiffs for determination of its profits. The magistrate also found Cawy's infringement damaged the reputation and good will of the plaintiffs in the amount of $35,000. He recommended that Cawy compensate plaintiffs in that amount.

The district court, after a complete and independent review of the record, adopted the magistrate's recommendations [**5] as its order. As more fully discussed below, the district court eventually found Cawy liable to the plaintiffs for its gross profits from the sale of "Cristal", $55,050. The court entered judgment against Cawy for $55,050 gross profits plus $35,000 damages and enjoined Cawy from any further infringement of the plaintiffs' mark.

Cawy presents three arguments on appeal. First, it argues that an accounting was inappropriate. Second, that if an accounting was appropriate, the district court erred in awarding to the plaintiff Cawy's entire gross profits from the sales of "Cristal". Third, Cawy argues that the award of $35,000 actual damages cannot stand in the absence of any evidence to support it. We [***491] accept this final contention, but reject the first two. Cawy does not complain on appeal of the district court's enjoining it from further infringement of the plaintiffs' mark.

II. Was an Accounting Appropriate?

Section 1117, 15 U.S.C., **HN1** entitles a markholder to recover, subject to the principles of equity, the profits earned by a defendant from infringement of the mark. **1** The courts have expressed two views of the circumstances in which an accounting is proper under 15 U.S.C. [**6] Section 1117. Some courts view the award of an accounting as simply a means of compensating a markholder for loss or diverted sales. Other courts view an accounting not as compensation for lost or diverted sales, but as redress **[*585]** for the defendant's unjust enrichment and as a deterrent to further infringement. See Maier Brewing Co. v. Fleischman Distilling Corp ., 390 F.2d 117, 121 (9th Cir.) cert. denied, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968). In this case, the plaintiffs never sold any appreciable amount of "Cristal" in the United States so they cannot claim that Cawy diverted any of their sales. Accordingly, we must decide whether diversion of sales is a prerequisite to an award of an accounting. We hold that it is not.

[**7] In Maier Brewing the Ninth Circuit awarded an accounting to a plaintiff who was not in direct competition with a defendant and who, accordingly, had not suffered any diversion of sales from the defendant's infringement. The court noted that the defendant had wilfully and deliberately infringed. It reasoned that awarding an accounting would further Congress' purpose in enacting 15 U.S.C. Section 1117 of making infringement unprofitable. This Court is in accord with this reasoning. See also Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co ., 349 F.2d 389 (2nd Cir. 1965) (holding that a trademark holder was entitled to an accounting to protect the public from infringement). The Fifth Circuit has not addressed the issue whether an accounting only compensates for diverted sales or whether an accounting serves the broader functions of remedying an infringers unjust enrichment and deterring future infringement. A recent opinion by this Court, however, recognizes that **HN3** a trademark is a protected property right. Austin Professional Hockey Association v. Dallas Cap and Emblem Manufacturing, Inc ., 597 F.2d 71, 75 (5th Cir. 1979). This recognition of a trademark as property [**8] is consistent with the view that **HN4** an accounting is proper even if the defendant and plaintiff are not in direct competition, and the defendants' infringement has not diverted sales from the plaintiff. The Ninth Circuit in Maier Brewing noted that the infringer had used the markholder's property to make a profit and that an accounting would force the infringer to disgorge its unjust enrichment. 390 F.2d at 121. Here, the only valuable property Blanco-Herrera had when he arrived in this country was his right to the "Cristal" mark. Cawy used this property, and an accounting is necessary to partially remedy its unjust enrichment.

The district court relied, in part, on W. E. Bassett Co. v. Revlon, Inc ., 435 F.2d 656 (2nd Cir. 1970), in ordering an accounting. That case held that an accounting should be granted "if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again." Id . at 664. Revlon sold a cuticle trimmer embossed with a "Cuti-Trim" mark "in the teeth of the patent office's refusal to register" that mark. Id . at 662. This was willful infringement that [**9] an accounting would deter in the future. In the instant case, the district court found that Cawy's "infringement was willful and that such infringement resulted in [***492] [Cawy] being unjustly enriched…." Cawy used the "Cristal" mark after the patent office refused to register it. This clearly and explicitly supports the finding of willful infringement. See W. E. Bassett Co., 435 F.2d at 662. An injunction alone will not adequately deter future infringement. See Maier Brewing Co ., 390 F.2d at 123. In short, we find the district court properly ordered Cawy to account to the plaintiffs for the profits it earned from its willful infringement. This accounting serves two purposes: remedying unjust enrichment and deterring future infringement.

enue less cost of goods sold) from the sale of "Cristal". The district court did not allow Cawy to deduct overhead and other expenses. These expenses would have produced a net loss from the sale of "Cristal" and, if [**10] allowed, would have enabled Cawy to escape liability to the plaintiffs for its infringement.

[*586] Under 15 U.S.C. Section 1117, HN5 the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product. The defendant has the burden of showing all elements of cost and other deductions. In this case, the court ordered Cawy to report its total sales of "Cristal" and associated costs to the plaintiffs. If the plaintiffs objected to Cawy's estimate of its net profits from "Cristal", they were to file their objection with the court. The record on appeal reflects that Cawy submitted three exhibits showing its net loss on "Cristal" sales. These exhibits are set out in the appendix. The plaintiffs filed their objections to Cawy's figures with the court. They accepted Cawy's estimate of gross revenues from the sale of "Cristal" and the cost of goods sold. Thus, they met the burden of proving the amount of sales of the infringing product. The plaintiffs, however, did not accept other deductions claimed by Cawy. Cawy claimed deductions for "EXPENSES SPECIFICALLY IDENTIFIED WITH MALTA CRISTAL", as set out in Exhibit 2. Plaintiffs objected to these [**11] claimed deductions because Cawy did not show they were actually spent on "Cristal". Cawy also claimed deductions for general overhead, apportioned to "Cristal" on the basis of the ratio of "Cristal" sales to Cawy's total sales. Exhibit 3 displays these claimed overhead deductions. The plaintiffs objected to the overhead deductions because the infringing product constituted only a small percentage of the defendant's business.

Cawy responded to the plaintiffs' objections by asserting that it did have "specific and detailed figures and corroborating sales slips, invoices and the like to support" its claims of expenses attributable to "Cristal". Cawy failed, however, to submit any of this corroboration to the district court.

The district court, after noting that Cawy had the burden of establishing deductions from gross profits, disallowed Cawy's claims of expenses specifically attributable to "Cristal" as set forth in Exhibit 2. The court stated that it could not determine whether the advertising, sales commissions, legal fees, telephone, and other expenses claimed by Cawy related to "Cristal" sales or to the sales of other products. It then held that Cawy failed to sustain [**12] its burden of proof with respect to those claimed expenses. We cannot say that the district court erred in its holding. The record on appeal, like the record before the district court, simply affords no support for the contention that the claimed "EXPENSES SPECIFICALLY IDENTIFIED WITH MALTA CRISTAL" actually related to "Cristal" sales. Furthermore, Cawy's claims of deductions of legal fees, as the district court noted, would not be allowable in any case. While we cannot tell whether these fees related to this suit, if they did, they would not be deductible.

The district court also disallowed Cawy's deductions of a proportionate part of its overhead expenses as set forth in Exhibit 3. Quoting from Societe Anonyme v. Western Distilling Co., 46 F. 921 (C.C.E.D.Mo.1891), the district court noted, "It appears that 'the unlawful venture increased the gross profits without swelling the gross expenses'." It then held that Cawy failed to sustain its burden of showing the propriety of allowing deductions for overhead. Again, we must agree with the district court that Cawy failed to meet its burden of showing its expenses in the absence from the record on appeal of any evidence that [**13] Cawy's production of "Cristal" actually increased its overhead expenses. Furthermore, we note that HN6 a proportionate share of overhead is not deductible when the sales of an infringing product constitute only a small percentage of total sales. See S. C. Johnson & Son, Inc. v. Drop Dead Co., 144 U.S. P.Q. 257 (S.D.Cal.1965) (disallowing overhead deduction when infringing sales were only 6% of total sales). [***493] Here, on the average, infringing sales constituted just over 6% of total sales. Accordingly, we think it unlikely, especially in the absence of any evidence to the contrary, that Cawy's production of "Cristal" increased its overhead expenses.

The district court properly ordered Cawy to account for its entire gross profit from [*587] the sale of "Cristal". Cawy failed to meet its burden of showing that the overhead and other expenses that it claimed in Exhibits 2 and 3 actually related to the production of "Cristal".

IV. Did the District Court Err in Awarding the Plaintiffs $35,000 as Actual Damages for Cawy's Infringement?

The district court awarded the plaintiffs $35,000 as actual damages from Cawy's infringement. The record, however, is wholly devoid of support [**14] for this figure. Accordingly, we must reverse as to this element. See Donsco, Inc. v. Casper Corp., 587 F.2d 602 (3rd Cir. 1978).

The plaintiffs have never been able to get sufficient financial backing to produce more than a very small amount of "Cristal" in the United States. That inability makes proof of actual damages from Cawy's infringement unlikely. In any event, the plaintiffs have had an opportunity to show their damages and have failed to do so. This Court concludes that plaintiffs should not have another opportunity to show their damages just as Cawy should not have another opportunity to prove its expenses.

In the ten years since the plaintiffs filed their original petition, this case has been before us three times. All litigation must end. We remand only for entry of judgment in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED FOR ENTRY OF JUDGMENT.

APPENDIX

DEFENDANT'S EXMIBIT 1, NET LOSS ON SALES OF MALTA CRISTAL

|  | 1969 | 1970 | 1971 | 1972 |
| --- | --- | --- | --- | --- |
| Revenues from sales of Malts Cristal | $40,032 | $41,705 | $83,861 | $60,119 |
| Less cost of goods sold - Malta | 31,883 | 34,059 | 67,285 | 46,438 |
| GROSS PROFIT | 8,149 | 7,646 | 16,576 | 13,681 |
| Less expenses: |  |  |  |  |
| per exhibit 2 | 8,165 | 6,479 | 10,175 | 17,870 |
| per exhibit 3 | 6,683 | 4,250 | 7,859 | 6,448 |
| TOTAL EXPENSES | 14,848 | 10,729 | 18,034 | 24,318 |

|  | 1971 | 1972 |
|---|---|---|
|  | $ (1,458) | $ (10,637) |

|  | 1973 | 1974 | 1975 | TOTAL |
|---|---|---|---|---|
| Revenues from sales of Malta Cristal | $31,099 | $14,666 |  | $271,482 |
| Less cost of goods sold - Malta | 25,209 | 11,558 |  | 216,432 |
| GROSS PROFIT | 5,890 | 3,108 |  | 55,050 |
| Less expenses: |  |  |  |  |
| per exhibit 2 | 17,007 | 9,353 | 500 | 69,549 |
| per exhibit 3 | 3,199 | 1,762 |  | 30,201 |
| TOTAL EXPENSES | 20,206 | 11,115 | 500 | 99,750 |
| NET LOSS ( ) | $ (14,316) | $ (8,007) | $ (500) | $ (44,700) |

DEFENDANT'S EXMIBIT 2

EXPENSES SPECIFICALY IDENTIFIED WITH, MALTA CRISTAL

|  | 1969 | 1970 | 1971 | 1972 |
|---|---|---|---|---|
| Advertising | $2,277 | $1,723 | $ 4,299 | $13,080 |
| Sales commissions | 3,137 | 3,172 | 5,505 | 4,116 |
| Legal fees | 2,130 | 1,500 | 200 | 483 |
| Telephone and Telegraph | 43 | 84 | 171 | 191 |
| Other | 578 |  |  |  |
|  | $8,165 | $6,479 | $10,175 | $17,870 |

|  | 1973 | 1974 | 1975 | TOTAL |
|---|---|---|---|---|
| Advertising | $13,124 | $6,510 |  | $41,013 |
| Sales commissions | 1,732 | 752 |  | 18,414 |
| Legal fees | 1,988 | 709 |  | 7,010 |
| Telephone and Telegraph | 163 | 13 |  | 665 |
| Other |  | 1,369 | 500 | 2,447 |
|  | $17,007 | $9,353 | $500 | $69,549 |

DEFENDANT'S EXHIBIT 3

EXPENSES RELATED TO MALTA CRISTAL, ALLOCATED BASED ON SALES RATIO

|  | 1969 | 1970 | 1971 | 1972 |
|---|---|---|---|---|
| Malts Cristal cases sold | 15,139 | 15,439 | 30,151 | 21,471 |
| Total number of cases sold | 176,458 | 228,000 | 276,424 | 288,500 |
| Ratio of Malta's cases to total cases sold | 8.58% | 6.77% | 10.91% | 7.44% |
| EXPENSES RELATED TO MALTA: |  |  |  |  |
| 1. Repairs and maintenance | $ 1,323 | $ 524 | $ 762 | $ 1,256 |
| 2. Rent | 6,864 | 6,864 | 7,938 |  |
| 3. Building depreciation |  |  |  | 3,073 |
| 3. Interest - mostly building |  |  |  | 11,958 |
| 4. Taxes other than payroll | 4,932 | 8,065 | 5,645 | 12,456 |
| 5. Payroll taxes | 7,718 | 6,282 | 8,582 | 6,624 |
| 6. Trucks' expenses | 7,238 | 6,301 | 12,502 | 13,083 |
| 7. Utilities | 1,620 |  | 509 |  |
| 5. Indirect labor | 23,156 | 9,360 | 9,360 | 11,305 |
| 5. Officers salaries | 17,500 | 13,000 | 13,000 | 13,000 |
| 8. Office expenses | 403 | 665 |  | 1,046 |
| 9. Sales promotion | 808 | 95 | 275 | 1,513 |
| 10. Insurance | 3,536 | 5,031 | 6,967 | 6,566 |
| 11. Uniforms | 916 | 926 | 1,119 | 1,129 |
| 11. Traveling |  | 2,613 | 2,255 | 324 |
| 11. Accounting fees | 165 | 970 | 800 | 1,485 |
| 11. Miscellaneous | 1,714 | 2,088 | 2,320 | 1,843 |
| TOTAL EXPENSES | 77,893 | 62,784 | 72,034 | 86,661 |
| MALTA TO TOTAL RATIO | 8.58% | 6.77% | 10.91% | 7.44% |
|  | $ 6,683 | $ 4,250 | $ 7,859 | $ 6,448 |

 [**16] 

|  | 1973 | 1974 | 1975 | TOTAL |
|---|---|---|---|---|
| Malta Cristal cases sold | 10,849 | 5,238 | 0 | 98,2… |
| Total number of cases sold | 296,590 | 314,485 | 0 | 1,580,4… |
| Ratio of Malta's cases to total cases sold | 3.66% | 1.67% |  | 6.22… |
| EXPENSES RELATED TO MALTA: |  |  |  |  |
| 1. Repairs and maintenance | $ 663 | $ 1,091 |  | $ 5,6… |
| 2. Rent |  |  |  | 21,6… |
| 3. Building depreciation | 3,073 | 3,073 |  | 9,2… |
| 3.Interest - mostly building | 14,408 | 13,758 |  | 40,1… |
| 4. Taxes other than payroll | 11,964 | 10,791 |  | 53,8… |
| 5. Payroll taxes | 6,859 | 6,787 |  | 42,8… |
| 6. Trucks' expenses | 9,482 | 8,668 |  | 57,2… |

| | | 1975 | TOTAL |
|---|---:|---:|---:|
| | | | 2,1 |
| | | 12,450 | 78,1 |
| | | 31,750 | 101,2 |
| | | 1,503 | 4,3 |
| 9. Sales promotion | | 82 | 2,7 |
| 10. Insurance | 8,722 | 8,265 | 39,0 |
| 11. Uniforms | 1,180 | 1,483 | 6,7 |
| 11. Traveling | 820 | 2,938 | 8,9 |
| 11. Accounting fees | | 2,875 | 6,2 |
| 11. Miscellaneous | 3,980 | | 11,9 |
| TOTAL EXPENSES | 87,398 | 105,514 | 492,2 |
| MALTA TO TOTAL RATIO | 3.66% | 1.67% | |
| | $ 3,199 | $ 1,762 | $30,2 |

See numbered notes on next page.

**Footnotes**



15 U.S.C. § 1117 provides that:

15 U.S.C. § 1117. Same; recovery for violation of rights; profits, damages and costs; attorney fees

HN2 When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party . [Emphasis supplied]