**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 1:23-cv-24350-DPG-GAYLES/LOUIS

LAGUNITAS BREWING COMPANY dba
CERVECERIA LA TROPICAL, and )
LA TROPICAL HOLDINGS B.V.,

      Plaintiffs,

v.

SOLTURA, LLC dba BUCANERO USA,
      Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS COMPLAINT**

Defendant SOLTURA, LLC dba BUCANERO USA ("Defendant"), by and through its undersigned counsel, and pursuant to Rule 12(b)(6), *Federal Rules of Civil Procedure*, hereby moves to dismiss Plaintiffs Complaint for failure to assert any cognizable claim, and states:

## I.      INTRODUCTION.

Plaintiffs are two large multi-billion dollar corporations that sell alcoholic beverages worldwide. (D.E. 1, ¶¶14-15, 43, 45.)  Plaintiffs filed this Complaint with the hope they could use costly litigation to eliminate Defendant as a competitor in the Florida marketplace and beyond. However, the Complaint is factually and legally without merit and must be dismissed.

The Complaint contains a long and largely irrelevant history of how the Cuban government seized personal and business assets during the Cuban revolution (D.E. 1, ¶¶1, 27), and thereafter intermittent and unsuccessful efforts made by families to establish a revamped brand of the Cuban beer "CRISTAL" in the United States. (D.E. 1, ¶¶27-31, 35-37.)

1

The Complaint raises two primary issues that form the basis for the five claims.

**A. The Palm Logo**

Plaintiffs claim that Defendant illegally copied its copyrighted logo and uses it on Defendant's beer label and packaging. Notably, however, Defendant's beer label and federally registered trademark "PALMA" contain a single palm tree in the background[1] (the "Single Palm Logo"); whereas, Plaintiffs label contains three palm trees (the "Three Palm Logo"). The two logos are set forth below and in the Complaint (D.E. 1, ¶¶ 36 and 51). As explained below, Plaintiffs contend they can ban Defendant from use of a palm tree on its label and packaging.  That assertion is legally and factually baseless, and should result in dismissal of the Second and Fifth Claims.



|  |  |
|:---:|:---:|
| (D.E. 1,  ¶36) | (D.E. 1, ¶ 51) |

**B. The False Advertising and Lanham Act Claims.**

Plaintiffs claim Defendant violates the Lanhan Act by using the phrase "La Preferida de CUBA" (which translates into English as "The preferred  one  of  Cuba") and Defendant's dba "Bucanero USA" on its packaging. (D.E. 1, ¶¶6, 7, 58, 63, 64, 114, 125, 127.)  Plaintiffs  allege that  phrase  and  dba  are  illegal  because  they  may  make  consumers  think

---

[1] See Exhibit 1 attached hereto – Defendant's trademark registration referred to at D.E. 1, p. 35 and which was attached as Exhibit A to the Complaint filed in the California litigation.  There has been no question raised regarding the authenticity of the document.

Defendant's beer may be brewed by the Cuban government and imported into the United States in violation of the U.S. embargo against Cuba. (D.E. 1, ¶¶6, 7, 58, 63, 64, 114, 125, 127.) However, no reasonable or rational person would or could draw such a conclusion because, as the Complaint admits: (1) Defendant's beer is produced in Nicaragua as its label states (D.E. 1, ¶7); (2) the name on the beer label is "PALMA" – not "CRISTAL", like the beer produced in Cuba (D.E. 1, ¶61); and (3) there is no allegation where "Bucanero USA" appears on the Defendant's label or packaging[2]. (D.E. 1, ¶64.) To be fair, if any consumer confusion exists as to whether the Cuban government is selling its "CRISTAL" beer in the United States it would be the result of Plaintiff's actions, through its use of the name "CRYSTAL" on its own labels and cans.(D.E. 1-17, ¶48.) Thus, Plaintiffs' contentions are legally and factually baseless, and should result in dismissal of the Third, Fourth and Fifth Claims.

It is also important to note what this case is not about. Notwithstanding the dozens of paragraphs in the Complaint recounting the unfair seizure of assets by the Cuban government, those facts are irrelevant to the actual claims placed at issue in the Complaint. To be clear, Plaintiffs do not assert any claim that Defendant infringed any of Plaintiffs' trademarks or trade dress. Also, Plaintiffs do not seek to enforce any rights they may have with respect to any intellectual property other than the Three Palm Logo.

The tone and tenor of the allegations in the Complaint make clear Plaintiffs are upset that Defendant sells a premium beer called "PALMA" that has a label design similar "CRISTAL" that

---

[2] While the Complaint contains at least 10 images of Defendant's beer can and packaging, Plaintiffs failed to include any image of the cans that state: "Imported by Bucanero USA | Solana Beach, California" next to the statement "Brewed and Canned in Nicaragua by: Compañía Cervecera de Nicaragua S.A".

is brewed by a *non-party* in Cuba, which is not sold in these United States. (D.E. 1, ¶5.) Critically, Plaintiffs do not allege they have any right, title or interest in the Cuban beer or its "CRISTAL" design and label, and Plaintiffs do not allege they have standing to claim Defendant infringed any rights held by the non-party that owns the "CRISTAL" intellectual property.

From all accounts, these Plaintiffs are upset that they did not obtain a trademark and trade dress that closely resembles or pays "homage" to the "CRISTAL" beer label and design that is made by the non-party in Cuba. The Complaint makes clear Plaintiffs are frustrated by their many failed efforts to obtain a trademark for something resembling the "CRISTAL" name and label design (D.E. 1, ¶¶40-42) and were forced to eventually settle for a similar name of "CRYSTAL" in 2021 (D.E. 1, ¶45) and thereafter started selling beer under that name in March 2023. (D.E. 1, ¶46.) Still, Plaintiffs proudly allege the "CRYSTAL" name, label design and beer recipe are based on and pay homage to the Cuban beer "CRISTAL". (D.E. 1, ¶¶3, 44-48, 109, 120.)

The Complaint has no legal or factual merit and must be dismissed. Plaintiffs should use the marketplace to compete against Defendant. Plaintiffs use of this litigation to gain an unfair advantage in the marketplace should not be rewarded. Defendants respectfully requests that this Court grant the pending motion to dismiss the entire action.

## II.    STANDARD FOR MOTION TO DISMISS.

Under *Rule* 12(b)(6), a defendant may move to dismiss a claim against it by asserting the complaint fails state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading standard does not require "detailed factual allegations" but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. Pleadings must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff

must show "more than a sheer possibility that a defendant has acted unlawfully" and "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court may also consider matters incorporated by reference or integral to the claim whose authenticity is unquestioned. 5B *Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure § 1357 (3d ed. 2004).

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT (COUNT I).

Plaintiffs impermissibly brought a claim for declaratory relief because they thought they might be named as defendants in an action for infringement of Defendant's trademark and trade dress. The Complaint alleges that on June 13, 2023 Defendant filed a lawsuit in California against Plaintiffs for infringement that was dismissed on October 20, 2023 for improper venue. (D.E. 1, ¶¶ 88-90, 94.) Even though this Defendant did not refile the California lawsuit, these Plaintiffs filed the instant action on November 13, 2023 alleging this declaratory relief claim. In both substance and effect, Plaintiffs preemptively brought the declaratory relief claim as a *tactical* device to avoid the possibility of becoming the respondent to a lawsuit that alleged Plaintiffs infringement of Defendant's rights. (D.E. 1 at ¶¶ 88-90, 96-97.) However, courts have consistently dismissed declaratory relief claims where a party who would otherwise be a defendant in a coercive action beats the other party to the courthouse to file the claim.

In *State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D. North Carolina, January 7, 1988), the district court addressed an issue similar to that at bar – can a party who anticipates being sued in a coercive action preemptively file a lawsuit invoking the Declaratory Judgment Act to tactically become the plaintiff. The court said "no", found that State Farm's preemptive filing

"flagrantly abused the Federal Declaratory Judgment Act", and dismissed the entire action. Id. at 427-428. The court noted federal law does not mandate that trial courts declare and determine the rights of any interested party, and that courts have discretion to dismiss such claims. Id. at 428-429. A court must balance the plaintiff's need for and the consequences of declaratory relief in the context of the purposes of the declaratory judgment remedy. Id. at 429. The court further explained that in determining whether to entertain a declaratory action, it should consider whether a "useful practical purpose" will be served. In other words, does the declaratory plaintiff *need* the remedy? Id. In that regard, a useful purpose may be served if the party entitled to bring a coercive action fails or delays in bringing it; if a declaration of rights and obligations would prevent the accrual of damages; or if a declaration relieves a party from acting at his peril while uncertain of his legal rights because another party is yet to bring a coercive action. Id. The district court noted no such facts established a useful practical purpose for the claim since there were no allegations that the Taylors had failed or delayed in bringing a coercive action, nor allegations of a potential for the accrual of damages, nor prejudice to State Farm that would justify the filing. Id.

Further, the district court in *State Farm Fire and Cas. Co.* explained that preemptively filing a declaratory relief claim is a disfavored procedure because "It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." Id. at 430. The district court also rejected State Farm's argument that the claim should not be dismissed because it was likely and inevitable that the subject of the declaratory relief claim would eventually be asserted and eventually end up back in that court, explaining that "[t]he short response is simply that a party may not justify the abuse of a procedural and remedial device on the grounds that the correction thereof will result in some inefficiency." Id. at 430-431. The court further explained, "The long response is . . . [a] contrary view would promote a disorderly race to the courthouse. It

would create an environment in which parties to disputes would feel the urgency to file a lawsuit lest they lose a tactical advantage. Such an environment would discourage the *prelitigation* settlement of disputes and thus *prejudice* judicial economy." Id. at 431.

The *State Farm Fire and Cas. Co.* decision has been cited by courts in the Eleventh Circuit that have dismissed tactical anticipatory declaratory relief claims. *See Casualty Indem. Exchange v. High Croft Enterprises, Inc.*, 714 F.Supp.1190, 1193 (S.D. Florida, June 6, 1989) (dismissing complaint and noting, "Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse. *Taylor*, 118 F.R.D. at 431."]; *Terra Nova Ins. Co., Ltd. v. Acer Latin America, Inc.*, 931 F.Supp. 852, 854–855 (S.D. Fla. July 5, 1996) (dismissing complaint and noting, "A declaratory judgment is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse."); *Clark Const. Group, LLC v. Travelers Excess & Surplus Lines Co.*, 470 F.Supp.2d 1350, 1353 (M.D. Florida, December 20, 2006) (dismissing complaint and declining to exercise discretion to decide tactical anticipatory declaratory action.). *See also Bacardi USA, Inc. v. Young's Market Company*, 273 F.Supp.3d 1120 (S.D. Florida May 31, 2016) ("This Court agrees with many others in finding that declaratory actions which merely assert anticipatory defenses to past events are a perversion of the Declaratory Judgment Act. (citations omitted).").

For reasons set forth in the above decisions, this Court should also decline to entertain Plaintiffs tactical declaratory relief claim. The Complaint alleges no facts that a useful practical purpose will be served by entertaining the claim. Additionally, the Complaint does not allege an urgency to proceed with the claim now because this Defendant has failed or delayed to refile the infringement claim in Florida such that Plaintiffs have become prejudiced; or that a declaration of

rights and obligations is necessary now in order to prevent the accrual of damages; or that a declaration of rights now will relieve them from acting at their peril because this Defendant has yet to bring a coercive action. It is respectively submitted that these facts were not alleged because the real reason Plaintiffs filed *this* lawsuit on November 13, 2023 was for tactical reasons – namely that by filing this lawsuit they could be the plaintiffs and preemptively force its competitor to litigate claims on Plaintiffs' preferred timeline, while forcing this Defendant to spend money on legal fees and costs rather than promoting its product, in the hopes of forcing a settlement. This Complaint was brought in anticipation of defenses these Plaintiffs would make if a coercive action is filed against them. For all the reasons explained above, this Court should dismiss the claim.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT (COUNT II).

To establish copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the allegedly infringed work and that (2) the defendant copied original elements of that work. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (2010).  Copying may be proved either directly or indirectly by establishing the defendant had access to the allegedly infringed work and produced something "substantially similar" to the copyrighted work. Id. at 1315. Two works are substantially similar if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Id.

Substantial similarity may be found through either literal similarity or nonliteral similarity. *Palmer v. Braun,* 287 F.3d 1325, 1330 (11th Cir. 2002). Literal similarity may take the form of either an exact copy of the entire work or an exact copy of a portion of the work which is a key element of the copyrighted work. Id. at 1330. Nonliteral similarity is found where "the fundamental essence or structure of one work is duplicated in another." Id. However, even where some form of substantial similarity is shown, there will be no infringement unless the substantial similarity is of

original elements. Original elements include only "original expression, since copyright protection does not extend to ideas ... regardless of their originality." Id. *See also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir. 2000) ("No matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiffs work *with regard to its protected elements.*").

Where a plaintiff "cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the punitive infringing work are strikingly similar." *Calhoun v. Lillenas Publishing,* 298 F.3d 1228, 1232 (11th Cir. 2002). However, a plaintiff who attempts to show "striking similarity" bears a higher burden than one who needs only to show a "substantial similarity." Id. at 1232. A showing of "striking similarity" requires the plaintiff show that the similarity between the two works is so great that it precludes the possibility of coincidence, independent creation or common source. *Benson v. Coca-Cola Co.,* 795 F.2d 973, 975 n.2 (11th Cir. 1986). A showing that the works are so similar that the average observer would believe them the same is not enough. Id. at 975 n.2.

The question of copyright infringement turns largely on whether there is a legally sufficient similarity between the accused work and the plaintiff's copyrighted work. Although this question is subjective, non-infringement may be determined as a matter of law, either because the similarity between the two works concerns non-copyrightable elements of the plaintiff's work, or no reasonable jury, properly instructed, could find that the two works are substantially similar. *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1247 (11th Cir. 1999). Additionally, where the plaintiff seeks to protect only noncopyrightable elements, the court will dismiss the claim as a matter of law. *Portionpac Chemical Corp. v. Sanitech Sys., Inc.,* 217 F.Supp. 2d 1238, 1246 (M.D. Fla. July 25, 2002); *Beal v. Paramount Pictures Corp. et al.,* 20 F.3d 454, 459 (11th Cir. 1994).

As explained below, the Complaint confirms there is no dispute regarding facts indicating a lack of similarity, substantial, striking, or otherwise, between any original elements of the images at issue. Thus, this Court should dismiss the copyright infringement claim.

**A.  Copyright Protection Extends Only to the Expression of an Idea and Not to the Idea Itself.**

Plaintiffs seek to extend protection of their copyright to cover the very concept of a palm tree, which would cover any palm tree having a base, trunk and fronds. But every image of a palm tree shares these features simply because they are what defines a palm tree. To protect this basic combination of features would in effect give Plaintiffs exclusive rights over the very idea of a palm tree, which is expressly prohibited under copyright law. 17 *U.S.C.* § 102(b) ("In no case does copyright protection ... extend to any idea."); *Original Appalachian Artworks, Inc.,* 684 F.2d at 825 n. 5 ("Neither the idea of a soft-sculpture human-figure doll, nor the process of soft sculpture is copyrightable."); *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 344-345 (1991) ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates."). Plaintiffs' position is contrary to the basic tenet of copyright law.

In order to overcome this pending motion to dismiss, Plaintiffs must show Defendant copied some original expression embodied in its logo. The Complaint, of course, does not allege what Plaintiffs consider to be any original expression in the Three Palm Logo. But looking at what the Complaint does allege, the Defendant's logo reflects very little, if anything at all, that is original within the Three Palm Logo. To the contrary, the Three Palm Logo contains three images (1) a shrub, (2) three palm trees, and (3) two hills. (D.E. 1, ¶36.)  As it relates to the alleged infringement, the only idea that appears in *both* logos is a palm tree.  (D.E. 1, ¶¶36, 51.)

However, the law is clear Plaintiffs cannot claim protection in the basic features of a palm tree, without regard to the amount of originality in the expression of those elements, because to do

so would be to claim protection in the very concept of a palm tree itself. Courts have consistently rejected copyright infringement claims of the type made by these Plaintiffs that seek copyright protection in the common stereotypical features shared by inanimate objects, including teddy bears (*see Baby Buddies, Inc.*, 611 F.3d at 1317, 1320 (2010)**,** snowmen (*see Eden Toys, Inc. v. Marshall Field & Co.,* 675 F.2d 498, 499 (2d Cir. 1982), and Santa Clauses and Christmas teddy bears (*see Russ Berrie & Co. v. Jerry Elsner Co., Inc.,* 482 F. Supp. 980, 986 (S.D.N.Y. January 7, 1980)).

Accordingly, the copyright infringement claim must be dismissed.

B. **The Complaint Fails to Allege Facts Of Actual Copying or Substantial/Strikingly Similarities of Original Expressive Elements of The Idea.**

Even if this Court finds that the Complaint alleges specific facts of protectible original elements in the Three Palm Logo (which Defendant disputes), this motion should still be granted because the Complaint makes clear there is no legal similarity, striking, substantial, or otherwise, between any original protectible elements of the Three Palm Logo and the Single Palm Logo.

As an initial matter, the Complaint alleges in a very conclusory manner that Defendant copied the Three Palm Logo without actually stating what was copied, or that Defendant had access to the Three Palm Logo. (D.E. 1, ¶¶54, 56, 106.) Noticeably absent from the Complaint is any statement as to when the Three Palm Logo was in use. Other than a reference at ¶36 of the Complaint that the Three Palm Logo was registered with the Copyright Office in 1999, it appears that logo was not in commercial use until March 23, 2023, when Plaintiffs started selling their beer in Florida. (D.E. 1, ¶¶ 46-48.) The Three Palm Logo and Single Palm Logo images are depicted in the Complaint (id. at ¶¶36 and 51). A review of those two images will draw the conclusion that Defendant's Single Palm Logo is not a copy of the Three Palm Logo. Perhaps due to the self-evident nature of that conclusion, Plaintiffs allege no facts to support their conclusory allegation.

Further, the Complaint alleges in a very conclusory manner that the Single Palm Logo is

"substantially similar" to the Three Palm Logo without actually stating what is substantially similar about the two images. (D.E. 1, ¶101.) In fact, the Complaint does not allege the two images are "strikingly similar". A review of those two images will draw the conclusion that Defendant's Single Palm Logo is not substantially similar to the Three Palm Logo. Again, and perhaps due to the self-evident nature of the obvious differences, Plaintiffs did not allege facts to support its claim of "substantially similar". Nonetheless, a comparison of some of the most prominent details of the two logos shows there is no actionable similarity between them:

| |   (D.E. 1, ¶36) |   (D.E. 1, ¶51) |
|---|---|---|
| Location of palm tree on can | Back (D.E. 1, ¶48) | Front (D.E. 1, ¶52) |
| Number of Palm Trees | 3 | 1 |
| Foliage in the foreground | Large lump of upstanding plant leaves | Small shadowy tuft of grass |
| Series of horizontal lines resembling two hills in the background | Yes | No |
| Oval Design | Solid oval design with heavy black border surrounding thin interior white border | Solid oval design with think black border surrounding think interior white border |
| Interior Oval shading | No | Yes |

12

| Position of elements within oval | All elements located within the oval | Three of the palm fronds extend outside of the oval |
| Shape and number of palm fronds | 13 fronds in a compact configuration | 11 fronds in a loose and relaxed configuration |

The above chart makes clear that apart from each label containing a palm tree with its essential features (i.e., a base, trunk and fronds) there is nothing legally similar between the images. The trees are different in their expressive features, the overall *look* of the two logos is different, and the two logos present completely different impressions. There are almost no similarities between the two logos beyond the general idea of including a palm tree. Any reasonable jury, properly instructed, would pick-up on these differences and their cumulative effect on the noticeably different aesthetics embodied in the two logos. Because no reasonable jury could conclude that the logos are substantially similar at the legally protected level, this Court should dismiss on the copyright infringement claim.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE LANHAM ACT (COUNT III).

Plaintiffs also failed to allege facts sufficient to establish standing to bring their claim for violation of the Lanham Act, 15 *U.S.C.* § 1125(a). Even if Plaintiff did have standing, the Complaint fails to allege facts to establish the other required elements of the claim.

### A.  The Lanham Act.

The Lanham Act, 15 U.S.C. § 1125(a), provides for two distinct claims of unfair trade practices: unfair competition pursuant to § 1125(a)(1)(A) and false advertising pursuant to § 1125(a)(1)(B). Specifically, 15 U.S.C. § 1125(a) provides as follows:

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Here, Plaintiffs bring a claim for the unfair trade practice known as false designation of origin or "passing off." (D.E. 1, ¶¶ 111-115.) A "passing off" claim arises when a producer misrepresents his own goods or services as someone else's. *Miller's Ale House, Inc. v. DCCM Rest. Grp., LLC,* WL1040005 *3 (M.D. Fla. March 16, 2016), citing *Custom Mfg. & Eng'g Inc. v. Midway Servs. Inc*., 508 F.3d 641, 647 (11th Cir. 2007); *see also Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F.Supp.3d 1267, 1274-1275 (S.D. Florida February 13, 2017).

In the Eleventh Circuit, to establish a prima facie case of false designation of origin under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable rights in the mark or name, and (2) that the defendant made an unauthorized use of the mark causing a likelihood of confusion of the two[3]. *McCaskill v. Ray*, 279 F. App'x 913, 917 (11th Cir. 2008); *Miller's Ale House, Inc.*, WL1040005 *3. The Eleventh Circuit has held that in order to proceed with a 15 *U.S.C.* 1125(a) claim, the complainant must have enforceable rights in a mark or name for a false designation of origin claim. *Miller's Ale House, Inc.*, WL1040005 at *3, citing *Knights Armament Co. v. Optical Sys. Tech. Inc*., 654 F.3d 1179, 1189 fn. 19 (11th Cir. 2011).

---

[3]To state a claim for false designation of origin, a plaintiff must allege it was "either actually or likely to be damaged by the fact that the defendant used a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [wa]s likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1312–13 (11th Cir. 2001) (quoting 15 *U.S.C.* § 1125(a)(1)(A)).

As explained below, Plaintiffs have not alleged facts to sustain this claim.

**B. Plaintiffs Lack Standing To Assert Their Lanham Act Claim.**

In 2014, the Supreme Court declared § 1125(a) "extends only to plaintiffs whose interests 'fall within the zone of interests protected by'" the Lanham Act. Lexmark *Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 129 (2014). Section 45 of the Lanham Act, codified at 15 U.S.C. § 1127, provides a detailed statement of those interests:

> "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations."

As explained in *Lexmark*, "[A] typical false advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" 572 U.S. at 131. Thus, a Lanham Act plaintiff asserting a claim for false advertising must allege facts establishing an injury to a commercial interest in reputation or sales. Id. at 131–132. Further, to allege proximate cause, a plaintiff suing under the Lanham Act "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." Id. at 133.

**1.     Plaintiffs' Claims Do Not Fall Within The Zone of Interests.**

The Complaint fails to allege facts that bring Plaintiffs' claim within the zone of interests in §1127. At issue is Plaintiffs' irritation that Defendant's packaging and marks look similar to that of another beer brand that is not sold in the United States and is owned by a nonparty. (D.E. 1, at ¶¶111-114.) The Complaint does not assert Plaintiffs have lost any sales, or suffered any

actual economic injury or damage to its reputation. (D.E. 1, ¶ 118.)  The absence of such allegations is not surprising because Defendant was selling its "PALMA" beer with the Single Palm Logo as of January 2, 2019 - more than four (4) years *before* Plaintiffs entered the market just a few months ago in March 2023. (D.E. 1-18, p 6, ¶46.)

At most, the allegations in the Complaint raise a grievance Plaintiffs have with the Cuban government, the remedy for which is not within the zone of interests contemplated by Congress in §1127. The relief Plaintiffs should seek for their grievance is to petition Congress to enact laws, enter into a Treaty, or impose sanctions against the Cuban government – but not to sue Defendant for selling a beer in packaging that does not violate any established right of Plaintiffs.

### 2.    Plaintiffs Have Not Satisfied The Proximate Cause Requirement.

A plaintiff suing under §1125(a) "ordinarily must show economic or reputational injury *flowing directly from the deception wrought by the defendant's advertising* (emphasis added)." *Lexmark,* 572 U.S. at 131. The Supreme Court cautioned that while such a showing may be made "when deception of consumers causes them to withhold trade from the plaintiff," this element will generally not be satisfied "when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." Id. at 133-134.  The Court provided the following illustration: while "a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses" under the §1125(a), "the same is not true of the competitor's landlord" if the competitor is subsequently unable to pay its rent. Id. at 134. "Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" Id. at 133.

In this matter, Plaintiffs do not contend that any alleged deception caused consumers to withhold trade from them. (D.E. 1, ¶¶ 118.) Instead, Plaintiffs allege that because Defendant's beer is sold in packaging (whose label identifies it as "PALMA") that looks like a product sold in Cuba, that consumers may be misled into thinking they are purchasing a beer made in Cuba called "CRISTAL", and therefore, Plaintiffs may suffer indirect harms from vague potential threats to its "business, reputation, and goodwill". (D.E. 1, ¶¶ 118, 126, 127.) This indirect and nebulous "injury", which does not reflect trade withheld from the Plaintiffs, cannot support a Lanham Act claim for deceptive trade practices.[4] Id. at 133-134.

### C.  Plaintiffs Fail To Allege Facts Sufficient to State a Violation of the Lanham Act.

Even if this Court were to find Plaintiffs alleged facts sufficient to establish standing, the Complaint fails to state facts sufficient to sustain a claim under 15 *U.S.C.* § 1125(a) for false designation of origin.  As noted above, to plead a prima facie case of false designation of origin, a plaintiff must show (1) that the plaintiff had enforceable rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse[5] the two. *See Miller's Ale House, Inc.*, WL1040005 *3; *Custom Mfg. & Eng'g, Inc.*, 508 F.3d at 647.

---

[4] Additionally, Plaintiffs have no enforceable or legally recognizable rights to litigate thus rendering their claim frivolous. *See Avalos v. IAC/Interactivecorp.,* No. 13-8351, 2014 WL 5493242 at *4–5 (S.D.N.Y. Oct. 30, 2014) (citing *Lexmark* to dismiss Lanham Act claim for speculative and attenuated harms); *Pharma Supply, Inc. v. Stein*, WL 11422321 (S.D. Florida. April 27, 2015) (dismissing Lanham Act claim for lack of standing).

[5] Courts consider seven factors to evaluate whether or not the "likelihood of confusion" exists: (1) the type of mark (is the mark generic, descriptive, suggestive, or arbitrary); (2) the similarity of the marks (based on the overall impressions that the marks create, including the sound, appearance, and manner in which they are used); (3) the similarity of the goods ("whether the products are the kind that the public attributes to a single source"); (4) the similarity of the parties' retail outlets, trade channels, and customers (considering where, how, and to whom the parties' products are sold); (5) the similarity of advertising media (examining each party's method of advertising to gauge the level of confusion); (6) the defendant's intent; and (7) actual confusion (that is, whether there is evidence that consumers were actually confused). *Custom Mfg. and Engineering, Inc.*, 508 F.3d at 648.

Here, Plaintiffs' claim fails because the alleged false designation of origin is for a product sold by a non-party (the Cuban government) and in a foreign country. Plaintiff has not identified any of its marks that are infringed by Defendant's sales and marketing activities. Moreover, Plaintiffs do not allege they have any enforceable rights to the trademarks or trade dress used by Defendant. Nor has Plaintiff alleged facts of actual harm or loss of sales.

With respect to the issue of consumer confusion, the Complaint alleges no facts regarding the seven factors listed in _Custom Mfg. & Eng'g, Inc._  What the Complaint does reveal is Plaintiff has no enforceable mark that is being used or advertised or "passing off" by Defendant.  Defendant wants and intends that both parties sell beer in Florida – in a free and fair market that allows Plaintiffs to lawfully compete against Defendant. The Complaint alleges no facts of actual customers thinking that the U.S. embargo against Cuba has ended and the Cuban government is now selling its "CRISTAL" beer in liquor stores in Florida, or any other part of the United States. The Complaint alleges no facts that Defendant made any false or misleading statements. In fact, the Complaint emphatically admits Defendant's beer is not, and has not, been brewed in Cuba. (Doc. 1, ¶111)  While Plaintiffs allege Defendant's beer packaging is "virtually identical" to that of the non-party in Cuba (Doc. 1, ¶112) the similarity of products is not sufficient to satisfy the false representation requirement of § 1125(a).  _See Tecnoglass, LLC_, 301 F.Supp.3d at 1274-1275 (granting motion to dismiss Lanham Act claim: "allegations regarding consumer confusion fail because the alleged consumer confusion results from similarly sounding product names—not any false representation, or designation by RC Home."].  Further, Plaintiffs claim that Defendant's use of its common law trademark phrase "La Preferida de CUBA" (Doc. 1, ¶6) does not claim the beer is made in Cuba. In fact, and as the Complaint admits at ¶7 the Defendant's beer is brewed in Nicaragua as is stated on each can of beer. Thus, the claim must be dismissed.

18

## VI.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF FDUPTA (COUNT IV).

Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Fla. Stat*. § 501.204(1) To state such a claim, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

A review of the Complaint reveals the same deficient factual allegations form both the FDUPTA and Lanham Act claims. (D.E. 1, ¶¶119-128 *cf.* 108-118.) The Eleventh Circuit held in *Custom Mfg. and Engineering, Inc.*, 508 F.3d at 652-653, that a plaintiff's failure to establish a likelihood of confusion on its Lanham Act claim also extinguishes its claim under FDUPTA, and cited *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 n. 4 (11th Cir.2001), for the rule that "Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." Thus, since the Complaint fails to state a violation of the Lanham Act, the claim for violation of FDUPTA must also be dismissed.

## VII.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CANCELLATION OF DEFENDANT'S TRADEMARK REGISTRATION (COUNT V).

Plaintiffs seek an order pursuant to 15 U.S.C. § 1119 cancelling Defendant's federal trademark issued on August 6, 2019, registration number 5,824,189. The trademark is for the image in ¶51 of the Complaint. The trademark is described by the United States Patent and Trademark Office ("USPTO"), as follows:

> "The mark consists of the stylized wording "CERVEZA" against a quadrilateral. The stylized wording 'PALMA' is underneath against two concentric quadrilaterals. The text is superimposed upon a design of a palm tree that stands on

a small tuft of grass against the backdrop of an oval that is bisected by diagonal tapering lines. The oval is bordered by two concentric outlines of varied widths.

No claim is made to the exclusive right to use the following apart from the mark as shown: "CERVEZA"

The English translation of 'Cerveza Palma' in the mark is 'Beer Palm'."

*See* Exhibit 1, attached hereto.

Federal courts have authority under the Lanham Act to cancel trademarks registered by the USPTO. 15 *U.S.C.* § 1119. In order to prosecute a petition for cancellation, a petitioner must prove: (1) That it has standing to petition for cancellation because it is likely to be damaged, and (2) There are valid grounds for discontinuing registration. *Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991).

Plaintiffs' basis for the requested cancellation hinges on two factually deficient contentions: (1) that Defendant's Single Palm Logo infringes Plaintiffs Three Palm Logo, and (2) Defendant lied about the infringement on its application to obtain its trademark. (D.E. 1, ¶¶130-139). As set forth above, the Complaint fails to state facts sufficient to sustain copyright infringement and/or a Lanham Act claim. Further, the Complaint fails to state facts to establish Defendant knew or should have known that the inclusion of a palm tree on its logo may violate Plaintiffs rights – especially since Plaintiffs did not begin to use the Three Palm Logo in commence until nearly four years *after* Defendant started using a palm tree on its logo. (D.E. 1-18, p 6, ¶¶46, 51, Exhibit 1).  Thus, this claim should also be dismissed.

**VIII.     CONCLUSION.**

WHEREFORE, for the reasons set forth herein, Defendant respectfully request the Court to enter an order dismissing the Complaint, with prejudice; and granting such other an further relief as it deems appropriate under the circumstances.

Respectfully submitted this 6th day of December, 2023.

**GORDON REES SCULLY MANSUKHANI, LLP**

 *s/ Joseph A. Sacher*
**JOSEPH A. SACHER**
FBN 174920
*jsacher@grsm.com*
Miami Tower, Suite 3900
100 SE Second Street
Miami, FL 33131
Tel: 305-428-5339

**MICHELMAN & ROBINSON, LLP**

Jeff Farrow, Esq. *(PHV forthcoming)*
Email: jfarrow@mrllp.com
17901 Von Karman Avenue, 10th Floor
Irvine, CA 92614
Tel: 714-557-7990

**COUNSEL FOR DEFENDANT**