## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:23-CV-24350-GAYLES/LOUIS

| | |
|---|---|
| LAGUNITAS BREWING COMPANY d/b/a | ) |
| CERVECERIA LA TROPICAL, and | ) |
| LA TROPICAL HOLDINGS B.V., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SOLTURA, LLC dba BUCANERO USA, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### DECLARATION OF MARK A. SALKY IN SUPPORT OF
### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

I, Mark A. Salky, declare and state as follows:

1.  I have personal knowledge of the facts stated in this declaration and, if asked to do so, could and would testify to these facts under oath.

2.  I am a shareholder with Greenberg Traurig, P.A.  I am one of the counsel of record for the Plaintiffs in this action.  I am admitted to practice law in the State of Florida under Bar Number 058221, and am a member of the bar of this Court.

3.  Attached hereto as **Exhibit 1** is a true and correct copy of the Complaint for Trademark Infringement, False Designation of Origin, Trade Dress Infringement, and California Unfair Competition, filed on June 13, 2023 at Docket No. 1 in *Soltura, LLC d/b/a Bucanero USA v. Cerveceria La Tropical USA LLC and La Tropical Holdings B.V.*, Case No. 3:23-cv-1104-JES-KSC (S.D. Cal.).

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Soltura's Reply in Support of its Motion for Preliminary Injunction, filed on October 4, 2023 at Docket No. 15 in *Soltura, LLC d/b/a Bucanero USA v. Cerveceria La Tropical USA LLC and La Tropical Holdings B.V.*, Case No. 3:23-cv-1104-JES-KSC (S.D. Cal.).

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the transcript of a hearing held on October 11, 2023 in *Soltura, LLC d/b/a Bucanero USA v. Cerveceria La Tropical USA LLC and La Tropical Holdings B.V.*, Case No. 3:23-cv-1104-JES-KSC (S.D. Cal.)

6.      Attached hereto as **Exhibit 4** is a true and correct copy of Soltura's Motion for Preliminary Injunction, filed on August 28, 2023 at Docket No. 7 in *Soltura, LLC d/b/a Bucanero USA v. Cerveceria La Tropical USA LLC and La Tropical Holdings B.V.*, Case No. 3:23-cv-1104-JES-KSC (S.D. Cal.).

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of December, 2023, in Miami, Florida.

/s/ *Mark A. Salky*
MARK A. SALKY

2

# EXHIBIT 1

Richard P. Sybert (SBN 80731)
rsybert@grsm.com
Hannah E. Brown(SBN 311158)
hbrown@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, California 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA,<br><br>Plaintiff,<br><br>vs.<br><br>CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V.,<br><br>Defendants. | Case No. **'23CV1104 JES KSC**<br><br>**COMPLAINT FOR:**<br>**(1) TRADEMARK INFRINGEMENT;**<br>**(2) FALSE DESIGNATION OF ORIGIN;**<br>**(3) TRADE DRESS INFRINGEMENT;**<br>**(4) CALIFORNIA UNFAIR COMPETITION;**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Soltura, LLC dba Bucanero USA ("Soltura") hereby brings this action against Cerveceria La Tropical USA, LLC and La Tropical Holdings B.V. ("Defendants) and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, false designation of origin, trade dress infringement, and unfair competition arising from Defendants' unauthorized use of a design that infringes Soltura's intellectual property. Defendants' infringement has irreparably harmed the goodwill and reputation of

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Soltura and caused Soltura irreparable damage and monetary harm, for which Soltura requests relief in this Court.

## THE PARTIES

2.      Plaintiff Soltura is a limited liability company located at 312 N Rios Ave., Solana Beach, CA 92075, with a mailing address of 249 South Hwy 101, Suite 530, Solana Beach, CA, 92075.

3.      Soltura is a marketer and brand owner of beer.

4.      Upon information and belief, Defendant Cerveceria La Tropical USA, LLC is a Florida limited liability company with a principal place of business at 1280 N. McDowell Blvd, Petaluma, CA 94854.

5.      Upon information and belief, Defendant La Tropical Holdings B.V, is an entity organized under the laws of the Netherlands with its principal place of business in Amsterdam, Netherlands.

6.      Upon information and belief, Defendants are affiliates and/or subsidiaries of California-based Lagunitas Brewing Company with a principal place of business at 1280 N. McDowell Blvd, Petaluma, CA 94854, and Heineken International which does business in this district, all with common ownership in whole or in part.

## JURISDICTION AND VENUE

7.      This is an action arising, in part, under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and includes related claims for trade dress and for unfair competition arising under state law.

8.      This Court has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (trademarks and unfair competition).  This Court has supplemental jurisdiction over the state law claim of this complaint pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because the state law claim is so related to the federal law claims that they form the same case or controversy and derive from a common nucleus of operative facts.

-2-
COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

9.      Venue is proper within this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this complaint occurred in this judicial district.

10.     This Court has personal jurisdiction over Defendants because Defendants' principal place of business is in this state.  Moreover, on information and belief, Defendants regularly conduct business in this district and throughout the United States, and are actively engaged in promoting, advertising, marketing, and/or offering products within this judicial district, including the accused product at issue in this lawsuit.  Defendants placed and continues to place infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of California, including in this District.  The acts by Defendants cause injury to Plaintiff within this District.  Upon information and belief, Defendants derive substantial revenue from the sale of infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate commerce.  Defendants' contacts with this district are sufficient to confer personal jurisdiction over Defendants.

## BACKGROUND FACTS

### Soltura's Intellectual Property

11.     Soltura is the originator and importer of Cerveza PALMA, a high-quality beer (hereinafter "PALMA® beer").  As set forth below, Soltura has a duly registered federal trademark for PALMA *and its distinctive design*.

12.     The labels for PALMA® beer were approved by the United States Alcohol and Tobacco Tax and Trade Bureau in April 2018.  PALMA® beer has been sold to retailers and consumers since January 2019.

13.     PALMA® beer is currently distributed in California, Florida, Illinois, Maryland, Texas, and Wisconsin.

14.     PALMA® beer is sold in alcohol stores and supermarket chains, such as Walmart, Target, Publix, Sedano's, ABC Liquor, Total Wine & More, BevMo,

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Northgate Markets, El Super Market, and Presidente Markets.  An example of how the products are displayed and sold in the marketplace is shown here:





Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

15.     PALMA® beer is high-selling and popular across the country. PALMA® beer is a refreshing, crisp Pilsner malt that is enjoyed by those looking for a refreshing and tasty alcoholic beverage.

16.     Soltura is the owner of registered trademark, United States Trademark Registration No. 5,824,189, CERVEZA PALMA and Design (hereinafter "PALMA (PLUS DESIGN) mark").  A true and correct copy of U.S. Trademark Registration No. 5,824,189 is attached hereto as Exhibit A.[1]

17.     The PALMA (PLUS DESIGN) mark was registered on August 6, 2019.

18.     The design of the PALMA (PLUS DESIGN) mark is as follows:



19.     Soltura's federal trademark registration was duly and legally issued, is valid and subsisting, and constitutes prima facie evidence of Soltura's exclusive ownership of the PALMA (PLUS DESIGN) mark.

---

[1] Soltura has also applied for a similar mark, CERVEZA PALMITA (PLUS DESIGN), U.S. Serial No. 97302866.  This mark is pending registration and appears as follows:



-5-
COMPLAINT

20. Soltura's PALMA (PLUS DESIGN) mark has been in continuous use in the United States since it debuted in 2019.

21. Soltura has adopted, utilized, and extensively marketed the Palma beer products under the PALMA (PLUS DESIGN) mark.

22. The mark has become closely associated with Soltura's business and beer products. The mark is apparent on all PALMA® beer products, as shown in the exemplar photographs below:





Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

23. PALMA® beer also is marketed with a distinctive and protected trade dress. As is seen in these images, PALMA® beer enjoys a unique appearance—recognizable as the style, work and trade dress of Soltura—that is visually appealing and distinctive from all other alcoholic beverages on the shelves of retailers. Specifically, the PALMA® trade dress consists of the overall look-and-feel resulting from the distinctive combination of the following non-functional features on an aluminum can and the packaging of these beverages: (a) a green background with a contrasting red stripe that runs diagonally upwards from left to right across the center of the product; (b) the name of the product in white text offset against the red stripe; (c) a white oval displaying a palm tree image; (d) a Spanish phrase featuring "La Preferida" ("the preferred one") as a slogan (hereinafter, "PALMA® trade dress").[2]

24. PALMA® beer is sold in aluminum cans and is packaged in 6-packs of cans (*see* images above). The PALMA® trade dress is used on all packaging and all cans of PALMA® beer.

25. The PALMA® trade dress is inherently distinctive.

26. The PALMA® trade dress is non-functional.

27. By virtue of significant sales, quality, and uniqueness of design, and the substantial time, effort, and money expended over the years by Soltura in creating, promoting, and popularizing its mark and trade dress, Soltura has developed a valuable reputation and goodwill in connection with the mark and trade dress. Soltura enjoys substantial demand for this product.

28. Soltura always advertises Palma beer using the PALMA® trade dress and the PALMA (PLUS DESIGN) mark. Soltura advertises through signs, stickers, and sell-sheets in stores. It also uses online digital advertising, social media, its website, billboards, and trucks to further promote the product. All

---

[2] Soltura has recently changed its cans and packaging to include the phrase "La Preferida" rather than "La Preferida de Cuba."

advertisements consistently contain the PALMA® trade dress and the PALMA (PLUS DESIGN) mark so that viewers will associate the image of PALMA® beer with Soltura. For example:






Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

29.     As a result of these extensive marketing efforts and sale, the relevant public has come to recognize an association between the PALMA (PLUS DESIGN) mark and Soltura.

30.     The relevant public has also come to recognize an association between the PALMA® trade dress and Soltura.  The PALMA® trade dress has become widely known, uniquely associated with Soltura, and represents substantial value and goodwill to Soltura.

31.     Due to this success, others in the industry— including Defendants — have taken to copying or "knocking off" Soltura's trademark and trade dress in an illegitimate effort to compete and cause consumer confusion with Soltura's PALMA® brand of beer.

### **Defendants' Wrongful Conduct**

32.     Defendants brew and sell, *inter alia*, beer. *See* https://www.cervecerialatropical.com/beers/

33.     One of Defendants' beers is called TROPI CRYSTAL, shown here:



---

[3] Source: @latropicalbeer Instagram page, at https://www.instagram.com/p/Cq5pO9MrwJo/?hl=en



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

34.     Defendants' TROPI CRYSTAL products contain the same distinctive, non-functional protectable elements of the PALMA® trade dress.  Specifically, the infringing TROPI CRYSTAL products improperly infringe on the Palma trade dress because the logo all aluminum cans for these beverages contains the following features: (a) a green background with a contrasting red stripe that runs diagonally upwards from left to right across the center of the product; (b) the name of the product in white text offset against the red stripe; (c) a white oval displaying a palm tree image; (d) a Spanish phrase as a slogan.

35.     Defendants market the infringing TROPI CRYSTAL products in such a manner that the overall commercial impression of the Palma and TROPI CRYSTAL products is one that is likely to cause consumer confusion.

36.     Likelihood of consumer confusion is high because the parties have designed their cans to be reminiscent of a Cuban beer Cerveza Cristal.  Palma's product is inspired by Cerveza Cristal and is a favorite among Cuban-Americans. On information and belief, Defendants' product is also intended to be reminiscent

---

[4] Source: @latropicalbeer Instagram page, at https://www.instagram.com/p/CrQ0RGZrrr-/?hl=en

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

of that same Cuban beer can. Defendants in fact market their product with that original product (which is the white can on the left):



<sup>5</sup>

37. The fact that both products are reminiscent of the same product necessarily creates confusion. On information and belief, the Cuban beer "Cerveza Cristal" has never been and/or is not marketed in the United States in any commercially or otherwise significant way and it therefore enjoys no trademark or trade dress rights in this country, where earlier use gives Soltura priority. Even less so do Defendants enjoy such rights, as their subsequent use raises the likelihood of confusion with Soltura.

38. Defendants are currently selling its products in the marketplace. An example of this is as follows:

///

///

///

---

[5] Source: @latropicalbeer Instagram page, at
https://www.instagram.com/p/CqnlYMSOlCh/?hl=en



39. On information and belief, the infringing TROPI CRYSTAL products are also distributed or will be distributed at many of the same retailers where Palma beer is currently sold, including Total Wine & More, ABC Liquor, Publix, and Target.[6]

40. Absent injunctive relief, Soltura will suffer irreparable harm in the loss of control of its reputation and goodwill associated with the PALMA® trade dress and PALMA (PLUS DESIGN) mark. Indeed, this and all other damages suffered by Soltura (including to its reputation and goodwill) resulting from the conduct alleged herein cannot be easily quantified, nor could it be redressed through monetary damages alone.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement Under 15 U.S.C. § 1114

41. Soltura incorporates the allegations of all the preceding paragraphs as if fully set forth herein.

---

[6] *See* https://www.cervecerialatropical.com/beer-finder/

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

42.     Soltura's trademark, United States Trademark Registration No. 5,824,189, was duly and legally issued by the United States Patent and Trademark Office on August 6, 2019.

43.     The logo used on Defendants' TROPI CRYSTAL products is a violation of Soltura's rights in its registered trademark.

44.     The logo used on Defendants' TROPI CRYSTAL products is likely to cause confusion, mistake, and deceive customers.

45.     Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade off Soltura's goodwill.

46.     Defendants acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of Soltura.

47.     By reason of the foregoing acts of trademark infringement, Soltura has been injured in an amount not yet ascertained.  Further, Defendants have been unjustly enriched by virtue of its deception of customers and misappropriation of Soltura's goodwill.

48.     In addition, as a result of Defendants' acts of infringement, Soltura suffered and will continue to suffer irreparable harm for which Soltura has no adequate remedy at law, including damage to Soltura's goodwill.  Unless Defendants' acts of infringement are enjoined by the Court, Soltura will continue to suffer irreparable harm.

49.     Defendants' actions are known, intentional, wanton, and willful.  The principles of equity warrant an award to Soltura of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### False Designation of Origin Under 15 U.S.C. § 1125(a)

50.     Soltura incorporates the allegations of all the preceding paragraphs as if fully set forth herein.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-13-

1    51.    Soltura's trademark, United States Trademark Registration No.

2  5,824,189, was duly and legally issued by the United States Patent and Trademark

3  Office on August 6, 2019.

4    52.    The logo used on Defendants' TROPI CRYSTAL products is a false

5  designation of origin causing a likelihood of confusion, mistake, and deception as

6  to source, sponsorship, affiliation, and/or connection in the minds of the public.

7  Defendants' conduct has infringed Soltura's trademark rights in violation of

8  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

9    53.    By reason of the foregoing acts of trademark infringement, Soltura

10  has been injured in an amount not yet ascertained.  Further, Defendants have been

11  unjustly enriched by virtue of its deception of customers and misappropriation of

12  Soltura's goodwill.

13    54.    In addition, as a result of Defendants' acts of infringement, Soltura

14  suffered and will continue to suffer irreparable harm for which Soltura has no

15  adequate remedy at law, including damage to Soltura's goodwill.  Unless

16  Defendants' acts of infringement are enjoined by the Court, Soltura will continue

17  to suffer irreparable harm.

18    55.    Defendants' actions are known, intentional, wanton, and willful.  The

19  principles of equity warrant an award to Soltura of treble damages and profits,

20  attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

21                    **THIRD CLAIM FOR RELIEF**

22              **Trade Dress Infringement and Unfair Competition**

23    56.    Soltura incorporates the allegations of all the preceding paragraphs as

24  if fully set forth herein.

25    57.    The Palma trade dress is inherently distinctive or has acquired

26  secondary meaning.  The Palma trade dress is non-functional.

27  ///

28  ///

*Gordon Rees Scully Mansukhani, LLP*
*101 W. Broadway, Suite 2000*
*San Diego, CA 92101*

-14-
COMPLAINT

58. Defendants have infringed Soltura's rights in the PALMA® trade dress by using a confusingly similar design in the infringing TROPI CRYSTAL products in commerce without Soltura's permission.

59. This is evident through a comparison of the two products:



60. Defendants' use of design elements confusingly similar to the PALMA® trade dress in connection with the infringing TROPI CRYSTAL products constitutes a false or misleading description of fact and has caused and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' products with Soltura and the origin, sponsorship, or approval of Defendants' products by Soltura.

61. Defendants' acts, including its manufacture and sale of the infringing TROPI CRYSTAL products, constitute trade dress infringement or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

62. Defendants' acts constitute willful and intentional infringements of the PALMA® trade dress, and Defendants did so with the intent to trade upon Soltura's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants'

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    products are associated with, sponsored by, approved by, or originating from

2    Soltura when they are not.

3         63.    Defendants had knowledge of Soltura's ownership and prior use of the

4    PALMA® trade dress and, without the consent of Soltura, willfully violated 15

5    U.S.C. § 1125(a)(1)(A).

6         64.    Defendants have acted in bad faith or willfully in using design

7    elements confusingly similar to the Palma trade dress in connection with the

8    infringing TROPI CRYSTAL products.

9         65.    Defendants' infringing acts have caused, and unless restrained by this

10   Court will continue to cause, Soltura irreparable injury to its reputation and

11   goodwill.  Defendants' infringing acts have caused, and unless restrained by this

12   Court will continue to cause, Soltura actual monetary damages, including, but not

13   limited to, lost profits.

14        66.    Soltura does not have an adequate remedy at law to recover for its

15   harm and is therefore entitled to injunctive relief.

16                     **FOURTH CLAIM FOR RELIEF**

17                       **<u>Unfair Competition</u>**

18        67.    Soltura incorporates the allegations of all the preceding paragraphs as

19   if fully set forth herein.

20        68.    By virtue of the actions complained of herein, Defendants have

21   intentionally caused a likelihood of confusion among consumers and the public,

22   causing a false association or sponsorship between Defendants' goods and Soltura.

23   This constitutes unlawful, unfair, and fraudulent business practices in violation of

24   California Bus. & Prof. Code §§ 17200 *et seq.*

25        69.    Defendants' actions complained of herein constitute trademark

26   infringement, trade dress infringement, unfair competition, and/or unlawful, unfair,

27   malicious, or fraudulent business practices, which have injured Soltura.

28   ///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

70. Defendants have acted in bad faith or willfully in using design elements confusingly similar to the PALMA® trade dress in connection with the TROPI CRYSTAL products.

71. Defendants' unfair and unlawful business practices, in violation of California Bus. & Prof. Code §§ 17200 *et seq.*, have caused substantial injury to Soltura and continue to cause substantial injury. Soltura has no adequate remedy at law for these injuries.

72. Unless Defendants are restrained by this Court from continuing its unfair and unlawful business practices, in violation of California Bus. & Prof. Code §§ 17200 *et seq.*, these injuries will continue to accrue.

73. Accordingly, Soltura is entitled to preliminary and permanent injunctive relief against Defendants' unfair and unlawful business practices constituting statutory unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Soltura demands judgment as follows:

A. That the Court render final judgment in favor of Soltura and against Defendants on all claims of relief alleged herein;

B. A declaration that Defendants willfully infringed Soltura's registered trademark and has caused damage to Soltura;

C. A declaration that Defendants violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing Soltura's rights in the PALMA® trade dress;

D. A declaration that Defendants violated the provisions of 15 U.S.C. § 1125(a) by unfairly competing against Soltura by using false, deception, or misleading statements of fact that misrepresent the nature, quality, and characteristics of the infringing "La Tropical" products;

E. A declaration that Defendants violated California Bus. & Prof. Code §§ 17200 *et seq.* by committing trademark and/or trade dress infringement and/or unfairly competing with Soltura;

-17-
**COMPLAINT**

F.     That Soltura be awarded actual damages it has sustained as a result of Defendants' conduct pursuant to 15 U.S.C. § 1117;

G.     That Soltura be awarded Defendants' profits obtained by Defendants as a result of Defendants' conduct complained of herein pursuant to 15 U.S.C. § 1117;

H.     That any such damages and profits be trebled and awarded to Soltura as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, pursuant to 15 U.S.C. § 1117;

I.     An award to Soltura of its reasonable attorney fees pursuant to 17 U.S.C. § 505 and/or 15 U.SC. § 1117(a), filing fees, and the costs of this action;

J.     Prejudgment and post judgment interest on the above monetary awards;

K.     A preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and those in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from: further acts of infringement of the PALMA (PLUS DESIGN) mark; utilizing or imitating Soltura's trademarks or trade dress, including but not limited to manufacturing, distributing, advertising, selling, or offering for sale, any products which use any trademark which is confusingly similar to the PALMA (PLUS DESIGN) mark or the PALMA® trade dress; injuring the commercial reputation, renown, and goodwill of Soltura; and unfairly competing with Soltura in any manner whatsoever and ordering Defendants to cancel all orders for the LA TROPICAL products embodying marks confusingly similar to Soltura's;

L.     That Defendants be required to deliver and destroy all goods, advertising, and other unauthorized materials infringing Soltura's intellectual property, pursuant to 15 U.S.C. § 1118;

M.     Such other and further relief as this Court deems equitable and just.

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Soltura hereby demands a trial by jury on all issues so triable.

Dated: June 13, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: _/s/ Richard P. Sybert_
Richard P. Sybert
Hannah E. Brown
Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-19-
COMPLAINT

# EXHIBIT 2

Richard P. Sybert, Bar No. 80731
rsybert@grsm.com
Hannah E. Brown, SBN 311158
hbrown@grsm.com
Matthew R. Mejia, Bar No. 330028
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA, <br><br> Plaintiff, <br><br> vs. <br><br> CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V., <br><br> Defendants. | Case No. 3:23-cv-01104-JES-KSC <br><br> **SOLTURA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: October 11, 2023 <br> Hearing time: 9:30 a.m. <br><br> District Judge: James E. Simmons, Jr. <br> Magistrate Judge: Karen S. Crawford <br><br> Complaint Filed: June 13, 2023 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# I. **INTRODUCTION**

Defendants' main argument in opposition is to attempt to distract the Court from the similarities between Soltura's PALMA® beer and Defendants' Tropi Crystal beer by pointing to similarities between PALMA® and a Cuban beer Cristal, which has no rights in the United States. (*See generally* "Opp," ECF No. 13; ECF No. 13-1, at ¶ 27 (Portuondo declaration) (noting there have been no successful efforts to "register and/or maintain the registrations for the CRISTAL trademark and label").) Defendants use this fact to argue that Soltura has unclean hands, that there is no likelihood of confusion, that Soltura has ill intent, and that Soltura has not been harmed. This argument is a pure red herring. Indeed, what this argument is missing is any legal support, *i.e.* any case law or authority at all holding that by designing its beer to be reminiscent of a popular Cuban beer, this diminishes Soltura's US-based rights or allows La Tropical to copy Soltura. In fact, Soltura has valid rights, and has a right to prevent La Tropical from continuing to produce a competing and near-identical beer.[1] Accordingly, Soltura's motion for preliminary injunction should be granted.

---

[1] As they did in their Motion to Dismiss, (ECF No. 9), Defendants attempt to deflect any responsibility by stating that neither Defendant "is involved in the production, marketing, or sale of Tropi Crystal beer." (Opp. at 11 n.1.) However, Defendants have made statements that demonstrate that they in fact are involved in the production, marketing, or sale of Tropi Crystal beer. For example, Mr. Portuondo's declaration in support of Defendants' Motion to Dismiss states that Tropi-Crystal is "brewed and canned by Cerveceria La Tropical, Miami, Florida." (ECF No. 9-2 at ¶ 20.) Defendants claim ownership to this Miami brewery. (Opp. at 12.)

Further, Mr. Portuondo's declaration in support of Defendants' Opposition to the Motion for Preliminary Injunction continues to represent that Defendants are in charge of the beer can design. Mr. Portuondo states when "we" received Soltura's cease and desist letter, "[w]e decided to proceed with implementation of the new design regardless of Soltura's position." (ECF No. 13-1 at ¶¶ 33, 39.) He states, "[W]e designed a revised label for Tropi Crystal beer and provided a rendering of the revised label to Soltura." (ECF No. 13-1 at ¶ 37.)

As demonstrated by the declarations, Mr. Portuondo speaks on behalf of Defendants who directly make decisions about labeling. Defendants' statements that they do not produce Tropi Crystal is unsupported.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-1-

## II. <u>ARGUMENT</u>

### A. Defendants' New <u>and</u> Old Can Infringe Soltura's Trade Dress

Defendants first argue that the present motion should be denied because they have "entirely ceased using the trade dress for Tropi Crystal beer that is the subject of [Soltura's] Complaint and Motion." (Opp. at 9–11.) However, the changes that Defendants claimed to have been made are minimal. (*See id.* at 11.) The primary color of the can is still green, with the same red stripe running from lower left to upper right, using a Spanish slogan and a palm tree within an oval. (*See id.*) The overall commercial impression is still the same.

Soltura's Motion seeks to enjoin not just the specific prior design, but a beer with a similar trade dress to Soltura's PALMA®. (*See generally* ECF No. 7.) This covers the new can. The authority that Defendants cite is not applicable, as it holds that a motion for preliminary injunction is moot if the alleged infringer ceased the "unlawful activity." (Opp. at 9–10.) However, as the allegedly new can still unlawfully infringes Soltura's trade dress, Soltura's motion is not moot.

### B. Soltura Has Clean Hands in Seeking Injunctive Relief

#### 1. <u>Soltura Is Not Misleading Consumers</u>

Defendants claim that Soltura intentionally "misleads" consumers into believing that PALMA® is produced in Cuba due to the similarity between PALMA® and Cuban beer Cristal. (Opp. at 13.) Defendants cite no authority for their proposition that designing a can to be reminiscent of a popular Cuban beer – one that has no rights in the United States and is not sold in the United States – is misleading or somehow wrongful. Defendants cite no examples of Soltura purportedly claiming any association with Cuban Cristal, nor can they, as Soltura has not done so. The "examples" of such purported "confusion" are simply irrelevant as they are from sources outside of the United States discussing the confusion in another country and have no relevance to the only marketplace at issue - the United States. (Opp. at 14–15.) Soltura has legal rights to sell

-2-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

PALMA® in the United States; the fact that some people discuss similarities between Palma and Cristal in other countries has nothing to do with this case which deals with the similarities between PALMA® and <u>Tropi Crystal</u>.

In any event, to establish an unclean hands defense, Defendants must show the Soltura "dirtied [its hands] in acquiring the right [it] now asserts." *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963). What is material in this determination is "not that the plaintiff's hands are dirty, but that [it] dirtied them in acquiring the right [it] now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985).

Defendants fail to claim that any similarities to Cuban Cristal or that Soltura's use of the phrase "La Preferida de Cuba" allowed Soltura to <u>acquire</u> the trademark registration or trade dress at issue. (Opp. at 13–16.) The phrase is not part of Soltura's registered trademark, and there is nothing "unclean" about designing a beer to be reminiscent of a foreign beer (itself possessing <u>no</u> rights or use in the United States market) or using a certain phrase on one's can.[2]

Defendants cite to *Havana Club Holding, S.A. v. Galleon*, No. 96 CIV. 9655 (SAS), 1998 WL 150983, at *1 (S.D.N.Y. Mar. 31, 1998) to support their argument. (Opp. at 15–16.) There, the plaintiff alleged the defendant's use of the term "Havana Club" was misleading because defendant's rum was not made in Cuba. 1998 WL 150983, at *1. The court found that <u>if</u> plaintiff had sold Panamanian (non-Cuban made) rum under the "Havana Club" label:

> [D]efendants could show that the right plaintiffs assert is premised on fraudulent conduct, and thus that equitable relief should not be granted. In such circumstances, issuing an injunction would effectively reward plaintiff for mislabeling their Panamanian rum by giving them a substantive right under the Lanham Act that they would not have

---

[2] In any event, Soltura has changed its can design and no longer uses the phrase "La Preferida de Cuba." (*See* Wadley Decl., ECF No. 7-3 at ¶ 11.)

SOLTURA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

otherwise possessed: The right to sue competitors who falsely claim that their products are made in Cuba.

*Id.* at *5. As noted above and reinforced by *Havana Club*, the "consequence of this rule in the trademark context is that the availability of injunctive relief is generally only affected when a plaintiff attempts to enforce a right acquired through inequitable conduct." *Id.* at *5.

Here, unlike *Havana Club*, this case between Soltura and Defendants does not involve any claims against Defendants for false advertising or misrepresentations for representing any connection to Cuba. Therefore, even if Soltura's previous conduct, such as advertising its product as "La Preferida de Cuba" or designing its product in a certain way, *arguendo* constituted unclean hands (and of course it does not, there is nothing illegal or "unclean" about it), it is not unclean hands that allowed Soltura to acquire the rights it now asserts, and is not at all relevant to the infringement issues here.

### 2. Soltura is Validly Licensed

Defendants also claim that Soltura conducts illegal activity by selling alcohol without an ABC license and Certificate of Label Approval ("COLA"). (Opp. at 16–19.) In response to Defendants' Motion to Dismiss, Soltura pointed out that Defendants are incorrect. Soltura's owner Mr. Wadley declared that Soltura <u>does</u> have a COLA and clarified that while Soltura was licensed continually in California as a wholesaler and importer until January of 2023, it is now only the brand owner and is not currently acting as a wholesaler or importer. Instead, Soltura's wholesalers and importers have ABC licenses. (ECF No. 14-9 at ¶6-8.) There are no "unclean" hands here.

### C.  Soltura is Likely to Prevail on the Merits

#### 1. Soltura's Trade Dress is (Inherently) Distinctive

In arguing that Soltura's trade dress is not distinctive, Defendants point to various beers with red stripes and another with a white oval with palm trees. (Opp.

SOLTURA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

at 14.)[3]  By picking one piece of Soltura's trade dress and finding examples with that same piece to argue lack of distinctiveness, Defendants miss the point.  "[I]n analyzing distinctiveness, the Court analyzes the impression made by the trade dress as a whole, rather than a list of individual features."  *E & J Gallo v. Proximo Spirits, Inc.*, No. CV-F-10-411, 2012 WL 273076, at *10 (E.D.Cal. Jan. 30, 2012).

No beer example cited by Defendants' has the same/similar trade dress as Soltura's PALMA®, *i.e.*, a green background with a contrasting red stripe that runs diagonally upwards from left to right across the center of the product; the name of the product in white text offset against the red stripe; a white oval displaying a palm tree image; and a Spanish phrase as a slogan.  Looking at Soltura's trade dress as a whole instead of its individual features clearly demonstrates that it is inherently distinctive.

## 2. Alternatively, Soltura's Trade Dress Has Secondary Meaning

Defendants also argue that Soltura needs to establish secondary meaning. They are incorrect.  Generally, "[i]f a mark is inherently distinctive it need not be shown to also have a secondary meaning."  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993).  As explained above, the product is inherently distinctive.

However, in any event, Soltura has also sufficiently established secondary meaning.  In arguing otherwise, Defendants contend that Soltura needs "evidence of direct consumer testimony" or a "survey" showing secondary meaning.  (Opp. at 15.)  This may very well be true for dispositive motions such as summary judgment motions, like in the cases Defendants cite.  Defendants mislead the Court in presenting *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F.Supp.3d 1013, 1034 (N.D.Cal. 2017) as a case "denying motion for preliminary injunction where plaintiff 'provided no evidence that its marketing efforts effectively created

---

[3] Defendants of course also point to the Cuban beer Cerveza Cristal, but has been discussed extensively, this beer has no rights in the United States.

SOLTURA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

secondary meaning.[]'" (Opp. at 16.) *Sazerac* was decided after a bench trial, where obviously evidence would be needed.

In fact, a "plaintiff may establish secondary meaning through direct and circumstantial evidence." *Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*, 114 F.Supp.2d 992, 999–1000 (S.D.Cal. 2000) (citing McCarthy on Trademarks and Unfair Competition § 15:30 (4th ed. 2000)). A "plaintiff may … establish secondary meaning through circumstantial evidence, such as: exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Id.* at 1000. This is exactly what Soltura did. (*See* ECF No. 7-1 at 19 n.10; ECF No. 7-3, at ¶ 13-15, 21 (discussing Soltura's extensive advertising, exclusive use, and sales).)

Applicable here, in analyzing a motion for preliminary injunction, the court in *Zest Anchors, LLC v. Geryon Ventures, LLC,* 615 F.Supp.3d 1206, 1233 (S.D.Cal. 2022), analyzed the plaintiff's request for a preliminary injunction and found that plaintiff's trade dress had "acquired secondary meaning because of its long, exclusive use; Plaintiffs' substantial advertising efforts; and Defendants' exact copying." Other courts have followed similar reasoning. *See Cal. Scents v. Surco Prod., Inc.*, 28 F.App'x 659, 663 (9th Cir. 2002) ("Five years of exclusive use is prima facie evidence of secondary meaning."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1180 (N.D.Cal. 2007) ("Widespread promotional activities enable a design to obtain secondary meaning in a short period."). The same is true here.

### 3. Defendants' Own Survey Shows a Likelihood of Confusion

Defendants' expert conducted what they assert to be a likelihood of confusion survey (in fact, it is defective, does not meet the exacting standards of trademark confusion surveys, and in any event still shows an actionably high incidence of confusion) (ECF No. 13-3 [Keegan Declaration]) and Defendants hang on this to argue there is no likelihood of confusion between the products. Of

-6-

course, Mr. Keegan <u>broadly</u> concluded there is no likelihood of confusion between the products, but that is not what his results actually show. In fact, Mr. Keegan's survey found that the overall level of likelihood of confusion between Defendants' Tropi Crystal and Soltura's PALMA® was an astounding 50.8%. (ECF No. 13-3 at ¶ 59.)

Courts in this jurisdiction have found that consumer association of approximately fifty percent (50%) is sufficient to establish likelihood of confusion. *See Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *4 (C.D.Cal. Oct. 6, 2021) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for a finding of likelihood of confusion."); *Warner Bros. Ent. v. Glob. Asylum, Inc.*, No. CV 12-9547 PSG CWX, 2012 WL 6951315, at *4 (C.D.Cal. Dec. 10, 2012) (same); *see also* McCarthy at § 32:188 (stating that confusion levels over 50 percent viewed as "persuasive evidence" of likely confusion). Simply because there may be confusion between Soltura's PALMA® and <u>other beers</u> or PALMA® and the <u>Cuban beer Cerveza Cristal</u>, as Keegan found (ECF No. 13-3 at ¶ 59), does not mean there is also not confusion between PALMA® and Tropi Crystal. Defendants cite no case law otherwise. And, the Cuban beer is not at issue here.

Defendants also hang onto the fact that Soltura conducted no survey, and argue that this raises a presumption or negative inference that a survey would be unfavorable to Soltura. (Opp. at 29.) However, survey evidence is not required to establish likelihood of confusion. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ("survey evidence is only one of the most persuasive ways to prove secondary meaning, and not a requirement for such proof"); *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1041 (C.D.Cal. 1998) ("Survey evidence is not required to establish likelihood of confusion, [...] [but] is often the most persuasive evidence."). In any event, the Court need not presume the results of any

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  such hypothetical survey, when Defendants' own survey shows clear likelihood of

2  confusion.

3          4. <u>The Likelihood of Confusion Factors Weigh in Favor of Soltura</u>

4          An analysis of the likelihood of confusion factors is hardly needed at this

5  time given Defendants' own survey evidence, however, Soltura responds briefly to

6  Defendants' contentions on the factors here for any issues not already been

7  addressed in Soltura's motion.

8          First, Defendants seem to admit that many factors weigh in favor of Soltura:

9  proximity of the goods, marketing channels, sophistication of consumers, and

10  likelihood of expansion.  (Opp. at 18, 21.)  Second, as to strength, Defendants

11  demand summary judgment- or bench trial-like detail at the wrong stage. (Opp. at

12  17.)  The case law Defendants cites provides for what is needed to show <u>evidence</u>

13  of commercial strength at such stages.  That is inapplicable here.

14          Third, as to intent/bad faith, Defendants again attempt to point the blame

15  away from themselves; rather than point to evidence that they had no intent to

16  trade off of Soltura's goodwill, they argue Soltura is trading off of the Cuban

17  company's goodwill.  (Opp. at 22.)  If this were relevant, one would presume

18  Defendants would have provided some legal support.

19     **D.     Soltura is Entitled to a Presumption of Irreparable Harm**

20          Defendants focus all their attention on the alleged need for "concrete

21  evidence" of irreparable harm.  (Opp. at 23.)  Yet, when the Court concludes that a

22  plaintiff has established a likelihood of success on the merits, "[b]y statute,

23  [Plaintiff is] entitled to a rebuttable presumption of irreparable harm on [its]

24  trademark claim."  *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694

25  (9th Cir. 2022) (citing 15 U.S.C. § 1116(a)).

26          That is the case here.  As demonstrated above and in the Motion, Soltura has

27  established a likelihood of success on the merits.  (*See* Section C; *see also* ECF No.

28  7-1 at 8–20.)  Thus, Soltura is entitled to the presumption of irreparable harm.

**E.      The Balance of Equities and Public Interest Favor Soltura**

Defendants argue that they are "simply using a trademark and trade dress that their predecessors used" and that "[i]t is [Soltura] who seeks to capitalize on the good will and nostalgia of Defendants' predecessors' famous Cristal brand." (Opp. at 32.)  However, even *arguendo,* this is wholly irrelevant.  As already indicated, Defendants' "predecessors" do not have any trademark or trade dress rights in the United States.  Again, there is no case law that there is anything wrong with Soltura designing its beer to be reminiscent of a foreign beer, let alone any case law that doing so provides Soltura no rights to enforce its valid intellectual property against infringer La Tropical.

Defendants further argue (via lawyer argument in their brief) that an injunction will cause them hardship because they have "invested substantial resources to develop the Tropi Crystal brand and trade dress[.]"  (*Id.*)  Notably, no declarations in support of Defendants' opposition support this statement.  It is Soltura's valid intellectual property rights and the public which are being harmed by Defendants' infringing conduct.

**F.      Soltura's Request Complies With Rule 65**

Defendants argue that Soltura's requested injunction is vague as to what it enjoins, and is thus violating Rule 65.  (Opp. at 33.)  Defendants cite to *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006).  In *Reno Air*, the Ninth Circuit considered the terms of the injunction in its particular context–the injunction was included in a TRO that issued the same day the action commenced and the parties had no prior litigation history.  452 F.3d at 1133–34.  The *Reno Air* TRO enjoined the defendant from making, distributing or disposing of "items which bear the trademarks set forth in Exhibit F [...] or any confusingly similar variations thereof."  *Id.* at 1132.  The TRO did not reference trademark registrations nor did it describe the marks themselves.  *Id.* at 1133.  Exhibit F contained a copy of a t-shirt design that included various terms and images.  *Id.*

-9-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   The Ninth Circuit noted, "[l]ooking at this t-shirt design, one is hard pressed to

2   know what trademarks are referenced in the order, whether the 'trademarks'

3   invoked in the TRO referred to the t-shirt, the design as a whole, the phrase 'Reno

4   Air Races,' all of the words depicted, the checkered pylon, one or more airplanes,

5   the pylon plus one or more airplanes, or some other combination." *Id.* The Ninth

6   Circuit also noted that the phrase "confusingly similar variations thereof" was

7   ambiguous, particularly because "the underlying order failed to identify the

8   trademarks with sufficient specificity." *Id.* "The TRO failed to meet even the

9   most minimal fair notice requirement." *Id.* at 1134.

10   Unlike in *Reno Air*, Soltura meets Rule 65's fair notice requirement. In its

11   Motion, Soltura has defined the PALMA (PLUS DESIGN) mark and PALMA®

12   trade dress, so its requested injunction enjoining Defendants from infringing these

13   clear designs or anything confusingly similar thereof sufficiently describes the

14   terms and describe the act or acts sought to be restrained.

15   **III. CONCLUSION**

16   Soltura respectfully requests that this Court enjoin Defendants, their officers,

17   agents, servants, employees, attorneys, and those in active concert or participation

18   with it who receive actual notice of the order by personal service or otherwise,

19   from: further acts of infringement of the PALMA (PLUS DESIGN) mark; utilizing

20   or imitating Soltura's trademarks or trade dress, including but not limited to

21   manufacturing, distributing, advertising, selling, or offering for sale, any products

22   which use any trademark which is confusingly similar to the PALMA (PLUS

23   DESIGN) mark or the PALMA® trade dress; injuring the commercial reputation,

24   renown, and goodwill of Soltura; and unfairly competing with Soltura in any

25   manner whatsoever and ordering Defendants to cancel all orders for the Tropi

26   Crystal products embodying marks confusingly similar to Soltura's.

27   ///

28   ///

Dated:  October 4, 2023

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

by:  */s/  Richard P. Sybert*
Richard P. Sybert
Hannah E. Brown
Matthew R. Mejia
Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

SOLTURA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 3

```
1                 UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3

4    SOLTURA, LLC,                  )  CASE NO.: 3:22-cv-01104-JES-KSC
                                    )
5            Plaintiff,             )  WEDNESDAY, OCTOBER 11, 2023
                                    )
6    v.                             )  SAN DIEGO, CALIFORNIA
                                    )
7    CERVECERIA LA TROPICAL USA,    )  MOTION HEARING
     LLC, et al.,                   )
8                                   )  HONORABLE JAMES E. SIMMONS
             Defendants.            )  UNITED STATES DISTRICT JUDGE
9    _____ )  SOUTHERN DISTRICT OF CALIFORNIA

10   APPEARANCES:

11   For the Plaintiff:      GORDON & REES
                             555 17th Street
12                           Suite 3400
                             Denver, Colorado  80202
13                           (303) 200-6874
                             BY:  HANNAH BROWN, ESQ.
14                                hbrown@grsm.com
                                  (Appearing via teleconference)
15

16

17   For the Defendants:     GREENBERG TRAURIG, LLP
                             2101 L Street, NW
18                           Suite 1000
                             Washington, D.C.  20037
19                           (202) 331-3100
                             BY:  STEVEN J. WADYKA, JR., ESQ.
20                                wadykas@gtlaw.com
                                  MOLLY R. LITTMAN, ESQ.
21                                molly.littman@gtlaw.com

22   _____
             Tricia Rosate, RDR, CRR, FCRR, CSR No. 10891
23              tricia_rosate@casd.uscourts.gov
                         333 West Broadway
24                           Suite 420
                     San Diego, California  92101
25      Reported stenographically; Transcribed with CAT software
```

```
 1            SAN DIEGO, CALIFORNIA; WEDNESDAY, OCTOBER 11, 2023

 2                     9:31 a.m. - 10:31 a.m.

 3                        -  -  -  -

 4            (Court called to order.)

 5            THE CLERK:  Calling matter number 1, 23-cv-01104,

 6    Soltura, LLC v. Cerveceria La Tropical USA, LLC, et al., for a

 7    motion hearing.

 8            THE COURT:  All right.  Good morning, everyone.

 9            MR. WADYKA:  Good morning, Your Honor.

10            THE COURT:  And I know we have somebody who's logged

11    in remotely with us.

12            Can you hear me okay?

13            MS. BROWN:  Yes, I can.

14            THE COURT:  All right.  Thank you.

15            Can I have everyone please state their appearances.

16            MS. BROWN:  Hannah Brown for the plaintiff.

17            MR. WADYKA:  Steve Wadyka for defendants.

18            THE COURT:  Thank you.

19            This matter is set for two motions.

20            First, the preliminary is set for a motion for a

21    preliminary injunction filed by the plaintiff.  It's also set

22    for a motion to dismiss filed by the defendant.

23            I've read all pleadings, the initial motions, the

24    oppositions, as well as each of the replies; I've read the

25    attached declarations; I've seen the exhibits that have been
```

1    submitted.

2            So I have a few questions at the outset that I'd

3    like the parties to address.  First of all, one of the issues

4    that the defendant has raised is personal as well as subject

5    matter jurisdiction in this case.  So obviously once that has

6    been raised, the burden shifts to the plaintiff to then prove

7    that this court has jurisdiction over the defendants.  In

8    particular, if I understand it, the plaintiff's argument,

9    because the two defendants are holding companies for the land

10   as well as for the trademarks that are in use by Heineken and

11   their principal place of business is here in California, that

12   gives rise to personal jurisdiction.  I think that's the

13   plaintiff's argument, which I would need a lot more

14   information from the plaintiff to really explain that argument

15   to the Court.

16           Secondly, all of the actions that happened in this

17   case -- the defendant's Tropi Crystal beer is sold exclusively

18   in Florida; the trademark that is alleged to have been

19   violated is on a product that is exclusively sold in Florida.

20   My understanding is that product is not sold in California,

21   and neither party makes that assumption or makes that

22   argument.  The product is not introduced into the stream of

23   commerce in California.

24           So why is this the appropriate venue, and why does

25   this court have jurisdiction -- either general or subject

1   matter jurisdiction -- in this matter or, I should say,

2   personal or specific jurisdiction in this matter?

3          Then secondly, my understanding from the defendant's

4   opposition to the preliminary injunction as well as from the

5   motion to dismiss, there is a new can that is currently being

6   sold.  Based on my understanding of the declaration

7   from Mr. --

8          I'm going to mispronounce his name.  Mr. Portuando?

9          MR. WADYKA:  Portuando.

10         THE COURT:  Portuando.

11         Based on the declaration of Mr. Portuando, the old

12  can, for lack of a better term, is no longer out in service;

13  no longer being sold.  This information was shared with the

14  plaintiff prior to this lawsuit being filed.

15         The complaint that was filed in this case does not

16  mention the new can.  The initial preliminary injunction does

17  not mention a new can or design.  It's brought up for the

18  first time by the defense, and then plaintiff for the first

19  time in their reply brief argues the new can also violates

20  their trademark.  So I need an explanation as to why, first of

21  all, this new can is not mentioned previously; and, secondly,

22  how the Court can consider an argument brought up for the

23  first time by the plaintiff in their reply brief to justify a

24  preliminary injunction.  Basically, is this issue moot or not

25  and whether the new can does violate that; and if so, how can

1    I address that now since it was not addressed initially in the

2    preliminary injunction or the complaint.

3            So those are the questions I have as well as the

4    distinctive trademark issues -- distinctive trade dress issue,

5    I should say, regarding plaintiff's argument, regarding the

6    colored and black background of the can as well as the

7    red stripe that goes from left to right in a diagonal angle

8    upwards with the white lettering, as well as --

9            The trademark itself, the palm tree with the word

10   "Palma" on it, is not an issue for the Court.  It's really the

11   trade dress that's at issue here for the Court.

12           So those are the issues that I have that I'd like

13   the parties to address and in no particular order.  You can

14   feel free to address them as you'd like.

15           This is the plaintiff's motion for preliminary

16   injunction.  Obviously there's multiple elements the Court has

17   to find in order to issue that injunction.  Finally, on that

18   issue -- the defense raised this in their opposition -- it's

19   not clear from the preliminary injunction exactly what the

20   plaintiffs are requesting the Court to enjoin.  I'm assuming

21   that the plaintiffs are requesting the Court to enjoin the

22   trade dress or, I should say, the design of the can itself,

23   but it's not clear to the Court, because there was no explicit

24   request in the preliminary injunction.

25           With that said, I'll let the plaintiff begin with

1    their argument, and then we'll hear from the defense.

2             MS. BROWN:  Thank you, Your Honor.

3             I can address the issues in the order that you

4    raised them.  I'll just go along, and let me know if you have

5    any questions along the way.

6             So first addressing the personal jurisdiction

7    argument, you mentioned the principal place of business and

8    the licensing.  I think that the argument for both defendants

9    is different.  So for the -- I'll call them the

10   USA La Tropical defendants, I don't think there's any dispute

11   here that their records show that their principal place of

12   business is in California.  That's what they registered as.  I

13   understand that their position or their facts say that that

14   principal place of business is solely a holding company or for

15   holding land in Florida, but the general jurisdiction law

16   doesn't make a distinction there.

17            The point of personal jurisdiction is:  Can someone

18   expect to be hailed to court in a foreign state?  If a company

19   lists their personal place of business as California, I think

20   they can expect to be hailed here.  Regardless of the purpose

21   of that principal place of business, they've listed it here.

22   They've listed -- their CEO and their officers and their

23   pertinent people, they've listed them as being in California.

24   So regardless of the reason that they did that, they did, and

25   we're relying on those records that they filed as a basis for

1   general jurisdiction.

2          THE COURT:  Let me ask a question.  Excuse me.  Let

3   me interrupt you for a second, Ms. Brown.  Sorry about that.

4          MS. BROWN:  No problem.

5          THE COURT:  My understanding from the defendant's

6   motion to dismiss is that the holding companies,

7   La Tropical USA and La Tropical Holdings B.V. -- and please

8   correct me if I'm wrong -- they're not even licensed companies

9   to operate in California.  That's what the defendant's

10  position is.  So if they're not licensed businesses to operate

11  in California, how can they then be expected to be brought

12  into court and just be subject to the jurisdiction of this

13  state?

14         MS. BROWN:  Sure.  And that's my understanding, as

15  well.  Under the general jurisdiction law, under Dunlop, the

16  test is where their principal base of business is.  I don't

17  think there's any dispute that that's what they have listed as

18  their place of business.  Regardless, whether they're doing

19  business here or not, the general jurisdiction law provides

20  for general jurisdiction in that foreign state.

21         THE COURT:  Okay.

22         MS. BROWN:  Then I think the argument is different

23  for what we'll call the Netherlands-based La Tropical company.

24  You mentioned the licensing.  It's again a question of whether

25  the company can expect to be hailed to court here.  They have

1    licensed their mark.  I don't think there's any dispute that

2    they're the owner of the mark.  The declaration states that

3    they're in charge of labeling and brand decisions.  They've

4    licensed those marks and those decisions to the USA-based

5    company and also La Bonita.  That's shown in the declaration

6    that we've provided from the Florida case which also involved

7    this company.  Again, if they are owning IP and licensing them

8    to companies that have their principal place of business in

9    California, they can expect to be hailed to this state.

10        Then my last point would be understanding, of

11   course, that general jurisdiction and specific jurisdiction

12   are different issues, the specific jurisdiction argument, of

13   course individualized targeting alone is simply not enough,

14   but the case law, such as Axiom, provides that individualized

15   targeting is relevant.  There's no dispute here that plaintiff

16   is based in California; their principal place of business is

17   here.  And our argument of targeting plus everything I just

18   mentioned is sufficient for personal jurisdiction.

19        THE COURT:  Please explain that to me a little bit

20   more in terms of targeting.  How has the targeting affected

21   the commerce in this state or the stream of commerce?  Because

22   your complaint as well as the preliminary injunction says that

23   basically the activity that violates the trademark occurred in

24   the stream of commerce in this state.  Later, both parties

25   admit that the Tropi Crystal beer is not sold in this state.

```
1   They don't even have a license to sell it in this state.  It's

2   sold exclusively in Florida.  So how does that mesh with the

3   argument that the product is put in the stream of business in

4   this district?

5          MS. BROWN:  I don't think defendant's product is in

6   the stream of commerce in this business -- I'm sorry -- in

7   this state.  The argument is that it is accepting --

8          THE COURT:  That was listed in your complaint; that

9   it was.  Your complaint lists that it was in the stream of

10  commerce in this state, in this district.

11         MS. BROWN:  Then maybe that was clarified in their

12  subsequent declarations and filings.

13         THE COURT:  I'm sorry for interrupting.  You can

14  continue.

15         MS. BROWN:  I'm sorry.  I don't know if I fully

16  answered your question.

17         So the individualized targeting, targeting a

18  company, I haven't seen anything in their declaration or

19  response that they didn't know of Solutura before they started

20  their business.  I understand the argument over the Cuban

21  company and the use of that, but they knew of Soltura -- at

22  least as far as I've seen, they knew of what they were doing,

23  and they knew where they were, and they designed this can to

24  be like Soltura's.  You know, their argument is it's to be

25  like the Cuban can, but obviously our argument is that it's
```

| | |
|---|---|
| 1 | Soltura who has the rights here in the United States.  So |
| 2 | targeting a company who is based here and whose harm is felt |
| 3 | here is that individualized targeting. |
| 4 | THE COURT:  All right. |
| 5 | MS. BROWN:  Judge, may I move on to the second |
| 6 | issue, about the new can? |
| 7 | THE COURT:  You can if you'd like. |
| 8 | MR. WADYKA:  Sorry.  I thought you also asked |
| 9 | plaintiff's counsel to address the venue issue, as well. |
| 10 | THE COURT:  Yeah.  I'm letting her choose whatever |
| 11 | order she wants to address the issues. |
| 12 | MR. WADYKA:  Okay.  Fair enough.  Thank you. |
| 13 | THE COURT:  Thank you. |
| 14 | Ms. Brown, whenever you're ready. |
| 15 | MS. BROWN:  Okay.  Sure.  I'm sorry.  I did not hear |
| 16 | the Court asking for venue, but I'm happy to address that if |
| 17 | you'd like. |
| 18 | THE COURT:  Yes.  I'd like you to address that |
| 19 | whenever you feel like it's appropriate for you to address. |
| 20 | MS. BROWN:  Sure.  I'll do that before I move on to |
| 21 | the more substantive -- |
| 22 | I think the case law that's provided in our |
| 23 | opposition briefs shows that venue is appropriate where the |
| 24 | harm is felt.  For example, *Sung v. Bussion* and |
| 25 | *Rhapsody v. Lester*.  They show in a case where subject matter |

1   jurisdiction is not based on diversity -- which here, it is

2   not -- it is proper in the location where the plaintiff felt

3   the injury, and that would be here.

4           THE COURT:  Okay.

5           MS. BROWN:  So I'll move on to the next issue of the

6   new can.  Perhaps there is some confusion about the new can.

7   We did have settlement discussions with -- I thought it was

8   other prior counsel, but it was prior counsel, prior to

9   finalizing the complaint raising the issue of the similarity

10  of the cans and generally demanding a cease and desist.  There

11  was discussion, and they were willing to change the can to

12  what is presented now in their opposition brief, but it's my

13  understanding --

14          And I've never heard that they had changed the can

15  or that they were going forward with those plans.  It was more

16  of a suggestion and in terms of the settlement discussion.

17          AND then our response was, "Well, we find that too

18  similar.  Let's talk about more changes."  When they were

19  unwilling to do that, that's when we filed suit.

20          So until we saw this brief, I was unaware that they

21  had officially made that change.  My understanding is it was

22  just part of the settlement discussion.

23          THE COURT:  All right.

24          MS. BROWN:  So, therefore, that's why the argument

25  is addressed for the first time here; because based on -- the

1    product that was in commerce at the time we filed the

2    complaint was the old can.  It sounds like from the

3    declaration, the old can is being phased out or has been

4    phased out as of last month.  So at the time we filed the

5    complaint, as far as I knew and the evidence that we had, it

6    was the old can, and the new can is more recent.

7           THE COURT:  You agree, then, that since the old can

8    design is no longer being used, this matter is now moot for an

9    injunction?

10           MS. BROWN:  Well, no, because the trade dress as

11    we've defined it in our complaint and in our injunction is the

12    same in both of the cans.  It's the green base, the red

13    stripe, the white block text, the use of the Spanish phrase,

14    the palm tree in oval.  All of those things are in the new

15    can, as well.  So the injunction, which is requesting the

16    trade dress not be enjoined and the trademark not be enjoined,

17    those things are still present in the new can.

18           THE COURT:  Thank you.

19           MS. BROWN:  I will move on to the third argument of

20    the distinctive trade dress.  Your Honor mentioned that this

21    was an issue.  I will address this.  If you have a more

22    specific question, let me know.

23           I understand that the defendant's position is there

24    are pieces of the trade dress that are present in other cans.

25    Of course, other cans are green; other cans have a red stripe.

1    What we're missing is trade dress as a whole.  The case law

2    cited in our brief provides that trade dress, you don't pick

3    it apart and look at individual pieces.  You look at it as a

4    whole.  So certainly there are other cans that have a red

5    stripe, but do those other cans also have a green background?

6    Do they also have that palm tree and all the elements that

7    we've issued in our trade dress?  Putting everything together,

8    that's what makes it distinct, and that's what the law

9    requires is looked at in analyzing this issue.

10            THE COURT:  That's on the issue of whether the trade

11   dress is sufficiently distinctive, as a distinct trade dress?

12            MS. BROWN:  Correct.

13            THE COURT:  Thank you.

14            You can continue whenever you're ready.

15            MS. BROWN:  And then the final argument, Your Honor,

16   raised was exactly what we are requesting the Court enjoin and

17   whether it's a design.  The injunction is to enjoin a can that

18   is infringing on the trade dress or infringing on the

19   trademark of Soltura.  As mentioned, we believe that the new

20   can is still doing that, and so generally that is what the

21   injunction is asking for.

22            THE COURT:  Thank you.

23            Is there anything else you'd like to address?

24            MS. BROWN:  I believe those are all the Court's

25   questions.  So that's all I have for now, and I'll respond to

1    anything else.

2              THE COURT:  All right.  Thank you.

3              Whenever you're ready.

4              MR. WADYKA:  Good morning, Your Honor.

5              Steven Wadyka, Greenberg Traurig, on behalf of

6    defendants.  I'm here with my colleague, Molly Littman.

7              We have some demonstratives that we brought to

8    illustrates certain points for the Court.  We have an enlarged

9    foam board, and also we have 8.5x11 copies that we can hand to

10   your courtroom deputy for you to look at.

11             I was wondering if we could request that we set that

12   easel up in the well of the court so the Court could more

13   easily view the demonstratives.

14             THE COURT:  Let me ask a question.  Has Ms. Brown

15   already seen these items?

16             MR. WADYKA:  No.  Not yet.

17             Actually, we were expecting plaintiff's counsel to

18   be here in person, so we brought copies for

19   plaintiff's counsel.

20             THE COURT:  She's calling in and doesn't have access

21   to the visual to see them.

22             MS. Brown, do you have access to e-mail currently?

23             MS. BROWN:  Yes, I do.

24             THE COURT:  If possible, can you e-mail them to

25   Ms. Brown?  Because I just want to make sure she's seeing the

```
 1    same items the Court gets to see, as well.
 2              MR. WADYKA:  Absolutely.  We can do that.  Yeah.
 3              THE COURT:  Let's just take a moment so you can do
 4    that.  After that's done and she has access to them --
 5              You can set it up now if you like, but we'll wait to
 6    actually view them until she has access to them.
 7              MR. WADYKA:  Okay.  I beg the Court's indulgence.
 8    We're having a little trouble getting online, but we'll attend
 9    to this promptly.
10              THE COURT:  Not a problem.
11              So, Ms. Brown, we're just waiting to get everything
12    situated so you can receive a copy of these documents before
13    the Court gets an opportunity to view them.
14              MS. BROWN:  Okay.  Thank you.
15              MS. LITTMAN:  It should have just sent.
16              THE COURT:  Ms. Brown, let us know when you receive
17    the e-mail.
18              MS. BROWN:  Okay.
19              Okay.  I just received it, and I will open it up.
20              Okay.  I'm ready.
21              THE COURT:  All right.  Thank you.
22              And thank you for assisting with that, as well.
23              Mr. Wadyka, whenever you're ready.
24              MR. WADYKA:  Thank you, Your Honor.
25              So first, focusing on the issue of principal place
```

1    of business for general jurisdiction in California, the test

2    is whether the defendant is at home in California to be

3    subject to general jurisdiction in this state.  General

4    jurisdiction requires that the out-of-state defendant's

5    contacts be so continuous and systemic as to render it

6    essentially at home in the foreign state or in the forum state

7    rather.  It is an exacting standard.

8            Now, here with respect to Defendants

9    Cerveceria La Tropical USA, LLC, plaintiff argues that the

10   corporate records for that company show a principal address in

11   Petaluma, California, and that this is determinative of

12   La Tropical USA's principal place of business and the end of

13   the issue.  The case law, however, holds otherwise.

14           In C&C Properties cited in our opening brief, the

15   Ninth Circuit followed the nerve center test for determining

16   an entity's principal place of business established by the

17   U.S. Supreme Court in *Hertz Corp. v. Friend*, and

18   C&C Properties is cited in our opening brief.

19           Under this test, a corporation's principal place of

20   business refers to the place where a corporation's officers

21   direct, control, and coordinate the corporation's activities.

22   In other words, a court should look to the location of the

23   corporation's nerve center, namely, "the place where the

24   corporation maintains its headquarters, provided that the

25   headquarters is the actual center of the direction, control,

1    and coordination and not simply an office where the

2    corporation holds board meetings, for example, attended by

3    directors and officers who have traveled there for the

4    occasion."

5           So another case that we cited, this one in our reply

6    brief is the A-V Fluids case, which we think is on point with

7    the situation here.  There, the defendant, a company called

8    Jana Media, LLC, contended its principal place of business was

9    in Wyoming because its articles of incorporation listed its

10   principal office address in Cheyenne, Wyoming.  According to

11   defendant in that case, that was the beginning and end of the

12   issue as to where its principal place of business was, but the

13   court in A-V Fluids disagreed.  It applied the Hertz nerve

14   center TEST and found that the day-to-day operations of the

15   LLC were conducted from the residence of one of the members of

16   the LLC in Austin, Texas, and that this member had

17   substantial, if not exclusive, control over the affairs of the

18   LLC.

19           The Court thus held that the Austin, Texas, address

20   was the LLC's principal place of business because that was the

21   place with the actual direction, control, and coordination of

22   the LLC.

23           Now, here, Mr. Portuando, in his reply declaration

24   in support of our motion to dismiss, attests that La Tropical

25   USA is a real estate holding company that owns the land in

1    Miami, Florida, where the La Tropical brewery sits and that

2    all decisions relating to the activities of that LLC are made

3    by him in Miami.

4         So applying the nerve center test as established in

5    Hertz, the principal place of business of La Tropical USA is

6    Miami, as that is the place where the actual direction,

7    control, and coordination of the activities for that entity

8    occur.  Mr. Portuando, according to his declaration, as he

9    attests, exercises exclusive control over that entity.

10        So, secondly, with respect to specific jurisdiction

11   in a case involving trademark infringement such as we have

12   here, this circuit applies the purposeful availment test; in

13   other words, whether the defendant purposely availed itself of

14   the --

15        I'm sorry.  No.  Let me --

16        I misspoke, Your Honor.

17        This circuit applies the purposeful direction test,

18   not the purposeful availment test.

19        The purposeful direction test derives from the

20   U.S. Supreme Court's decision in *Calder v. Jones*.  Under that

21   effects test, a defendant purposely directs his activity

22   toward the forum when the defendant has, one, committed an

23   intentional act; two, expressly aimed at the foreign state;

24   and, three, causing harm that the defendant knows is likely to

25   be suffered in the forum state.

1        So as to this express aiming prong, the second prong

2    of the effects test, plaintiff relies heavily in their

3    opposition brief on the Ninth Circuit's decision in

4    Washington Shoe.  That decision, however, was expressly

5    overruled by the Ninth Circuit's decision in Axiom Foods,

6    which in turn followed the Supreme Court's decision in Walden.

7        Plaintiff relies on Washington Shoe and other

8    pre-Walden cases for the proposition that personal

9    jurisdiction is proper in a plaintiff's home forum when a

10   defendant intentionally infringes on a plaintiff's

11   intellectual property rights knowing the plaintiff is located

12   in the forum state, a concept known as individualized

13   targeting, but the Supreme Court in Walden rejected the

14   individualized targeting test.  A unanimous court in that case

15   held that this test "impermissibly allows a plaintiff's

16   contact with the defendant and forum to drive the

17   jurisdictional analysis."

18       Just two months ago, Judge Ruth Bermudez Montenegro

19   of this district recognized that the individual -- I'm

20   sorry -- she recognized in Nifty Quarter, which we cite in our

21   opening brief, that the individualized target test is no

22   longer sufficient to establish personal jurisdiction in the

23   wake of Walden and Axiom Foods.  As Judge Montenegro held in

24   Nifty Quarter, a plaintiff cannot rely only on its residence

25   in California and allegations that defendants infringed the

1    marks knowing plaintiff was a California resident.

2            "Defendant's contacts" -- and she emphasized those

3    two words in her opinion -- "with California, not the

4    plaintiff's residence here, must determine specific

5    jurisdiction."

6            And then she went on to state as follows:

7    "After Walden and Axiom Food, this court cannot conclude that

8    defendant expressly aimed its conduct at California just

9    because it knew plaintiffs resided there when it infringed

10   their trademark."  Then she found that the defendant's conduct

11   did not connect them to California as required by Walden.

12           Now, as was the case in Nifty Quarter and as is the

13   case here, Nifty Quarter did not allege that defendant was

14   providing services to anyone in California, marketing to

15   California, or selling any products in California.  The only

16   connection between defendants and California were based

17   entirely on the plaintiff's residence here.  This included a

18   cease-and-desist letter that the plaintiffs sent to defendant

19   and defendant's responses to those cease-and-desist letters,

20   but Judge Montenegro held that "These minimal communications

21   related to allegations of infringement only connect defendants

22   to plaintiff.  They have nothing to do with California.  This

23   is not sufficient."

24           Then she went on to find that because the plaintiff

25   had not established the second prong, the purposeful direction

1    test, the Court need not address the third prong, and then she

2    dismissed or granted the defendant's motion to dismiss for

3    lack of personal jurisdiction.

4            Now, here in this case, plaintiff's sole allegations

5    regarding express aiming are that it resides in California and

6    that defendants intentionally infringed plaintiff's trademark

7    and trade dress knowing plaintiff would be harmed in

8    California, but as Judge Montenegro held in Nifty Quarter,

9    such allegations are not sufficient to establish express

10   aiming under the now controlling precedent established by

11   Walden in Axiom Foods.

12           Moving on to the next point regarding venue, as we

13   pointed out in our opening brief in support of our motion, the

14   U.S. Supreme Court in the case of Leroy v. Great W. United

15   Corp. recognized that the purpose of the venue statute is to

16   protect the defendant against the risk that the plaintiff will

17   select an unfair or inconvenient forum or place for trial.

18           As the court in this district held in Duck Dive,

19   also cited in our papers, "The current statutory language

20   still favors the defendant in a venue dispute by requiring

21   that the events or omissions supporting the claim be

22   substantial and is intended to preserve the element of

23   fairness so that a defendant is not hailed into a remote

24   district having no real relationship to the dispute."  But

25   that's exactly what happened here.

1          I think the Court should be guided in this case by

2    another decision from this district, this one by

3    Judge Schopler in the Glovebox case, which we cite in our

4    papers.  In that case, the Court found that none of the

5    actions giving rise to the plaintiff's claims occurred in the

6    Southern District of California, and he stated that the

7    plaintiff offered no colorable justification for filing in

8    this district, instead relying on contacts with a completely

9    different judicial district, and that the plaintiff avoided

10   filing in the proper district in preference for a district

11   that clearly lacks venue.  In that case, as is the case here,

12   the plaintiff resided here as well as its counsel and they

13   decided to file the suit here, even though none of the

14   operative actions giving rise to the claims occurred.  So in

15   that case, Judge Schopler held that the one thing that is

16   clear on the record before this court is that this case

17   doesn't and never did belong here."

18          Here, based on plaintiff's own complaint, plaintiff

19   could have easily ascertained the proper venue for this

20   action, because they included a link to the Beer Finder page

21   on the La Tropical website that shows -- it lists every

22   retailer where La Tropical beer is sold, and it's all in the

23   greater Miami area and elsewhere in south Florida.  So they

24   could have filed this case in the proper venue in the first

25   instance in the Southern District of Florida.

1         In light of that, Judge Schopler in Glovebox decided

2    under § 1406(a) that in these circumstances, since the

3    plaintiff could have filed in the first instance in the proper

4    venue, that he would dismiss rather than transfer the case for

5    improper venue.

6         Moving on to the issue of the new can if we may,

7    Your Honor, we would like to display our first demonstrative,

8    which is Demonstrative No. 1.

9              THE COURT:  Thank you.

10             MR. WADYKA:  Your Honor, may I approach the easel?

11             THE COURT:  Absolutely.

12             MR. WADYKA:  So we have here, for the record, a

13   Demonstrative No. 1, two images:  one, of the plaintiff's

14   Cerveza Palma beer, and one image of the new can for

15   defendant's Tropi Crystal.

16        Now, you can see that, unlike the original beer

17   that's depicted in the plaintiff's motion for preliminary

18   injunction, the new can applies this kind of striated coloring

19   or striping which produces an overall impression that the can

20   is predominantly white, and the area to the bottom of the can

21   is a lighter shade of green than appears on the Palma can.

22        Significantly, what was added to the new can was the

23   La Tropical house mark, which is the identifier of the origin

24   of all beers that my client sells.  They sell more than

25   Trop Cristal, and every one of those beers bears the

1    La Tropical house mark.

2            The palm tree design, which I'll just mention

3    parenthetically -- and I think this was mentioned in our

4    papers -- the copyright to that is owned by my client, and the

5    actual creation of that palm tree design predates by many

6    years the first sale of Palma beer.

7            But that aside, that palm tree design has now been

8    moved to the back of the can, so it's no longer visible when a

9    consumer is shopping a store and sees the forward-facing

10   Tropi Crystal can.

11           MS. BROWN:  I'm sorry.  I'm sorry.  I'm sorry,

12   Counsel.  You cut out there.

13           Is it possible for you to step closer to the

14   microphone just to make sure I can hear everything you're

15   saying?

16           THE COURT:  I could not understand it.  I'm sorry.

17           Let's try to get you closer to a microphone so she

18   can hear you.  So you can just turn that one around.

19           There we go.

20           MR. WADYKA:  How about this?  Can you hear me now?

21           MS. BROWN:  Okay.  Yes.  Thank you.

22           MR. WADYKA:  So as I was saying, so the addition of

23   the house mark is a significant addition as well as the moving

24   of the palm tree design to the back of the can.

25           So in light of these changes -- and this was a

1    change that my client had decided to move forward with before

2    the litigation was filed -- we submit to the Court that this

3    produces a significant change from the original trade dress or

4    the old can that was the subject of both the complaint and the

5    preliminary injunction motion filed by Soltura.  In fact, in

6    their reply brief, even though they acknowledged that there is

7    a new can, they make no argument as to why this new can is, in

8    their view, infringing.  There's, I think -- I believe a

9    statement in that section of the brief that says, well, the

10   new can is infringing, too, but they don't say why.  So we're

11   at a loss as to why this is infringing at all in light of the

12   changes that were made.  So I think that's all I have to say

13   about the new can.

14         And, yes, Your Honor, to follow up on a comment you

15   made when plaintiff's counsel was speaking, in light of this

16   change, we do consider and we believe that the motion for

17   preliminary injunction is moot since it's based on a can

18   that's no longer in the marketplace.  Mr. Portuando in his

19   declaration in opposition to the preliminary injunction motion

20   confirmed that the new can has completely replaced the old can

21   in the marketplace in terms of inventory; actual product on

22   store shelves; and all advertising, at point of sale, at

23   bus stops, on the sides of buses, billboards, what have you.

24   All of that has moved to the new can.

25         Next, on the distinctiveness of the trade dress, if

1    we could have Demonstrative No. 3, please --

2            Before I address the demonstrative that's on the

3    easel in the courtroom, just a few comments on what the law

4    requires for proving inherent distinctiveness of a

5    trade dress.  As we point out in our opposition paper to the

6    preliminary injunction motion, a trade dress is not inherently

7    distinctive if it is a common basic shape or design, is not

8    unique or unusual, or is a mere refinement of a commonly

9    adopted and well-known form of ornamentation for a particular

10   class of goods which consumers view as mere ornamentation.  So

11   that's the test for determining whether or not plaintiff's

12   claimed trade dress meets the requirements for inherent

13   distinctiveness.

14           I'm going to approach the easel here for a minute,

15   and I can point out what plaintiff's claiming is their

16   trade dress:  the red diagonal stripe, moving upwards from

17   left to right, white offset lettering in that red diagonal, a

18   palm tree, the color green, a Spanish slogan.

19           If you take a look at what's here, these are

20   commonly used design elements for competing brands of beer,

21   many of which are also beers that target the Spanish-speaking

22   market, as does Palma.  In particular, you see this right

23   here -- I'll draw it to the Court's attention --

24   Cristal Malta.  This, as Mr. Portuando discussed in his

25   declaration, was a product that a member of the Blanco-Herrera

1   family from Cuba, that had to flee after their brewery was

2   confiscated by the Castro government, they introduced this in

3   the United States.  So they were very early on displaying

4   "Cristal" in this red diagonal stripe with the palm tree logo

5   right on the front of the label.

6           Then you have other more well-known beers, like for

7   instance, Red Stripe is very recognizable for its red stripe,

8   which you see prominently there.

9           So when you're looking at what they're claiming, the

10  plaintiff, as their trade dress and why it's distinctive, you

11  see that they're really just taking design elements that have

12  been out there in this market for a while, combining them

13  together, but it's done so in such a way that it's under the

14  case law a mere refinement to what's already been out there,

15  and people see these as just ornamental designs; not something

16  that is really an identifier of a source.

17          So it's our position that on the issue of inherent

18  distinctiveness, this doesn't get to the issue of acquired

19  distinctiveness under secondary meaning, which we don't think

20  they can show either, as we argued in our opposition.  The

21  crowded field of beers having similar design elements cuts

22  against any claim that they have that this is an inherently

23  distinct trade dress.

24          Then, finally, on the scope of the injunction, I

25  would just reiterate our positions that we set forth in our

1  opposition to the motion for preliminary injunction; that the

2  injunction they're seeking is impermissibly vague and in

3  violation of Rule 65.

4          THE COURT:  Thank you.

5          Ms. Brown?

6          MS. BROWN:  Thank you, Your Honor.

7          I'll respond briefly first to the personal

8  jurisdiction argument.  Acknowledging counsel's case law that

9  they provided in the their reply about the nerve center test,

10 it seems to me that we're mixing tests here.  The nerve center

11 test, of course, it seeks to analyze where a corporation is

12 domiciled for purposes of diversity jurisdiction, for purposes

13 of citizenship.  So the nerve center test is where a

14 corporation is a citizen or where they're domiciled for

15 diversity jurisdiction, and that's different from where a

16 corporation can expect to be hailed.

17         It sounds like counsel is saying although his client

18 lists their principal place of business in California and

19 lists their directors and officers there, it would be unfair

20 to bring them to this court because their nerve center is not

21 here.  Again, as mentioned, the point of personal jurisdiction

22 is fairness; it's where a company can expect to be hailed.

23 So, therefore, I believe that's the distinguishing fact here

24 between the nerve center/diversity jurisdiction case law filed

25 and the personal jurisdiction case law here.

1          I believe I already addressed the Axiom test and the

2     individualized targeting.  While individualized targeting

3     alone is not enough, under Axiom, it is relevant; therefore,

4     that's why it's raised.  It's not sufficient alone, but that

5     combined with the principal place of business, with the

6     licensing and everything mentioned previously, it is enough

7     for personal jurisdiction.

8          I don't have anything further on the new can.

9     Counsel says he doesn't think that he believes we've mentioned

10    why it's infringing.  I addressed that in my opening points.

11    It is still similar enough and it still covers all of the

12    points of the trade dress raised in our complaint.

13          Finally, as to the distinctiveness argument, looking

14    here at Demonstrative 3, I don't believe that some of these

15    were in the brief, so I'll address them here.

16          It appears to me that many of these beers in

17    Demonstrative 3 are not U.S. beers, although I don't know and

18    I'd have to get further information on them.  I don't know of

19    anything that says because beers around the world do

20    red stripes means that Soltura could not have trade dress

21    rights in the United States for being the first to use

22    red stripes along with the other points of the trade dress

23    that we've mentioned.  Certainly while some of these beers

24    have the same features as the La Palma beer, again looking at

25    it as a whole, in looking at it in terms of rights here in the

 1    U.S., that doesn't negate the distinctiveness of La Palma

 2    beer.

 3              Thank you.

 4              THE COURT:  Thank you, Ms. Brown.

 5              MR. WADYKA:  Your Honor, may I make a couple more

 6    points?

 7              THE COURT:  Yes.

 8              MR. WADYKA:  Thank you.

 9              First of all, Your Honor, on the issue of improper

10    venue, I should have pointed out in my initial comments to

11    directly address a point made by plaintiff's counsel where she

12    said that they cited case law in their opposition to the

13    motion to dismiss, that if a plaintiff has felt the harm in

14    the venue, that that's sufficient for purposes of establishing

15    venue.  That quite simply is not the law.  As the Court held

16    in Jamba Juice, as we cite in our papers, any alleged harm

17    suffered by the plaintiffs in its chosen venue does not make

18    the venue proper, as to do so would be contrary to Congress's

19    intent in enacting the venue statute.

20              And to quote Jamba Juice, if Congress had wanted to

21    lay venue where the plaintiff was residing when he was

22    injured, it could have said so expressly.  Congress did not

23    include that in the venue statute, and so the court in

24    Jamba Juice and this court as well as others that we cited in

25    our brief have recognized that the location of the plaintiff

1   and its claim of harm in the venue does not make venue proper

2   where none of the acts giving rise to the claims occurred in

3   the venue where plaintiff filed suit.

4           Then, secondly, on the issue of the principal place

5   of business of the Florida LLC, as Your Honor pointed out

6   earlier, this is a holding company for owning real estate in

7   Miami where the brewery is built.  I would just reiterate some

8   case law that we cited in our briefing that says that a

9   holding company is not normal; it engages in little activities

10  so there is little to direct, control, or coordinate.  Its

11  purpose in holding interest in other companies is passive.

12          There, the Ninth Circuit -- this is in the Horn

13  case -- said that the assumption that a holding company's

14  principal place of business is in the state where its officers

15  reside is problematic.

16          So here we have these corporate records that show a

17  principal address for the Florida LLC in Petaluma, California.

18  It shows an address for Mr. Portuando at that same address in

19  Petaluma, California, but he's attested in his declaration in

20  support of our reply that he has lived permanently in Florida

21  for the past 27 years and that all of the affairs are directed

22  exclusively by him from the Miami address.  So under the nerve

23  center test and the cases we cited, the actual activities of

24  the business and the direction, coordination, and control of

25  the business are determinative and not what a corporate record

1    says that shows an address in a particular state, and that's

2    exactly what the case was in the AV-Fluids case that I

3    discussed earlier.

4              Thank you, Your Honor.

5              THE COURT:  Let me ask a quick question about the

6    trade dress infringement claim.  You've talked about the

7    design is not inherently distinctive.  You brought the

8    demonstrative in number 3 to reflect that.

9              Ms. Brown raises a good point regarding whether

10   beers sold outside of this country can be -- should even be

11   considered by the Court to address whether the trademark is

12   distinctive or not.  I'm not wearing my glasses, so I can't

13   see all the beers there.  I can see several of them.  I know

14   you talked about the Cristal beer, which is the bottom beer,

15   third from the left, which you said is the original beer, the

16   predecessor -- so that was the Cristal beer from Cuba -- and

17   Red Stripe, which is sold in this country.  I think the Court

18   can take judicial notice of that.

19             Other than those two, why should the Court consider

20   any other ones if the Court doesn't have any information on

21   the record that they're even sold in this country?

22             MR. WADYKA:  Well, Your Honor, I think with regard

23   to -- just pointing them out here -- Padron, Narragansett,

24   Toña, Cordillera, I think we pointed out in our opposition

25   brief exactly -- we had identified those beers.  I believe

1    Mr. Keegan, who conducted our consumer survey that showed no

2    likelihood of confusion, he discussed both the Cordillera and

3    Toña and Narragansett beers -- I'm sorry -- the Toña and

4    Cordillera beers that were part of this survey. So I believe

5    that there is some distribution of those beers, or at least if

6    there's not, they are known to individuals who are residents

7    of the United States who are exposed to these beers even if

8    they are only sold in another country. So this is -- it's

9    basically the perception that people have, having been exposed

10    to these various beers in the marketplace.

11          THE COURT: To supplement the record, as well, the

12    Court is looking at the opposition filed to the motion for

13    preliminary injunction. Several of these beers are listed on

14    page 14 of that opposition, as well, and a description is

15    given for each of the ones that are listed.

16          Thank you.

17          MR. WADYKA: All right. Correct. Correct.

18          THE COURT: Anything else?

19          MR. WADYKA: I believe that's it, Your Honor.

20          Thank you.

21          THE COURT: Thank you.

22          Ms. Brown, I know that Mr. Wadyka raised an issue

23    about venue that he had not initially raised. I want to at

24    least give you a chance to address that if you would like.

25    You don't need to if you don't think you need to, but I wanted

1    to give you an opportunity to if you would like to do so.

2             MS. BROWN:  Thank you.  I will address it briefly.

3             He cited the Jamba Juice case, which we did see that

4    in his brief.  Jamba Juice itself is citing an Eighth Circuit

5    case law, and that is in contrast with the two cases we cited

6    in our opposition brief on pages 21 to 22, which simply holds

7    that the injuries here are not for venue.  Understanding that

8    Jamba Juice may be different, but that cites Eighth Circuit

9    case law and also it's also older than the two cases we cited.

10            THE COURT:  All right.  Well, thank you all very

11   much.  I appreciate the arguments and you addressing the

12   Court's concerns.

13            I'm going to take this matter under submission.  I

14   will have a written order out as soon as I can to rule on

15   these issues.

16            I want to thank you all for your time today.

17            MR. WADYKA:  Thank you, Your Honor.

18            THE COURT:  Thank you.

19            Ms. Brown, thank you.

20            MS. BROWN:  Thank you.

21            THE COURT:  I hope everyone has a nice afternoon.

22            MR. WADYKA:  Thank you.

23            THE COURT:  Thank you.

24            (Proceedings concluded at 10:31 a.m.)

25                       -   -   -   -

```
 1                         CERTIFICATE

 2            I, Tricia Rosate, RDR, CRR, FCRR, CSR No. 10891,

 3      certify that the foregoing is a correct transcript from the

 4      record of proceedings in the above-entitled matter.

 5
         /s/ Tricia Rosate, CSR No. 10891     Date:  November 15, 2023
 6      Registered Diplomate Reporter
        Registered Merit Reporter
 7      Federal Certified Realtime Reporter
        Certified Realtime Reporter
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 4

Richard P. Sybert, Bar No. 80731
rsybert@grsm.com
Hannah E. Brown, Bar No. 311158
hbrown@grsm.com
Matthew R. Mejia, Bar No. 330028
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA,<br><br>Plaintiff,<br><br>vs.<br><br>CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V.,<br><br>Defendants. | Case No. 3:23-cv-01104-JES-KSC<br><br>**NOTICE OF PLAINTIFF SOLTURA, LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 11, 2023<br>Hearing Time: 9:30 a.m.<br><br>District Judge: James E. Simmons, Jr.<br>Magistrate Judge: Karen S. Crawford<br><br>Complaint Filed: June 13, 2023 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on October 11, 2023 at 9:30 a.m., or as soon thereafter as the matter may be heard by the Court, in Courtroom 4B of the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, California 92101, Plaintiff Soltura, LLC ("Soltura") hereby moves for a preliminary injunction against Defendants Cerveceria La Tropical USA, LLC and La Tropical Holdings B.V. ("Defendants"), to protect Soltura's goodwill and reputation and to prevent a likelihood of consumer confusion in the marketplace.

The Motion is based on this Notice, the accompanying Memorandum of

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Points and Authorities, the Declarations of Martin Wadley and Richard P. Sybert, the exhibits thereto, oral argument at the hearing in this matter, and all pleadings, papers, and documentary and other matter on file, deemed to be on file, or of which the Court may take judicial notice as of the time the Motion is heard.

Respectfully submitted,

Dated: August 28, 2023          GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Richard P. Sybert*
Richard P. Sybert
Hannah E. Brown
Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

NOTICE OF PLAINTIFF SOLTURA, LLC'S MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Richard P. Sybert, Bar No. 80731
rsybert@grsm.com
Hannah E. Brown, Bar No. 311158
hbrown@grsm.com
Matthew R. Mejia, Bar No. 330028
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA, | Case No. 3:23-cv-01104-JES-KSC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V., | Hearing Date: October 11, 2023<br>Hearing Time: 9:30 a.m. |
| Defendants. | District Judge: James E. Simmons, Jr.<br>Magistrate Judge: Karen S. Crawford |
| | Complaint Filed: June 13, 2023 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................1

II. STATEMENT OF FACTS...............................................................................2

    A. Soltura and its Distinctive Design and Intellectual Property................2

    B. Defendants and their Wrongful Conduct ..............................................5

III. LEGAL STANDARD .....................................................................................7

IV. ARGUMENT ..................................................................................................8

    A. Soltura Has a Strong Likelihood of Success On the Merits .................8

        1. Trademark and Trade Dress Infringement Claims .....................8

            a. Soltura's Trademark and Trade Dress Are
               Protectable ........................................................................8

            b. Consumers are Likely to be Confused by
               Defendants' Use of Trademark and Trade Dress
               Highly Similar to Soltura's For the Same Type of
               Product.............................................................................12

        2. Likelihood of Success on Unfair Competition and False
            Designation of Origin Claims....................................................19

    B. Absent a Preliminary Injunctive, Soltura Will Suffer Irreparable
        Harm.....................................................................................................20

    C. The Balance of Equities Tips Sharply in Soltura's Favor ..................23

    D. Public Interest Supports The Issuance of an Injunction .....................24

V. CONCLUSION .............................................................................................25

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION      Case No. 3:23-cv-01104-JES-KSC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
944 F.2d 1446 (9th Cir. 1991) .......................................................................... 17

*AMF, Inc. v. Sleekcraft Boats*,
599 F. 2d 341 (9th Cir. 1979) ............................................ 13, 16, 17, 19, 23

*Anheuser-Busch, Inc. v. Customer Co.*,
947 F. Supp. 422 (N.D.Cal. 1996) ............................................................ 17, 18

*Aurora World, Inc. v. Ty Inc.*,
719 F.Supp.2d 1115 (C.D.Cal. 2009) .................................................................. 24

*Baby Tam & Co. v. City of Las Vegas*,
154 F.3d 1097 (9th Cir. 1998) ............................................................................... 7

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........................................... 13, 15, 17, 19

*Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*,
156 F.Supp.3d 1173 (E.D.Cal. 2016) ..................................................... 14, 15

*Cadence Design Sys. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ........................................................................... 23

*Cent. 21 Real Est. LLC v. Ramrom Enters.*,
1:14-CV-00788-AWI, 2014 WL 3615790 (E.D.Cal. July 22, 2014) ............... 21

*Chrysler Corp. v. Vanzant*,
44 F.Supp.2d 1062 (C.D.Cal. 1999) .............................................................. 11

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
870 F.2d 512 (9th Cir. 1989) ........................................................................... 12

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ........................................................................... 19

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-ii-

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ..................................................................... 9, 10

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   617 F.Supp.2d 1051 (E.D.Cal.), *aff'd*, 348 F.App'x 288 (9th Cir.
   2009) ....................................................... 13, 14, 15, 20, 21, 22, 24

*Disc Golf Ass'n. v. Champion Discs, Inc.*,
   158 F.3d 1002 (9th Cir.1998) ......................................................................... 10

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) ......................................................................... 19

*E & J Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ......................................................................... 16

*Electropix Inc. v. Liberty Livewire Corp.*,
   178 F.Supp.2d 1125 (C.D.Cal. 2001) ........................................................... 17

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ......................................................................... 13

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378–79 (9th Cir. 1987) ................................................................. 10

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ........................................................................... 18

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ............................................................................. 8

*Globefill Inc. v. Elements Spirits, Inc.*,
   No. 210CV02034-CBM-PLAX, 2012 WL 12876944 (C.D.Cal.
   Oct. 2012) ................................................................................................. 10, 11

*Globefill Inc. v. Elements Spirits, Inc.*,
   473 F. App'x 685 (9th Cir. 2012) ................................................................... 10

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ............................................................. 13, 15, 19

*Guess?, Inc. v. Tres Hermanos*,
   993 F.Supp. 1277 (C.D.Cal. 1997) ................................................................. 11

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iii-

*Guinness United Distillers & Vintners B. V. v. Anheuser-Busch*, *Inc.*,
2002 WL 1543817 (S.D.N.Y. July 12, 2002) ..................................................... 18

*Hana Financial, Inc. v. Hana Bank*,
135 S. Ct. 907 (2015) ........................................................................................ 7

*IHOP Fran., LLC v. Tabel*,
13-2641-KHV-TJJ, 2014 WL 1767199 (D.Kan. Apr. 15, 2014)
report and rec. adopted, CIV.A. 13-2641-KHV, 2014 WL 1767191
(D.Kan. Apr. 30, 2014) ...................................................................................... 22

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
2 F.4th 1150 (9th Cir. 2021) .............................................................................. 22

*Johnson v. Cal. State Bd. of Accountancy*,
72 F.3d 1427 (9th Cir. 1995) .............................................................................. 7

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ............................................................................ 2

*Kalologie Fran. LLC v. Kalologie Skincare Med. Group of Cal.*,
CV 14-00016 DDP VBKx, 2014 WL 953442 (C.D.Cal. Mar. 11,
2014) ................................................................................................................... 21

*Kids' Town at the Falls LLC v. City of Rexburg*,
570 F.Supp.3d 911 (D.Idaho 2021) .................................................................... 9

*KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*,
543 U.S. 111 (2004) ........................................................................................... 8

*LGS Architects, Inc. v. Concordia Homes*,
434 F. 3d 1150 (9th Cir. 2006) ........................................................................... 8

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F.Supp.2d 911 (C.D.Cal. 2011) ................................................................... 11

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
590 F.Supp.2d at 1282 (2008) ..................................................................... 23, 24

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
467 F.Supp.2d 965 (N.D.Cal. 2006) ................................................................... 15

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iv-

*Ocean Garden, Inc. v. Marktrade Co.*,
  953 F.2d 500 (9th Cir. 1991) ........................................................... 23

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
  602 F.App'x 669 (9th Cir. 2015) ..................................................... 21

*P & P Imports LLC v. Johnson Enterprises, LLC*,
  46 F.4th 953 (9th Cir. 2022) ...................................................... 9, 12

*Resource Lenders, Inc. v. Source Solutions, Inc.*,
  404 F.Supp.2d 1232 (E.D.Cal. 2005) .............................................. 18

*Save Our Sonoran, Inc. v. Flowers*,
  408 F.3d 1113 (9th Cir. 2005) .......................................................... 7

*Starbucks Corp. v. Heller*,
  CV 14-01383 MMM MRWX, 2014 WL 6685662 (C.D.Cal. Nov.
  26, 2014) ........................................................................................ 20

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) .......................................................... 15

*Stuhlbarg Int'l Sales Co. v. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) .......................................................... 22

*Synergistic Int'l Inc. v. Windshield Dr., Inc.*,
  No. CV 03-579 FMC CWX, 2003 WL 21468568 (C.D.Cal. Apr.
  28, 2003) .................................................................................... 18, 19

*Triad Systems Corp. v. S.E. Exp. Co.*,
  64 F.3d 1330 (9th Cir. 1995) .......................................................... 23

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) ....................................................................... 20

*Vox Amplification Ltd. v. Meussdorffer*,
  CV 13-4922 ADS GRB, 2014 WL 558866 (E.D.N.Y. Feb. 11,
  2014) ............................................................................................... 21

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
  529 U.S. 205 (2000) .................................................................... 9, 10

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-v-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION        Case No. 3:23-cv-01104-JES-KSC

*Zobmondo Ent., LLC v. Falls Media, LLC*,
  602 F.3d 1108 (9th Cir. 2010) ............................................................. 9

**Statutes**

15 U.S.C. §1114 ............................................................................................ 8

15 U.S.C. §1116 ............................................................................................ 8

15 U.S.C. § 1125(a) ................................................................................. 8, 20

15 U.S.C. § 1125(c) ...................................................................................... 8

15 U.S.C. § 1125(d) ...................................................................................... 8

Bus. & Prof. Code § 17200 *et seq.* ...................................................... 19, 20

**Court Rules**

Fed. R. Civ. P. 65(a) ................................................................................ 2, 25

-vi-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION        Case No. 3:23-cv-01104-JES-KSC

## I.   INTRODUCTION

Since January 2019, Plaintiff Soltura, LLC dba Bucanero USA ("Soltura") has been marketing and selling Cerveza PALMA, a high quality beer (hereinafter "PALMA® beer"), throughout much of the United States.  Plaintiff owns a federal registered word trademark, CERVEZA PALMA, and a federal registered design trademark (hereinafter "PALMA (PLUS DESIGN) mark") for beer.  PALMA® beer is widely recognized and sought after, especially in Florida.

Defendants Cerveceria La Tropical USA, LLC and La Tropical Holdings B.V. ("Defendants") also brew and sell beer.  Upon information and belief, Defendants are affiliates and/or subsidiaries of California-based Lagunitas Brewing Company and Dutch brewing conglomerate Heineken International.  In an apparent attempt to quash their competition—namely, plaintiff Soltura—Defendants recently began selling a beer called TROPI CRYSTAL whose label and design are highly similar to that of PALMA® beer:

 

The La Tropical product began at the La Tropical brewery in Miami.[1] However, according to their *www.cerveceriatropical.com* website, Defendants distribute their product throughout Florida.[2]  In fact—again according to their website—Defendants' products are distributed or will be distributed at many of the same retail outlets where PALMA® beer is currently sold, including Total Wine & More, ABC Liquor, Publix, and Target.[3]

---

[1] *See* https://www.brewbound.com/news/cubas-oldest-brewery-will-soon-be-miamis-youngest/.
[2] *See* https://www.cerveceriatropical.com/beer-finder/.
[3] *See id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Soltura's trademark and trade dress are protected by federal and common law.  And Defendants' sale of beer using packaging and design that is nearly identical to Soltura will irreparably injure Soltura's goodwill and reputation.  As set forth below, the public is likely to be confused that the parties' goods and services are connected with one another.  Further, as shown below, Soltura is entitled to preliminary injunctive relief because the balance of equities is in Soltura's favor:  Soltura has a protectable mark and trade dress, and TROPI CRYSTAL increases the likelihood of confusion.   Defendants, powerful though they are under the umbrella of the self-proclaimed world's "most international brewer" Heineken N.V.,[4] should not be allowed to ignore and infringe Soltura's trademark and trade dress rights.  Further, the public has an interest and a right not to be deceived or confused.  Therefore, pursuant to Federal Rule of Civil Procedure 65(a), Soltura requests the Court enter a preliminary injunction to protect Soltura's goodwill and reputation and to prevent a likelihood of consumer confusion in the marketplace.

## II.  STATEMENT OF FACTS

### A.  Soltura and its Distinctive Design and Intellectual Property

Soltura is the originator and importer of Cerveza PALMA®, a high quality beer.  (Wadley Decl. ¶ 2.)[5]  PALMA® beer is a refreshing, crisp Pilsner malt that is enjoyed across the country by those looking for a refreshing and tasty alcoholic beverage.  (*Id.*)  Soltura designed the product to be reminiscent of a Cuban beer called "Cerveza Cristal" that has never been sold in the United States.  (*Id.* ¶ 3)

Soltura has obtained rights to the can design.  Specifically, Soltura is the owner of a registered federal trademark for PALMA® beer and its distinctive

---

[4] *See* https://www.theheinekencompany.com/our-brands/our-global-brand-heineken.
[5] Because of the extraordinary nature of injunctive relief and the potential for irreparable injury if not granted, a district court determining whether to issue a preliminary injunction may consider evidence outside the normal rules of evidence.  *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding that the district court did not abuse its discretion in relying on outside evidence, such as exhibits, affidavits, and declarations).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

design: United States Trademark Registration No. 5,824,189, CERVEZA PALMA and Design (hereinafter "PALMA (PLUS DESIGN) mark"). (*Id.* at ¶ 5; *see also* ECF No. 1-2, Exh. A to Compl.)



Color is not claimed as a feature of the mark. (Ex. 1 to Wadley Decl.) Therefore, the design is protected regardless of color. *See* TMEP 807.07(a)(1). However, as set forth below, Defendants have deliberately mimicked the precise colors actually used by Soltura which greatly increases the likelihood of confusion.

Soltura has continuously and extensively marketed PALMA® beer products in the United States under the PALMA (PLUS DESIGN) mark since 2018. (Wadley Decl. ¶ 7.) The mark is apparent on all PALMA® beer products, as shown in the exemplar photographs below:

 

As a result, the mark has become closely associated with Soltura's business and beer products. (*Id.* at ¶ 8.)

///

///

-3-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  PALMA® beer is currently distributed widely in the United States, in

2  California, Florida, Illinois, Maryland, Texas, and Wisconsin. (*Id.* at ¶ 9.) It is

3  sold in liquor stores and supermarket chains, including, for example, Walmart,

4  Target, Publix, ABC Liquor, Total Wine & More, BevMo, Northgate Markets, El

5  Super Market, and Presidente Markets. (*Id.* at ¶ 10.) PALMA® beer is also

6  marketed and sold in special in-store displays emphasizing the distinctive design,

7  as shown here:



17  PALMA® beer enjoys a substantial demand and a unique appearance—

18  recognizable as the style, work and trade dress of Soltura—that is visually

19  appealing and distinctive from all other alcoholic beverages on the shelves of

20  retailers. Specifically, the trade dress of the product consists of the overall look-

21  and-feel resulting from the distinctive combination of the following non-functional

22  features on all cans and the packaging of PALMA® beer: (a) a green background

23  with a contrasting red stripe that runs diagonally upwards from left to right across

24  the center of the product; (b) the name of the product in white text offset against

25  the red stripe; (c) a white oval displaying a palm tree image; (d) a Spanish phrase

26  featuring "La Preferida" ("the preferred one" or "the favorite") as a slogan

27  ///

28

-4-

Case 3:23-cv-01104-DPS-KSC Document 14-1 Filed 05/25/23 PageID 247 Page 12 of 86
Case 3:23-cv-01104-DPS-KSC Document 14-1 Entered on Filed 05/25/23 Page 12 of 85 2 of
119

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  (hereinafter, "PALMA® trade dress").[6]  (*Id.* at ¶ 11.)

2      Soltura advertises PALMA® beer using signs, stickers, and sell-sheets in

3  stores.  (*Id.* at ¶ 15.)  It also uses online digital advertising, social media, its

4  website, billboards, and trucks to further promote the product.  (*Id.*)  All

5  advertisements consistently contain the PALMA® trade dress and the PALMA

6  (PLUS DESIGN) mark so that viewers will associate both with Soltura:






22  **B.**   <u>**Defendants and their Wrongful Conduct**</u>

23      Defendants also brew and sell beer,[7] one of their brands being a new beer

24  introduced <u>subsequent</u> to Soltura's PALMA®, called "Tropi Crystal," shown here:[8]

---

[6] The above images reflect Soltura's prior packaging when Soltura used the phrase "La Preferida de Cuba."  Soltura has recently shortened the phrase on its cans and packaging to simply "La Preferida" instead. (Wadley Decl. ¶ 11.)
[7] *See* https://www.cervecerialatropical.com/beers/.
[8] Defendants have applied to register the word mark TROPI CRISTAL, Serial No. 97/096,704.  However, it is the design, not the name, that is at issue in this lawsuit.

-5-



Like PALMA® beer, "Tropi Crystal" beer comes in aluminum cans with, astonishingly, exactly the same distinctive design features as Soltura's protected trade dress: (a) a green background with a contrasting red stripe that runs diagonally upwards from left to right across the center of the product; (b) the name of the product in white text offset against the red stripe; (c) a white oval displaying a palm tree image; and (d) a Spanish phrase as a slogan. These striking similarities are obviously not a coincidence. Just as PALMA® beer was inspired by the Cuban beer "Cerveza Cristal," it is apparent that Defendants' product is also intended to be reminiscent of that same Cuban beer. Defendants in fact market "Tropi Cristal" side-by-side with the Cuban beer:

Defendants claim they even have "permission" to use this design from the Cuban family associated with the Cuban product (now sold in Cuba apparently with the backing of the communist government there). However, neither the Cuban product nor the Cuban family have any rights in the United States because their

---

[9] Source: @latropicalbeer Instagram page, at https://www.instagram.com/p/CqnlYMSOlCh/?hl=en

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

product has never been sold here.  (Wadley Decl. ¶ 4.)  And, the fact is, Soltura "got there first" and obtained a federal trademark registration for its design.  Defendants are currently selling their products in the marketplace, specifically, in Florida and, on information and belief, through many of the same retailers as Soltura.

It matters not that Soltura's design and marks may be reminiscent of an earlier product in a foreign jurisdiction, namely Cuba.  Unlike copyright or patent, there is no requirement under federal trademark law that a trademark be "original."  Rather, the registrant need simply be the first to use the mark in commerce.  *See Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users.").  In this case, that is Soltura.

## III.   LEGAL STANDARD

There are "two sets of criteria for preliminary injunctive relief."  *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).  Under the "traditional" criteria, a plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995).  Alternatively, a court may grant the injunction if the plaintiff "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor."  *Id.*  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum."  *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998).  In other words, these two

tests represent a continuum in which the required showing of irreparable harm varies inversely with the probability of success. *LGS Architects, Inc. v. Concordia Homes*, 434 F. 3d 1150, 1155 (9th Cir. 2006).

In the context of the Lanham Act, a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. §1116.

## IV. ARGUMENT

Soltura's Complaint seeks relief for: (1) Trademark Infringement; (2) False Designation of Origin; (3) Trade Dress Infringement; and (4) California Unfair Competition. (*See* ECF No. 1.) Soltura can establish that it is entitled to preliminary injunctive relief because: (1) there is a strong likelihood that Soltura will succeed on the merits of its claims; (2) Soltura is and continues to suffer irreparable harm; (3) the balance of hardships tips decidedly in Soltura's favor; and (4) the requested injunction is in the public interest.

**A.** **Soltura Has a Strong Likelihood of Success On the Merits**

    **1.** **Trademark and Trade Dress Infringement Claims**

To prevail on its trademark claims under 15 U.S.C. §1114 and its trade dress infringement claims under 15 U.S.C. § 1125(a), Soltura must show that: (1) its trademark and trade dress are protectable; and (2) Defendants' use of the same or similar trademark and trade dress is likely to cause confusion. *See KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 117 (2004) (trademark infringement); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987) (trade dress infringement). Soltura can do both.

        **a.** **Soltura's Trademark and Trade Dress Are Protectable**

**Trademark**: The CERVEZA PALMA® mark is registered, thus entitling

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Soltura to a "strong presumption" that the mark is protectable. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113–14 (9th Cir. 2010).

**<u>Trade dress:</u>** "Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1257 (9th Cir. 2001). To sustain a claim for trade dress infringement, a plaintiff must prove: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product ... creates a likelihood of consumer confusion." *Id.* at 1258.

Trade dress commonly falls into one of two main categories:  product design or product packaging. *See Kids' Town at the Falls LLC v. City of Rexburg*, 570 F.Supp.3d 911, 923 (D.Idaho 2021); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (trade dress originally only included the packaging of a product, "but in recent years has been expanded by many Courts of Appeals to encompass the design of a product."). Product design "typically relates to the protected nature and design of an actual, physical product." *Kids' Town*, 570 F.Supp.3d at 923. "Product packaging also relates to a physical product, but typically is not the product itself, but rather the "dressing" or manner in which the product is presented to the public." *Id.* "An example of a product design trade dress would be a three-dimensional product purchased by the consumer," whereas product packaging trade dress "could be the labels, packaging, or <u>design of that same purchased product</u>." *Id.* (emphasis added).

Here, Soltura's trade dress is product packaging, namely the can rather than the beer itself. The distinction is important because a plaintiff need not prove secondary meaning for product packaging; secondary meaning is <u>presumed</u>.  *P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (product

-9-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

packaging can be inherently distinctive with no need to prove secondary meaning); *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 208–14 (2000) (If the trade dress is product packaging, distinctiveness can be either "inherent" or acquired through secondary meaning).

*Globefill Inc. v. Elements Spirits, Inc.* is instructive. No. 210CV02034-CBM-PLAX, 2012 WL 12876944, at *2 (C.D.Cal. Oct. 2012). There, plaintiff sold vodka in a skull-shaped bottle. On remand, in analyzing whether the asserted trade dress was product packaging or product design, the Central District held: "the product being sold is vodka, not the bottle itself. The skull-shaped bottle is therefore packaging, and the trade dress is not product design." *Id.* (citing *Globefill Inc. v. Elements Spirits, Inc.*, 473 F. App'x 685, 686 (9th Cir. 2012)). Similarly here, the asserted trade dress of the product is the "packaging." The product is beer, but the uniquely-designed can and the color scheme and logo that appear on that can of beer (*i.e.* the trade dress) is the packaging, and not the beer itself.

The undisputed facts here meet all three parts of the *Clicks Billiards* test for trade dress infringement:

Functionality: A product is functional if the overall trade dress is essential to the product's use or affects the cost or quality of the product. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378–79 (9th Cir. 1987). The Ninth Circuit considers four factors in determining whether a product feature is functional: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, (4) and whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir.1998).

Here, the design—meaning the logos and colors on the PALMA® beer

-10-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   can—is clearly <u>non</u>-functional.  The design could have been in any color or any

2   pattern, and that designed can will still hold beer, and the beer is the same, and

3   therefore the design serves no utilitarian advantage.  The logo on the PALMA® 

4   beer can is not essential to the use or purpose of the product, and the color combi-

5   nations and style of the graphics and text have nothing to do with the use or

6   purpose of the product and do not affect the quality of the product.  *See Chrysler*

7   *Corp. v. Vanzant*, 44 F.Supp.2d 1062, 1070 (C.D.Cal. 1999) (discussing function-

8   ality of a trade dress, the court stated that a "Coca–Cola bottle is an ideal example.

9   The bottle is utilitarian in that it holds liquid, yet the fluting design on the outside

10  of the bottle is non-functional in that it does not add to the utility of the bottle.");

11  *Guess?, Inc. v. Tres Hermanos*, 993 F.Supp. 1277, 1285 (C.D.Cal. 1997) ("The

12  logos are non-functional, as the shape and placement of a label serves no function

13  in jeans other than brand affiliation.").

14      <u>Inherently distinctive</u>:  The predominant test for inherent distinctiveness asks

15  whether "(1) the design or shape is a common, basic shape or design; (2) it was

16  unique or unusual in a particular field; and (3) it was a mere refinement of a

17  commonly-adopted and well-known form of ornamentation for a particular class of

18  goods which consumers view as mere ornamentation." *Mattel, Inc. v. MGA Entm't,*

19  *Inc.*, 782 F.Supp.2d 911, 1004 (C.D.Cal. 2011).  The court in *Globefill Inc.* found

20  that the plaintiff's trade dress was inherently distinctive because "it was the only

21  skull-shaped bottle in the alcohol industry and is 'of such an unusual design that a

22  buyer will immediately rely on it to differentiate the source of the product.'"  2012

23  WL 12876944, at *3.

24      Here, similarly, the design on Sultura's can is used only for identification

25  purposes.  Of course other beer cans may use the colors green, red, and white.

26  However, on information and belief, until the late arrival of Defendants' "Tropi

27  Crystal", PALMA® beer was the only beer using those colors together in the

28

-11-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION    Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

specific registered design at issue: a green background with a contrasting red stripe that runs diagonally upwards from left to right across the center of the product, with the name of the product in white text offset against the red stripe, along with a white oval displaying a palm tree image and Spanish phrase as a slogan.  Due to this uniqueness, the PALMA® trade dress and PALMA (PLUS DESIGN) mark have become an identifier of the source of the product -- Soltura, thus becoming inherently distinctive.

Because Soltura's PALMA® trade dress is inherently distinctive, Soltura does not need to show secondary meaning, which is presumed.  *P & P Imports LLC*, 46 F.4th at 961.[10]  Accordingly, Soltura's trademark and trade dress are protectable.  And Defendants' accused use is likely to cause confusion.

> **b.**   **Consumers are Likely to be Confused by Defendants' Use of Trademark and Trade Dress Highly Similar to Soltura's For the Same Type of Product.**

In determining likelihood of confusion, the Ninth Circuit considers:

1. The strength of Plaintiff's trademark/trade dress;
2. The similarity between the Plaintiff's trademark/trade dress and the allegedly infringing trademark/trade dress;
3. Proximity of the goods;

---

[10] In any event, Soltura's trade dress has acquired secondary meaning as an identifier of Soltura and its PALMA® beer.  Secondary meaning can be established in a variety of ways, including "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Id.* (quoting *Art Attacks Ink, LLC v. MGA Ent., Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)).  For example, Soltura's trade dress has been used in extensive advertising in the marketplace.  Specifically, PALMA® beer has been sold in liquor stores and supermarket chains across the country.  (Wadley Decl. ¶¶ 9–10.)  Soltura has extensively advertised PALMA® beer through signs, stickers, and sell-sheets in these stores.  (*Id.* at ¶ 15.)  Soltura also uses online digital advertising, social media, its website, billboards, and trucks to further promote the product.  (*Id.*)  All advertisements consistently contain the PALMA® trade dress so that viewers will associate the image of PALMA® beer with Soltura.  (*Id.*)  And until Defendants' recent introduction of Tropi Crystal to the market in 2023, Soltura was the only one to use this distinctive PALMA® trade dress.  (*Id.* at ¶ 21; *see also Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989) ("Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning.")).

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

4. Marketing channels used;
5. Evidence of actual confusion;
6. Types of goods and degree of care to be exercised by purchasers;
7. Defendants' intent in selecting the trade dress; and
8. Likelihood of expansion of the product lines.

*AMF, Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348–39 (9th Cir. 1979).  These factors are merely a guide for the Court to consider and are not exhaustive or exclusive.  *Id.* at 348.  The first three factors constitute part of the "controlling troika in the *Sleekcraft* analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  These factors weigh heavily here in favor of a likelihood of confusion.

**Strength of Soltura's Trademark/Trade Dress** Where, as here, the parties' marks and goods are highly similar, the strength of Soltura's mark is relatively unimportant.  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058–59 (9th Cir. 1999).  Nevertheless, "[t]he more likely a mark is to be remembered and associated in the public's mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F.Supp.2d 1051, 1070 (E.D.Cal.), *aff'd*, 348 F.App'x 288 (9th Cir. 2009).  The strength of a mark is determined by its "conceptual strength" (how distinctive or unique the mark is) and its "commercial strength" (how well recognized the mark is in commerce). *Id.*

The conceptual strength of a mark can be classified "[f]rom weakest to strongest ... as generic, descriptive, suggestive, and arbitrary or fanciful." *GoTo.com*, 202 F.3d at 1199.  "An arbitrary mark is a common word that is non-descriptive of any quality of the goods or services." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (citation omitted).

Here, the conceptual strength of Soltura's mark is arbitrary because it does not describe or suggest the nature or quality of Soltura's beer.  While of course the word "cerveza" means beer, the mark is much more than just "cerveza."  Instead,

-13-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

the PALMA (PLUS DESIGN) mark also uses the non-descriptive word "Palma" in connection with a unique palm tree design (but again, doing nothing to describe or suggest the nature of the beer; beer does not come from palm trees).  As a whole, this design does not describe the product.  *See Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F.Supp.3d 1173, 1179 (E.D.Cal. 2016) (finding that Plaintiff's marks were arbitrary as "Plaintiff's mark 'Brooklyn Black Ops,' taken as a whole, does not describe or suggest a particular quality of Plaintiff's beer").  Thus, Soltura's mark is conceptually strong.

Soltura's mark is also commercially strong.  "The more extensively advertised and readily identifiable a mark and dress are in the relevant market, the stronger the mark and dress." *CytoSport*, 617 F.Supp.2d at 1071.  Since 2018, Soltura has sold over 900,000 cases (24 x12oz cans) of beer under the mark and trade dress throughout parts of the United States, such as California, Florida, Illinois, Maryland, Texas, and Wisconsin.  (Wadley Decl. at ¶¶ 9, 14.)  Soltura's PALMA® beer has been promoted for many years through Soltura's website, through Facebook, Twitter, and Instagram, and in stores and supermarket chains such as Walmart, Target, Publix, ABC Liquor, Total Wine & More, BevMo, Northgate Markets, El Super Market, and Presidente Markets.  (*Id.* ¶ 10); *see Cytosport*, 617 F.Supp.2d at 1070 (promotion through print and social media and at events supported finding that mark is strong).  Soltura also advertises through signs, stickers, and sell-sheets in stores, while using online digital advertising, its website, billboards, and trucks to further promote the product.  (Wadley Decl. at ¶ 15.)

Further, Soltura's PALMA (PLUS DESIGN) mark is strong because, other than Defendants (and just recently), there are no competitors or parties of whom Soltura is aware in the United States who have trade dress or marks even remotely similar to Soltura's, much less virtually indistinguishable.  (*Id.* at ¶ 21); *see*

-14-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   *CytoSport*, 617 F.Supp.2d at 1071 ("[T]he less that third parties use the mark, the

2   stronger it is, and the more protection it deserves.")).

3         As for trade dress, as discussed above, Soltura's trade dress is arbitrary and

4   inherently distinctive because that trade dress and design are not descriptive of any

5   quality of the actual product, beer.  A palm tree in an oval design behind the words

6   CERVEZA PALMA does not describe or have any natural connection to beer.

7   Beer does not come from palm trees.  The trade dress is therefore conceptually

8   strong.  *See id.* at 1070 n.3 (finding that "because there is no natural connection

9   between the features of [plaintiff's] trade dress and a protein supplement,

10  [plaintiff's] trade dress when used in connection with a protein supplement is

11  arbitrary, and therefore, is conceptually strong"); *Nova Wines, Inc. v. Adler Fels*

12  *Winery LLC*, 467 F.Supp.2d 965, 980 (N.D.Cal. 2006) (finding the use of Marilyn

13  Monroe images on wine labels created a strong trade dress due to there being "no

14  natural connection between Marilyn Monroe and wine").

15        Because Soltura's mark and trade dress are conceptually and commercially

16  strong, this factor weighs in favor of a finding of likelihood of confusion.

17  **<u>Similarity of the Parties' Trademark/Trade Dress</u>**   A "critical question in

18  the likelihood-of-confusion analysis" is the similarity of the marks at issue.

19  *GoTo.com*, 202 F.3d at 1205.  Similarity is tested on three levels: sight, sound, and

20  meaning, where the court weighs similarities between the marks more heavily than

21  their differences.  *See Brooklyn Brewery*, 156 F.Supp.3d at 1180; *GoTo.com*, 202

22  F.3d at 1205.  When, as here, a defendant is using similar or identical marks "with

23  identical products or services, likelihood of confusion would follow as a matter of

24  course."  *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th

25  Cir. 2017); *Brookfield Commc'ns*, 174 F.3d at 1056.  "[C]ases involving identical

26  marks on competitive goods are rare … because liability is 'open and shut.'"  *Stone*

27  *Creek, Inc.*, 875 F.3d at 432.  This is one of those cases.

28

-15-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

The parties' logos and designs here are highly similar.  No survey is necessary to show this.  And this is not by accident.  Both products are reminiscent of the same product, the Cuban beer "Cerveza Cristal."  In creating a product that is meant to remind of the same Cuban beer as does Soltura's, Defendants have adopted a trade dress almost exactly the same as Soltura's design and mark and used it on an identical product—beer.[11]  Comparing the parties' products leads to the inescapable conclusion that the two are confusingly similar:

 

This incontrovertible evidence of the visual similarities of the two labels and packaging is a factor which weighs heavily in favor of Soltura.

**Proximity of the Goods**   "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark."  *Sleekcraft*, 599 F.2d at 348 n.10.  "Where goods are related or complementary, the danger of consumer confusion is heightened."  *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).

Both Soltura's and Defendants products are marketed as reminiscent of classic Cuban beer, both are sold in cans, and both are purchased by many of the same consumers at the same retail locations.  (*See* Wadley Decl. at ¶ 15); *Sleekcraft*, 599 F.2d at 350 (less similarity between marks is required when goods are sold to the same class of purchasers).  As such, this *Sleekcraft* factor strongly favors Soltura.

---

[11] On information and belief, "Cerveza Cristal" has never been and/or is not marketed in the United States in any commercially or otherwise significant way.  The Cuban beer "Cerveza Cristal" enjoys no trademark or trade dress rights in this country, thus Soltura's earlier use gives it priority.  (Wadley Decl. at ¶ 4.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**Marketing Channels Used**   Soltura and Defendants share the same channels of trade and distribution, easily satisfying *Sleekcraft*'s notation that "[c]onvergent marketing channels increase the likelihood of confusion."  599 F.2d at 353.  It appears that both products are sold or will be sold at some of the same stores and liquor stores.  (Wadley Decl. at ¶¶ 10, 19.)  The brands also advertise and sell merchandise through their corresponding websites, market via the same social media channels (including Facebook, Twitter, and Instagram), and use similar in-store displays and brand packaging.  (*Id.* at ¶¶ 15, 20.)

This overlap in marketing channels is more than sufficient to increase the risk and reality of consumer confusion.  *See Anheuser-Busch, Inc. v. Customer Co.*, 947 F. Supp. 422, 425 (N.D.Cal. 1996) (convergent marketing channels favored injunction where plaintiff's beer was "distributed through a broad range of supermarkets, liquor stores and convenience stores.").  Thus, this *Sleekcraft* factor weighs strongly in Soltura's favor.

**Evidence of Actual Confusion**   Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  *See Brookfield*, 174 F.3d at 1050 ("[F]ailure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove[.]"); *see also Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) ("[I]n this circuit, actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act.").

Further, actual confusion evidence is "rarely available at the preliminary injunction stage."  *Electropix Inc. v. Liberty Livewire Corp.*, 178 F.Supp.2d 1125, 1132 (C.D.Cal. 2001).  Soltura does not yet have evidence of actual confusion as Defendants have just recently commenced sales and their volume is relatively low.  Thus, this factor is neutral in the likelihood of confusion analysis.  *See Brookfield*,

-17-

174 F.3d at 1060 (affirming preliminary injunction despite lack of actual confusion evidence).

**Types of Goods and Degree of Care Exercised By Purchasers** "[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Resource Lenders, Inc. v. Source Solutions, Inc.*, 404 F.Supp.2d 1232, 1245 (E.D.Cal. 2005). More specifically, when it comes to alcoholic beverages, courts have held that consumers are likely to use a relatively low degree of care when selecting products, thus increasing the likelihood of confusion between related products using similar marks. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159–60 (9th Cir. 1963) (the average consumer purchasing beer "would probably not concern himself about any such detail" such as who was "actually brewing and bottling" or "whether it was being produced under their supervision or pursuant to some other arrangement."); *Anheuser-Busch, Inc.*, 947 F.Supp. at 425 ("[B]ecause beer is a relatively inexpensive product, consumers are not likely to use great care in selecting beer"); *Guinness United Distillers & Vintners B. V. v. Anheuser-Busch*, Inc., 2002 WL 1543817, at *6 (S.D.N.Y. July 12, 2002) (finding that beer and Scotch constitute "relatively low cost products, and the average consumer is not likely to seek to identify the true manufacturer of these products.").

The goods here retail for under $12.00 for a six-pack (6 x 12oz) and under $22.00 for a twelve-pack (12 x 12oz). (Wadley Decl. at ¶ 16.) Due to these goods being an inexpensive product, consumers are likely not to use a great deal of care in selecting beer, thus increasing the likelihood of confusion between Soltura's and Defendants' products. Thus, this factor weighs heavily in favor of finding a likelihood of confusion.

**Defendants' Intent in Selecting the Trade Dress** Proof of Defendants' bad faith use of the mark is unnecessary to win a preliminary injunction. *Synergistic*

-18-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   *Int'l Inc. v. Windshield Dr., Inc.*, No. CV 03-579 FMC CWX, 2003 WL 21468568,

2   at *7 (C.D.Cal. Apr. 28, 2003) (granting a preliminary injunction despite no

3   evidence of intent to confuse). And "absence of malice is no defense to trademark

4   infringement," *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1132

5   n.12 (9th Cir. 1998), because "[t]he lack of intent by a defendant is largely

6   irrelevant in determining if consumers likely will be confused as to source."

7   *Brookfield*, 174 F.3d at 1059. Therefore, this factor is "irrelevant to the Court's

8   conclusion." *Synergistic*, 2003 WL 21468568 at *7.[12]

9   **Likelihood of Expansion of the Product Lines**   Finally, the expansion of

10  business by a party to compete with the other weighs in favor of finding

11  infringement. *Sleekcraft*, 599 F.2d at 354. Here, the parties already compete

12  directly in the same channels and markets. Because the parties' product lines

13  already overlap, there is no need to consider the potential for "expansion." *See

14  GoTo.com*, 202 F.3d at 1209 ("Because [defendant] and [plaintiff] compete with

15  one another […] we decline to evaluate the issue of whether there is a likelihood of

16  expansion of their product lines."); *Brookfield*, 174 F.3d at 1060 ("The likelihood

17  of expansion in product lines factor is relatively unimportant where two companies

18  already compete to a significant extent.").

19  **Summary of *Sleekcraft* Factors**   In sum, analysis under the *Sleekcraft* test

20  shows that confusion is likely and thus weighs in favor of granting a preliminary

21  injunction.

22  **2.   Likelihood of Success on Unfair Competition and False**
      **Designation of Origin Claims**

23

24  Soltura's unfair competition and false designation of origin claims largely

25  overlap with the analysis above regarding the Lanham Act's consumer confusion

26  ///

27  [12] At the very least, Defendants were certainly aware of Soltura's long and substantial prior presence in the U.S. marketplace after Soltura raised it in cease and desist letter on April 4, 2023. (*See* Sybert Decl. at ¶ 2.)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

test.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (finding that California Business and Professions Code Section 17200 claims are substantially congruent with Lanham Act); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (finding that likelihood of confusion test is applied to false designation of origin claims).  Since Soltura can and has established the merits of its trademark and trade dress infringement claims above, it has also established a likelihood of success is also shown for its claims for unfair competition and false designation of origin under 15 U.S.C. § 1125(a); Cal. Bus. & Profs Code § 17200 *et seq*.

## B.  Absent a Preliminary Injunctive, Soltura Will Suffer Irreparable Harm

Soltura is unquestionably at risk of irreparable harm, having its years of careful development and investment in its distinctive trademarks and trade dress suddenly overwhelmed by one of the largest brewing companies in the world, Heineken.  As one court has held,

> In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of trade and loss of goodwill. [...] Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners. Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control. [...] A trademark owner's loss of the ability to control its marks, thus, creates the potential for damage to its reputation.

*CytoSport*, 617 F.Supp.2d at 1080.

Here, Soltura will continue to suffer irreparable harm due to Defendants' intentional infringement if Defendants are not enjoined from using the PALMA® trade dress and the PALMA (PLUS DESIGN) mark.  Defendants' acts have robbed Soltura of control over the reputation of the beer sold under the PALMA® trade dress and the PALMA (PLUS DESIGN) mark—a reputation which Soltura has spent years and a substantial amount of resources building and carefully

-20-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

cultivating.  (Wadley Decl. at ¶ 7–9, 13–15); *see Starbucks Corp. v. Heller*, CV 14-01383 MMM MRWX, 2014 WL 6685662, at *9 (C.D.Cal. Nov. 26, 2014) (loss of control over quality of goods under the marks constitutes irreparable harm); *Kalologie Fran. LLC v. Kalologie Skincare Med. Group of Cal.*, CV 14-00016 DDP VBKx, 2014 WL 953442, at *5 (C.D.Cal. Mar. 11, 2014) ("A plaintiff's loss of control over its business reputation resulting from a defendant's alleged unauthorized use of its protected mark during the pendency of an infringement action can constitute irreparable harm justifying injunctive relief."); *Vox Amplification Ltd. v. Meussdorffer*, CV 13-4922 ADS GRB, 2014 WL 558866, at *15 (E.D.N.Y. Feb. 11, 2014) (finding irreparable harm where plaintiff had "established substantial goodwill" in its marks over years of use and the use of similar marks by a competitor was cause plaintiffs to suffer "a loss of goodwill, erosion of its customer base and a loss of reputation.").

Moreover, Soltura will suffer (if it has not already) harm to its goodwill and lose control of its reputation due to consumer confusion that Defendants' products are connected or affiliated with or sponsored by Soltura.[13]  *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 F.App'x 669, 672 (9th Cir. 2015) ("Loss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context."); *Cent. 21 Real Est. LLC v. Ramrom Enters.*, 1:14-CV-00788-AWI, 2014 WL 3615790, at *4 (E.D.Cal. July 22, 2014) (recognizing that "harm to plaintiff's goodwill" is irreparable in the court's decision to grant preliminary injunction).

In *CytoSport*, the Ninth Circuit found that defendant's products and advertising entering the marketplace would cause the plaintiff irreparable harm

---

[13] Soltura acted promptly in attempting to negotiate a resolution to this likelihood of confusion with Defendants' infringing product/design. Soltura sent Defendants a cease and desist letter as soon as it became aware of the product and before the La Tropical launch party.  The parties discussed Defendants changing their logo, however, these efforts were unsuccessful as Defendants were unwilling to make any significant or substantial changes to their design. (Sybert Decl. ¶ 2.)

-21-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   because these activities prevented plaintiff from controlling the reputation of its

2   highly recognizable and valuable brand. 617 F.Supp.2d at 1080–81. Similarly, in

3   Soltura's case, consumers who anticipate the availability of Soltura's PALMA®

4   beer in their market will be misled by Defendants' similar products being sold in

5   the same market.[14] This type of confusion inevitably harms Soltura's brand,

6   weakens the unique association between Soltura's marks/trade dress and Soltura,

7   and will lead to lost sales and lost customers. *See id.*

8       Further, retailer interest in carrying Soltura's beer is likely to be weakened

9   by the existence of Defendants' brand, as retailers are likely to perceive the parties'

10  brands to be the same or interchangeable.[15] *See Stuhlbarg Int'l Sales Co. v. Brush*

11  *& Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (upholding the finding of irreparable

12  harm based on "threatened loss of prospective customers" and "accompanying

13  goodwill and revenue"). Because retailers may buy Defendants' beer instead of

14  Soltura's due to the perception of being the same or interchangeable, the

15  irreparable injury to Soltura is substantially magnified because the cachet and aura

16  around which Soltura's PALMA® brand has been built will be destroyed, causing

17  further loss of customers and goodwill.

18      Finally, consumers who are unsatisfied with Defendants' Tropi Crystal beer

19  could be unlikely to purchase Soltura's PALMA® beer thinking that it is

20  connected with a product they did not enjoy. *See IHOP Fran., LLC v. Tabel*, 13-

21  2641-KHV-TJJ, 2014 WL 1767199, at *11 (D.Kan. Apr. 15, 2014) report and rec.

22  adopted, CIV.A. 13-2641-KHV, 2014 WL 1767191 (D.Kan. Apr. 30, 2014)

23  (confusion over the source of defendant's goods is cognizable irreparable harm

24  ///

---

[14] It may even well lead to *reverse* confusion, leading consumers to think that somehow Soltura is infringing the larger, more famous brewer, Heineken. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021) ("We have explained that reverse confusion occurs when a person who knows only of the well-known junior user comes into contact with the lesser-known senior user, and because of the similarity of the marks, mistakenly thinks that the senior user is the same as or is affiliated with the junior user.").

[15] Or, again, to prefer to deal with Heineken as the larger, more powerful supplier.

-22-

because "[a]ny unfortunate shortcoming or disappointment a customer may experience" will be unfairly attributed to plaintiff).

Thus, Soltura has proven irreparable injury if Defendants are not enjoined.

## C. The Balance of Equities Tips Sharply in Soltura's Favor

Because the likelihood of confusion factors favor Soltura, the balance of equities also tips sharply in Soltura's favor. *See Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 508 (9th Cir. 1991) ("Given the above six [*Sleekcraft*] factors [favoring the plaintiff], the balance of hardships tips sharply in [plaintiff's] favor and it would have been an abuse of discretion for the district court not to grant the preliminary injunction."). Further, a defendant "cannot complain of the harm that will befall [him] when properly forced to desist from [his] infringing activities." *Triad Sys. Corp. v. S.E. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Any potential harm to Defendants that may result from being enjoined from infringing Soltura's mark and trade dress—an unlawful activity—is legally irrelevant in light of Soltura's likelihood of success on the merits and the irreparable harm caused by Defendants' conduct. *See id.* (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."); *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (holding that it was reversible error to consider "the fact that an injunction would be devastating to [defendant's] business" because "where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.").

Moreover, Defendants have harmed themselves by continuing to use Soltura's design despite "actual and constructive knowledge of the similarity between [their] marks and Plaintiff's mark." *Moroccanoil*, 590 F.Supp.2d at 1282. As in *Moroccanoil*, Defendants had actual notice of the confusing similarity between its mark and Soltura's PALMA® trade dress and the PALMA (PLUS

-23-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    DESIGN) mark due to the cease and desist letter sent to Defendants, (*see* Sybert

2    Decl. at ¶ 2), and the filing of this lawsuit.  Thus, any injury that Defendants may

3    suffer if preliminarily enjoined may be discounted by the fact that Defendants

4    brought the injury upon themselves by continuing to maintain a deceptively similar

5    trademark and trade dress. *Moroccanoil*, 590 F.Supp.2d at 1282.

6         Soltura does not seek to stop Defendants from making or selling beer.

7    Soltura simply asks that Defendants be enjoined from using a design that is

8    substantially similar to Soltura's PALMA® trade dress and the PALMA (PLUS

9    DESIGN) mark.  Accordingly, the balance of equities tips in favor of Soltura.

10   **D.    Public Interest Supports The Issuance of an Injunction**

11        Lastly, courts look to determine if an injunction is in the public interest.  "In

12   the trademark context, courts often define the public interest at stake as the right of

13   the public not to be deceived or confused." *CytoSport*, 617 F.Supp.2d at 1081.

14   "By using confusingly similar marks, Defendant is depriving consumers of their

15   ability to distinguish among the goods of competing manufacturers."

16   *Moroccanoil*, 590 F.Supp.2d at 1282.  The public interest favors protecting

17   consumers from confusion by entering an injunction. *Id.*  Consequently, "'[t]he

18   likelihood of confusion to consumers is [a] critical factor in our consideration' of

19   harm to the public, as '[t]he public has an interest in avoiding confusion between

20   two companies' products." *Aurora World, Inc. v. Ty Inc.*, 719 F.Supp.2d 1115,

21   1127 (C.D.Cal. 2009).

22        Here, enjoining Defendants' infringement inherently serves the public

23   interest, and the grant of injunctive relief is necessary to protect consumers from

24   the harm that would arise from confusion between Soltura's PALMA® beer and

25   Defendants' Tropi Crystal beer.  In light of the public's right not to be deceived or

26   confused, and Defendants' evident intent to continue confusing consumers, the

27   public interest strongly supports the issuance of an injunction.

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-24-

# V.    CONCLUSION

For the reasons set forth above, Soltura respectfully requests that this Court grant Soltura's Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a), enjoining Defendants, their officers, agents, servants, employees, attorneys, and those in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from: further acts of infringement of the PALMA (PLUS DESIGN) mark; utilizing or imitating Soltura's trademarks or trade dress, including but not limited to manufacturing, distributing, advertising, selling, or offering for sale, any products which use any trademark which is confusingly similar to the PALMA (PLUS DESIGN) mark or the PALMA® trade dress; injuring the commercial reputation, renown, and goodwill of Soltura; and unfairly competing with Soltura in any manner whatsoever and ordering Defendants to cancel all orders for the Tropi Crystal products embodying marks confusingly similar to Soltura's.

Respectfully submitted,

Dated:  August 28, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By:    */s/  Richard P. Sybert*
Richard P. Sybert
Hannah E. Brown
Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Richard P. Sybert, Bar No. 080731
rsybert@grsm.com
Hannah E. Brown, Bar No. 311158
hbrown@grsm.com
Matthew R. Mejia, Bar No. 330028
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA,<br><br>Plaintiff,<br><br>vs.<br><br>CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V.,<br><br>Defendants. | Case No. 3:23-cv-01104-JES-KSC<br><br>**DECLARATION OF RICHARD P. SYBERT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 11, 2023<br>Hearing Time: 9:30 a.m.<br><br>District Judge: James E. Simmons, Jr.<br>Magistrate Judge: Karen S. Crawford<br><br>Complaint Filed: June 13, 2023 |

I, Richard P. Sybert, declare and state as follows:

1.       I am an attorney duly licensed to practice before all the Courts of the State of California and I am an partner with Gordon Rees Scully Mansukhani, LLP, counsel of record for Plaintiff Soltura, LLC dba Bucanero USA ("Soltura"). Except where otherwise stated or obvious from context, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto.  I submit this declaration in support of Plaintiff's Motion for Preliminary Injunction.

2.       I sent a cease and desist letter sent to Defendants Cerveceria La

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Tropical USA, LLC and La Tropical Holdings B.V. ("Defendants") on April 4, 2023. The parties discussed Defendants changing their logo, however, these efforts were unsuccessful due to Defendants unwilling to make any significant or substantial changes to their design.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 28, 2023 in San Diego, CA

_/s/ Richard P. Sybert_

Richard P. Sybert

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  Richard P. Sybert, Bar No. 80731
   rsybert@grsm.com
2  Hannah E. Brown, Bar No. 311158
   hbrown@grsm.com
3  Matthew R. Mejia, Bar No. 330028
   mmejia@grsm.com
4  GORDON REES SCULLY MANSUKHANI, LLP
   101 West Broadway, Suite 2000
5  San Diego, CA 92101
   Tel: (619) 230-7768
6  Fax: (619) 595-5768

7  Attorneys for Plaintiff
   SOLTURA, LLC dba BUCANERO USA
8

9           UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11

12 | SOLTURA, LLC dba BUCANERO USA, | Case No. 3:23-cv-01104-JES-KSC
13 |                        Plaintiff, | **DECLARATION OF MARTIN WADLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
14 |          vs. |
15 | CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V., | District Judge: James E. Simmons, Jr. Magistrate Judge: Karen S. Crawford
16 |                        Defendants. | Complaint Filed: June 13, 2023
17 |

18

19 I, Martin Wadley, declare and state as follows:

20     1.    I am the owner of Plaintiff Soltura, LLC dba Bucanero USA

21 ("Soltura"). I am above eighteen years of age and am competent to give the

22 testimony set forth below. Said testimony is given from my own personal

23 knowledge. If called as a witness I could and would competently and truthfully

24 testify as set forth below. I make this declaration in support of Soltura's Motion for

25 Preliminary Injunction.

26     2.    Soltura is the originator and importer of Cerveza PALMA®, a high-

27 quality beer. PALMA® beer is high-selling and popular across the country.

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   PALMA® beer is a refreshing, crisp Pilsner malt that is enjoyed by those looking

2   for a refreshing and tasty alcoholic beverage.

3        3.    Soltura designed the product to be reminiscent of a Cuban beer Cerveza

4   Cristal.

5        4.    To my knowledge, the Cuban beer Cerveza Cristal has never been sold

6   in the United States.

7        5.    Soltura has a duly registered federal trademark for PALMA® beer and

8   its distinctive design. Soltura is the owner of registered trademark, United States

9   Trademark Registration No. 5,824,189, CERVEZA PALMA and Design

10  (hereinafter "PALMA (PLUS DESIGN) mark"), which was registered on August 6,

11  2019. (*See* ECF No. 1-2, Exh. A to Compl.)

12       6.    Attached as Exhibit 1 is a true and correct copy of the TSDR page for

13  United States Trademark Registration No. 5,824,189.

14       7.    Soltura has used the mark in connection with Palma beer since at least

15  August 2018.

16       8.    Based on my knowledge of the product and the industry, the PALMA (PLUS

17  DESIGN) mark has become closely associated with the PALMA® beer products.

18       9.    PALMA® beer is currently distributed in California, Florida, Illinois,

19  Maryland, Texas, and Wisconsin.

20       10.   PALMA® beer is sold in alcohol stores and supermarket chains, such

21  as Walmart, Target, Publix, ABC Liquor, Total Wine & More, BevMo, Northgate

22  Markets, El Super Market, and Presidente Markets and is available at over 2500

23  retail locations.

24       11.   Along with the trademark, PALMA® beer is marketed using a unique

25  design. Specifically, each beer is an aluminum can, and on the can and packaging of

26  these beverages is: (a) a green background with a contrasting red stripe that runs

27  diagonally upwards from left to right across the center of the product; (b) the name

28

-2-

DECLARATION OF MARTIN WADLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION                           Case No. 3:23-cv-01104-JES-KSC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

of the product in white text offset against the red stripe; (c) a white oval displaying a palm tree image; (d) a Spanish phrase featuring "La Preferida" or "The Favorite" ("the preferred one") as a slogan.

12.    PALMA® beer is sold in aluminum cans and is packaged in 6-packs and 12-packs of cans. The design described in paragraph 11 is used on all packaging and all cans of PALMA® beer.

13.    Soltura's marks have been strengthened through extensive sales, advertising and publicity.

14.    As to sales, Soltura enjoys a substantial demand for this product.  Since it debuted the product in 2018, Soltura has sold over 900,000 cases (24x12 oz cans) to date of beer. Every product sold uses the above-mentioned trademark and design.

15.    As to advertising and publicity, Soltura always advertises PALMA® beer using the unique design and trademark through signs, stickers, and sell-sheets in stores.  Soltura also advertises PALMA® beer via online digital advertising, social media, its website, billboards, and trucks. All advertisements consistently contain the unique design and trademark so that viewers will associate the image of PALMA® beer with Soltura.

16.    These 6-packs of cans usually retail for under $12.00 with 12-pack of cans usually selling for under $22.00.[1]

17.    I understand that Defendants Cerveceria La Tropical USA, LLC and La Tropical Holdings B.V. ("Defendants") brew and sell beer, with one of their beers being called TROPI CRYSTAL.

18.    It is my understanding and based on my review of their products and advertising that Defendants' product is also intended to be reminiscent of that same Cuban beer "Cerveza Cristal."

---

[1] *See* Total Wine & More, ($9.99), https://www.totalwine.com/beer/lager/americanstyle-lager/palma-cerveza/p/227582121; Target, ($8.99), https://www.target.com/p/palma-lager-beer-6pk-12-fl-oz-cans/-/A-83927820.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

19.     It is my understanding that Defendants are currently selling their products in the marketplace.  And it appears based on my review of their website that TROPI CRYSTAL products are distributed or will be distributed at many of the same retailers where PALMA® beer is currently sold, such as Total Wine & More, ABC Liquor, Publix, and Target.

20.     On information and belief, Defendants also advertise and sell merchandise through the La Tropical website, and market on Facebook[2] and Instagram[3], and use similar in-store displays and brand packaging, as indicated below:



---

[2] Facebook:
https://www.facebook.com/photo.php?fbid=779253434203584&set=pb.100063568032605.-2207520000.&type=3.

[3] @latropicalbeer Instagram page

-4-

DECLARATION OF MARTIN WADLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION                    Case No. 3:23-cv-01104-JES-KSC



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

21. To my knowledge, there are no parties in violation of Soltura's trademark or trade dress rights in the United States besides Defendants.

I declare under penalty of perjury and the laws of the United States that the above is true and correct to the best of my knowledge.

Executed on August 23, 2023 in San Diego, CA.

_____
Martin Wadley

1305648/80231940v.1

-5-
DECLARATION OF MARTIN WADLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION          Case No. 3:23-cv-01104-JES-KSC

# EXHIBIT 1

# EXHIBIT 1

Generated on: This page was generated by TSDR on 2023-08-23 17:35:23 EDT

Mark: CERVEZA PALMA



| | | | |
|---|---|---|---|
| **US Serial Number:** | 87876393 | **Application Filing Date:** | Apr. 13, 2018 |
| **US Registration Number:** | 5824189 | **Registration Date:** | Aug. 06, 2019 |
| **Filed as TEAS RF:** | Yes | **Currently TEAS RF:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Status Date:** Aug. 06, 2019

**Publication Date:** Feb. 19, 2019

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | CERVEZA PALMA |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)/NUMBER(S) |
| **Description of Mark:** | The mark consists of the stylized wording "CERVEZA" against a quadrilateral. The stylized wording "PALMA" is underneath against two concentric quadrilaterals. The text is superimposed upon a design of a palm tree that stands on a small tuft of grass against the backdrop of an oval that is bisected by diagonal tapering lines. The oval is bordered by two concentric outlines of varied widths. |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Disclaimer:** | "CERVEZA" |
| **Translation:** | The English translation of "Cerveza Palma" in the mark is "Beer Palm". |
| **Design Search Code(s):** | 05.01.03 - Palm trees |
| | 05.13.03 - Grasses |
| | 26.03.21 - Ovals that are completely or partially shaded |
| | 26.13.12 - Quadrilaterals with bars, bands and lines |
| | 26.13.14 - Three or more quadrilaterals; Quadrilateral (three or more quadrilaterals) |
| | 26.13.16 - Quadrilaterals touching or intersecting |
| | 26.13.21 - Quadrilaterals that are completely or partially shaded |
| | 26.17.01 - Straight line(s), band(s) or bar(s); Lines, straight; Bars, straight; Bands, straight |
| | 26.17.06 - Lines, diagonal; Diagonal line(s), band(s) or bar(s); Bars, diagonal; Bands, diagonal |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Beer | | |
| **International Class(es):** | 032 - Primary Class | **U.S Class(es):** | 045, 046, 048 |

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** Apr. 09, 2018          **Use in Commerce:** Apr. 09, 2018

# Basis Information (Case Level)

**Filed Use:** Yes                    **Currently Use:** Yes

**Filed ITU:** No                     **Currently ITU:** No

**Filed 44D:** No                     **Currently 44E:** No

**Filed 44E:** No                     **Currently 66A:** No

**Filed 66A:** No                     **Currently No Basis:** No

**Filed No Basis:** No

# Current Owner(s) Information

**Owner Name:** Soltura LLC

**Owner Address:** 312 N Rios Avenue
Solana Beach, CALIFORNIA UNITED STATES 92075

**Legal Entity Type:** LIMITED LIABILITY COMPANY          **State or Country Where Organized:** CALIFORNIA

# Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

**Correspondent Name/Address:** SOLTURA LLC
312 N RIOS AVE
SOLANA BEACH, CALIFORNIA UNITED STATES 92075

**Phone:** 858-480-9020

**Correspondent e-mail:** martinwadley@outlook.com martin.solturallc@outlook.com          **Correspondent e-mail Authorized:** Yes

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Mar. 31, 2021 | NOTICE OF SUIT | |
| Aug. 06, 2019 | REGISTERED-PRINCIPAL REGISTER | |
| Jun. 30, 2019 | EXTENSION OF TIME TO OPPOSE PROCESS - TERMINATED | |
| Mar. 20, 2019 | EXTENSION OF TIME TO OPPOSE RECEIVED | |
| Feb. 19, 2019 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Feb. 19, 2019 | PUBLISHED FOR OPPOSITION | |
| Jan. 30, 2019 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jan. 07, 2019 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Jan. 08, 2019 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jan. 08, 2019 | EXAMINER'S AMENDMENT ENTERED | 88888 |
| Jan. 08, 2019 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | 6328 |
| Jan. 08, 2019 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| Jan. 08, 2019 | EXAMINERS AMENDMENT -WRITTEN | 80800 |
| Jan. 07, 2019 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jan. 07, 2019 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jan. 07, 2019 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Aug. 03, 2018 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Aug. 03, 2018 | NON-FINAL ACTION E-MAILED | 6325 |
| Aug. 03, 2018 | NON-FINAL ACTION WRITTEN | 80800 |
| Aug. 02, 2018 | ASSIGNED TO EXAMINER | 80800 |

| Apr. 24, 2018 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Apr. 21, 2018 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Apr. 17, 2018 | NEW APPLICATION ENTERED |

# TM Staff and Location Information

| | |
|---|---|
| **TM Staff Information - None** | |
| **File Location** | |
| **Current Location:** PUBLICATION AND ISSUE SECTION | **Date in Location:** Aug. 06, 2019 |

# Proceedings

| **Summary** | |
|---|---|
| **Number of Proceedings:** | 1 |

### Type of Proceeding: Extension of Time

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 87876393 | **Filing Date:** | Mar 20, 2019 |
| **Status:** | Terminated | **Status Date:** | Jun 30, 2019 |
| **Interlocutory Attorney:** | | | |

| **Defendant** | |
|---|---|
| **Name:** | Soltura LLC |
| **Correspondent Address:** | SOLTURA LLC<br>312 N RIOS AVE<br>SOLANA BEACH CA , 92075 |
| **Correspondent e-mail:** | martinwadley@outlook.com , martin.solturallc@outlook.com |

| **Associated marks** | | | |
|---|---|---|---|
| **Mark** | **Application Status** | **Serial Number** | **Registration Number** |
| CERVEZA PALMA | | 87876393 | |

| **Potential Opposer(s)** | |
|---|---|
| **Name:** | Cerbuco Brewing Inc. |
| **Correspondent Address:** | Andrea Anderson<br>Holland & Hart LLP<br>P.O. Box 8749__Attn: Trademark Docketing<br>Denver CO UNITED STATES , 80201 |
| **Correspondent e-mail:** | docket@hollandhart.com , AAnderson@hollandhart.com , DSSkinner@hollandhart.com , mamoore@hollandhart.com |

| **Prosecution History** | | | |
|---|---|---|---|
| **Entry Number** | **History Text** | **Date** | **Due Date** |
| 2 | EXT GRANTED | Mar 20, 2019 | |
| 1 | FIRST 90-DAY REQUEST TO EXT TIME TO OPPOSE | Mar 20, 2019 | |

Richard P. Sybert (SBN 80731)
rsybert@grsm.com
Hannah E. Brown (SBN 311158)
hbrown@grsm.com
Matthew R. Mejia, Bar No. 330028
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 230-7768
Fax: (619) 595-5768

Attorneys for Plaintiff
SOLTURA, LLC dba BUCANERO USA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLTURA, LLC dba BUCANERO USA, | Case No. 3:23-cv-01104-JES-KSC |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| vs. | District Judge: James E. Simmons, Jr. |
| CERVECERIÁ LA TROPICAL USA LLC and LA TROPICAL HOLDINGS B.V., | Magistrate Judge: Karen S. Crawford |
| Defendants. | Complaint Filed: June 13, 2023 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business addresses is: Gordon Rees Scully Mansukhani, 101 W. Broadway, Suite 2000, San Diego, CA 92101.

On **August 28, 2023**, I served the foregoing document(s) entitled:

1. **NOTICE OF PLAINTIFF SOLTURA, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

3. **DECLARATION OF MARTIN WADLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**4. DECLARATION OF RICHARD P. SYBERT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

☒ **BY U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California addressed as set forth below pursuant to FRCP 5(b)(C).

☒ **BY ELECTRONIC MAIL** by transmitting via electronic mail the document(s) listed above to the address(es) listed below on this date pursuant to FRCP 5(b)(2)(E).

☐ **BY OVERNIGHT DELIVERY:** by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery **by Federal Express** as part of the ordinary business practices of Gordon & Rees LLP, addressed as set forth below.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

| | |
|---|---|
| Gregory A. Nyle, Esq.<br>GREEBERG TRAURIG, LLP<br>18565 Jamboree Road, Suite 500<br>Irvine, CA 92612<br>Tel: (949) 732-6504<br>Email: nyleng@gtlaw.com | ***Attorneys for Defendants CERVECERIA LA TROPICAL USA, LLC and LA TROPICAL HOLDINGS B.V.*** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this court at whose direction this service was made.

Executed on **August 28, 2023**.

Rebeca Meza

CERTIFICATE OF SERVICE                    Case No. 3:23-cv-01104-JES-KSC

*Gordon Rees Scully Mansukhani, LLP*
*101 W. Broadway, Suite 2000*
*San Diego, CA 92101*