**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 1:23-cv-24350-DPG-GAYLES/LOUIS

LAGUNITAS BREWING COMPANY d/b/a
CERVECERIA LA TROPICAL, and
LA TROPICAL HOLDINGS B.V.,

                Plaintiffs,

     v.

SOLTURA, LLC dba BUCANERO USA,

                Defendant.

---

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>**

     Defendant SOLTURA, LLC dba BUCANERO USA ("Defendant"), by and through its

undersigned counsel, hereby submit their opposition to Plaintiffs motion for leave to filed amended

complaint (Doc. 47.)

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ........................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

        A.      The Pleadings. ........................................................................ 2

        B.      Discovery Conducted Related To Plaintiffs Alleged Harm. .................................. 3

        C.      The Proposed Amended Complaint. .................................................... 5

III.    STANDARD FOR LEAVE TO AMEND ........................................................ 6

IV.     THE MOTION SHOULD BE DENIED AS THE AMENDMENT EXCEEDS THE
        SCOPE OF LEAVE GRANTED TO AMEND THE COMPLAINT ............................... 8

V.      THE MOTION SHOULD BE DENIED AS THE AMENDMENT FAILS TO MEET
        RULE 15'S STANDARD FOR AMENDMENT. ............................................. 8

        A.      Plaintiffs Delay and Attendant Undue Prejudice Requires Denial of The Motion. 9

                1.      Legal Authority. ........................................................... 9

                2.      Argument. ................................................................11

                        a)      Mr. Wadley Should Not Be Added as a Party. ...........................11

                        b)      The New Liability and Damage Theories. .................................. 13

        B.      Plaintiffs Bad Faith Requires Denial of The Motion. ........................................... 15

        C.      The Motion Should Be Denied On Grounds of Futility. ..................................... 16

                1.      State of Act Doctrine. ................................................... 17

                2.      Lack of Standing and Damages. ............................................. 17

VI.     LACK OF MEET AND CONFER ................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964) ......................................................................................................17

*Barnes v. Sea Hawai'i Rafting, LLC, D. Hawai'i 2020,*
    493 F.Supp.3d 972 (D. Hawaii 2020), affirmed 2022 WL 501582 ................................8

*Bode & Grenier, LLP v. Knight,*
    808 F.3d 852 (D.C. Cir. 2015) ......................................................................................10

*Bryant v. Dupree,*
    252 F.3d 1161 (11th Cir.2001) ........................................................................................7

*Crest Hill Land Development, LLC v. City of Joliet,*
    396 F.3d 801 (7th Cir. 2005) ........................................................................................10

*Ecomed, LLC v. Ashahi Kasei Medical Co., Ltd.,*
    2017 WL 7795446 (S.D. Fla April 28, 2017) ..............................................................19

*Equal Rights Center v. Archstone Smith Trust,*
    603 F. Supp. 2d 814 (D. Md. 2009), aff'd, 602 F.3d 597 (4th Cir. 2010) ..........9, 10, 15

*Feldman v. American Memorial Life Ins. Co.,*
    196 F.3d 783, 793 (7th Cir. 1999) ...............................................................................11

*Georgiou Studio, Inc. v. Boulevard Invest, LLC,*
    663 F. Supp. 2d 973 (D. Nev. 2009) .............................................................................10

*GSS Properties, Inc. v. Kendale Shopping Center, Inc.,*
    119 F.R.D. 379 (M.D.N.C.1988) ............................................................................15, 16

*Hall v. United Ins. Co. of Am.,*
    367 F.3d 1255 (11th Cir. 2004) ....................................................................................16

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,*
    921 F.3d 1343 (11th Cir. 2019) ....................................................................................19

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir.1992) ............................................................................................7

*Kestenbaum v. Falstaff Brewing Corp.,*
    575 F.2d 564 (11th Cir. 1978) ......................................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................18

*Lichtenstein v. Kidder, Peabody & Co., Inc.*,
  777 F. Supp. 423 (W.D. Pa. 1991) ...........................................................................11

*McCarthy v. Komori America Corp.*,
  200 F.R.D. 507 (E.D. Pa. 2001) ...............................................................................10

*Nat'l Inst. of Agrarian Reform v. Kane*,
  153 So.2d 40 (Fla. 3d DCA 1963) ............................................................................17

*National Pesto Industries, Inc. v. U.S. Merchants Financial Group, Inc.*,
  2024 WL 4746280 (8th Cir. 2024) ...........................................................................19

*Nece v. Quicken Loans, Inc.*,
  292 F. Supp. 3d 1274 (M.D. Fla 2018) ................................................................9, 12

*Ocean Front Apartments, Inc. v. Wright National Flood Insurance Company*,
  2023 WL 4571959 (11th Cir. 2023) ...........................................................................7

*Sosa v. Airprint Sys., Inc.*,
  133 F.3d 1417 (11th Cir. 1998) ..................................................................................7

*Southern Alliance Corp. v. Winter Haven*,
  505 So.2d 489 (Fla. 2d DCA 1987) ..........................................................................19

*Spartan Concrete Products, LLC v. Argos*
  USVI, Corp., 929 F.3d 107, 116, 117 (3d Cir. 2019) ...............................................10

*Standard Oil Co. v. Moore*,
  251 F.2d 188 (9th Cir. 1957) ....................................................................................19

*Svoboda v. Trane Co.*,
  655 F.2d 898 (8th Cir. 1981) ....................................................................................10

*Taveras v. Bank of America, N.A.*
  89 F.4th 1279 ...........................................................................................................16

*Whatley v. World Fuel Services Corp.*,
  20-20993-MC, 2020 WL 4818924 (S.D. Fla. Aug. 19, 2020) ...................................20

*Winters v. Fru-Con Inc.*,
  498 F.3d 734 (7th Cir. 2007) ....................................................................................11

**Statutes**

17 U.S.C. § 504 ...............................................................................................................1

17 U.S.C. § 504(c) ................................................................................................16

Lanham Act (15 U.S.C. 1117(a)) ............................................................................4

**Other Authorities**

Federal Rule of Civil Procedure
      Rule 15 ..............................................................................................8
      Rule 15(a) ...........................................................................................7
      Rule 15(a)(2) ...................................................................................6, 7
      Rule 16 ..............................................................................................8
      Rule 16(b) ...........................................................................................7
      Rule 16(b)(4) ......................................................................................6
      Rule 26(a)(1)(A)(iii) ...........................................................................3

## I.    <u>SUMMARY OF ARGUMENT</u>

The motion comes nearly one (1) year after this lawsuit was filed, and some seventeen (17) months after litigation was first filed by the parties in California.  Fact discovery has been closed for months (Doc. 32), and Defendant has spent substantial sums conducting ten (10) days of deposition, engaged in written discovery, reviewed over 17,000 pages of documents produced by Plaintiffs and third parties, and engaged in expert disclosure. Over the past year, Defendant has developed a strategy to defend this matter and has made specific strategic decisions based on the theories pled in the original complaint and Plaintiffs written agreement on July 26, 2024 they were <u>not</u> seeking damages for lost sales, lost profits or seeking any other compensation *other disgorgement of Defendant's profits on the false advertising claims*.[1] (Farrow Decl., para. 7-10.) The amendment, if allowed, will turn this case on its head.  The amendment adds a new party nearly seven (7) months after the March 29, 2024 deadline in the scheduling order. (Doc. 19.)  As to the false advertising claims (the Third and Fourth Claims) the amendment will fundamentally change Plaintiffs theory of liability and recovery from one of disgorgement of Defendant's profits (which are nominal at best) to a multi-million-dollar measure of damages based on Plaintiffs lost sales, lost profits, reputation, goodwill, and commercial and reputational harm – even though no discovery was ever had on such matters per agreement of the parties. (Farrow Decl., para. 11.) The new claims are not actionable, the amendments are futile and raise a constitutional issue asking this Court to side with Plaintiffs that Cuba's expropriation of assets in 1960 was illegal and Plaintiffs, not Cuba, are the lawful owner of certain rights that serve as the foundation of their claims.  The amendment comes too late, the prejudice too great, and the motion must be denied.

---

[1] As to the copyright infringement claim, Plaintiffs also confirmed in writing on July 26, 2024 that they were only seeking statutory damages per 17 U.S.C. § 504.

1

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

### A.    The Pleadings.

On June 16, 2023, Soltura, LLC (the Defendant herein) filed a lawsuit in California styled *Soltura, LLC dba Bucanero USA v. Cerveceria La Tropical USA LLC and La Tropical Holdings B.V.*, in the United States District Court, Southern District of California, Case # 23CV1104JES KSC that alleged, among other things, La Tropical Holdings B.V.'s (a plaintiff herein) label design infringed on Soltura, LLC's trademark.  After La Tropical Holdings B.V. made changes to its label design, the California action was dismissed without prejudice on October 20, 2023 for improper venue.  Soltura, LLC had no intention of refiling that complaint as the changes made to the label were sufficient to resolve the matter, and Soltura, LLC has not filed a counter-claim in this lawsuit.[2] (*See* Farrow Declaration, paras. 2, 4, 6.)

On November 13, 2023, Plaintiffs filed this action against Soltura, LLC. (Doc. 1.)  Even though Martin Wadley's name is referenced in the California lawsuit as the owner of Soltura, LLC (*see* Farrow Decl., para.3, Ex. A at para. 1) and another three times in the present Florida lawsuit as the principal of Soltura, LLC (Doc. 1, para. 57, 67, 131; Doc. 1-19 (Ex. Q), pp. 11)) and described as the architect of Soltura, LLC's quest to bring Cerveza Palma to the United States (Doc. 1-18 (Ex. P), pp. 5-7), Plaintiffs choose not to name him as a defendant.

The original Complaint (Doc. 1) alleged, in essence, three legal theories.  The First Claim sought a declaration that the parties labels were not confusingly similar – an issue that is now moot. (Doc. 1, para. 84-97; Farrow Decl. paras. 4, 6.)  The Second and Fifth Claims allege Defendant infringed on Plaintiff's copyrighted Three Palms Logo design and was entitled to damages and cancellation of Defendant's trademark (which Plaintiffs claim incorporates the Three Palms Logo

---

[2] Defendant's current counsel Michelman & Robinson, LLP did not represent Soltura, LLC in the California matter. (Farrow Decl., para.4.)

design). (Doc. 1, para. 98-107, 129-140.)   Finally, the Third and Fourth Claims alleged Defendant's falsely advertised its product as a beer sold in Cuba which created consumer confusion entitling Plaintiffs to "damages to Plaintiffs' business, reputation, and goodwill" on the Third Claim and "actual damages" on the Fourth Claim. (Doc. 1, para. 108-118, 119-128, Prayer For Relief (Doc. 1, p. 35).)

On December 6, 2023, Defendant filed a motion to dismiss. (Doc. 10.)  On October 24, 2024, this Court granted in part the motion to dismiss the Third and Fourth Claims for false advertising for lack of standing and granted Plaintiffs leave to amend to allege facts, if they could, that Defendant's unlawful actions caused the *Plaintiffs* to lose sales of their beer and suffered injury to their reputation and goodwill. (Doc. 45, pp. 13-14, 15.)

Defendant filed an Answer to the Complaint. (Doc. 46 and 49.)

**B.      Discovery Conducted Related To Plaintiffs Alleged Harm.**

Initial disclosures were exchanged on March 22, 2024. (Farrow Decl, para 8a, Ex. B.) Plaintiffs initial disclosure did not provide any computation of damages claimed by them, or willingness to allow Defendant an opportunity to inspect documents supporting Plaintiffs claimed damages as mandated by Federal Rule of Civil Procedure "Rule" 26(a)(1)(A)(iii). (See Farrow Decl., para. 8a, Ex. B, p. 7.)  Defendant propounded interrogatories and document requests to both Plaintiffs seeking the basis for all of their damage claims. (See Farrow Decl., para. 8c, Ex. C-D.) Plaintiffs refused to provide *any* information or documents regarding their alleged damages. (See Farrow Decl., para. 8.)  Defendant took the deposition of Plaintiffs corporate representative Manny Portuondo on June 27, 2024 regarding Plaintiffs alleged harm, but he was unable (or unwilling) to provide information or documents by which anyone could calculate Plaintiffs alleged harm. (See Farrow Decl., para. 8g, 8h, Ex. H, pp. 2-4.)

Thereafter, counsel met and conferred numerous times by telephone and written correspondence regarding Plaintiffs refusal to provide information and documents pertaining to Plaintiffs alleged harms. (See Farrow Decl., para. 8h-8i).  Defendant suspected Plaintiffs had no lost sales that could be attributed to Defendant's activities and otherwise suffered no harm which is why Plaintiffs refused to disclose the basis for their damage claims. (See Farrow Decl., para. 8i.)  That suspicion was confirmed during a telephone call between counsel on July 18, 2024 when Plaintiffs lead attorney Steve Wadyka initially took the position that Plaintiffs were *only* seeking the remedy of disgorgement of Defendant's profits, but then indicated Plaintiffs may seek damages and that he would let Defendant's counsel know by the end of the following week.  (See Farrow Decl., para. 8j, Ex. I.)  Eight days later on July 26, 2024, Plaintiffs attorney Molly Littman sent an email stating that as to the false advertising claims (i.e., Counts Three and Four) Plaintiffs were only seeking disgorgement of Defendant's profits, not Plaintiffs lost sales or profits: (See Farrow Decl., para. 8m, Ex. I.)  Based on that representation, there was no need for Defendant to press forward with demanding financial information and records regarding Plaintiffs sales and profits or other damage related issues since Plaintiffs took all such matters off the litigation table. (See Farrow Decl., para. 8n, Ex. I.)

Consistent with Plaintiffs representation that it was only seeking disgorgement, Plaintiffs conducted extensive discovery of Defendant and third parties to obtain information regarding Defendants total sales – information that Plaintiffs had the burden to establish under the Lanham Act (15 U.S.C. 1117(a))[3].  In all, four (4) depositions were taken and at least 11,000 pages of records were produced. (See Farrow Decl., para. 8o.)  On October 15, 2024, Plaintiffs disclosed

---

[3] The Act provides that when a plaintiff seeks to recover defendants profits "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.".

their expert Mr. Jose G. Cuneo who submitted a report to support Plaintiffs claim for disgorgement of Defendants profits only (which was consistent with the representation made by Ms. Littman in her July 26, 1014 email.) (See Farrow Decl., para. 8p.)

        **C.**    **The Proposed Amended Complaint.**

The proposed amendment makes three (3) changes that will fundamentally alter the landscape of this litigation and will unduly prejudice this Defendant. The changes are:

    1.     The addition of a new party – Martin Wadley - to every cause of action.

    2.     The Third and Fourth Claims For False Advertising:  This amendment seeks to challenge the validity of the Cuban expropriation decree in 1960 that nationalized private property in Cuba.  The core of the proposed amendment centers on Plaintiffs new claim that, by virtue of a May 29, 2001 assignment from a member of the Blanco-Herrera family, Plaintiffs are now the sole and exclusive owners of everything associated with and linked to the La Tropical brewery in Cuba, and that Plaintiffs, and Plaintiffs alone, have the exclusive right to be associated with any beer that portends to have *any* connection, whether real or fictitious, with the "heritage" of Cuba, the familial connection of the Blanco-Herrera and Kohly families to the La Tropical brewery in Cuba, and the trade dress of the label design on the beer sold in Cuba. (Doc. 47-2, para. 38, 63-66, 72, 74-75, 78-80, 127, 129-133, 136-138, 144-149, 151-152).  Plaintiffs admit the Blanco-Herrera and Kohly families owned only a portion of the La Tropical brewery prior to the Cuban revolution. (Doc. 47-2, para. 22.)  Plaintiffs then take the position that in 1960 Cuba illegally seized and "stole" the assets of La Tropical brewery in Cuba and the shareholder interests owned by Blanco-Herrera and Kohly families in Cuba. (Doc. 47-2, para. 48.)  Accordingly, for the May 29, 2001 assignment to have any effect, Plaintiffs need this Court to side with them that Cuba's 1960 expropriation decree "illegally confiscated and nationalized" private property and that Plaintiffs (via the May 29, 2001 assignment), not Cuba, have the exclusive right to any and all assets of the La Tropical brewery in

Cuba, including its recipe and trade dress, among other items. (Doc. 47-2, paras. para. 1, 5, 29, 43, 48, 49, 78, 80, 90, 135, 152, 161.)  If that assignment is effective, then Plaintiffs, according to them, have the "exclusive" rights to any reference, association and connotation to and for anything to do with the "heritage" and "lineage" to the Blanco-Herrera family and La Tropical and its predecessors such that Plaintiffs have the exclusive "right to identify itself as the sole and legitimate heir to the famous Cuban CRISTAL beer and the original Cerveceria La Tropical Brewery in Cuba."[4] (Doc. 47-2, para. 7, 78, 80, 136, 152.)

3.     The Third and Fourth Claims For False Advertising:  The amendment improperly seeks to add a new and different claim for harm that was waived by Plaintiffs and for which no discovery was conducted.  (Farrow Declaration, para. 11-12.)  Plaintiffs now seek damages relating to "its reputation and goodwill" (Doc. 47-2, para. 78), Plaintiffs own lost sales (Doc. 47-2, para. 80, 137, 151), Plaintiffs "commercial and reputational harm" (Doc. 47-2, para. 153); "proxy damages" (Doc. 47-2, para. 138); and seeks an injunction that prohibits Defendant from using its trade dress and trademark, tag line, and any reference to "the heritage of the Blanco-Herrera family and the original La Tropical Brewery in pre-Castro Cuba." (Doc. 47-2, p. 50(l)(v)-(viii).)

## III.    <u>STANDARD FOR LEAVE TO AMEND</u>

The motion implicates not only the standard to amend under Rule 15(a)(2), but also the more stringent standard of seeking leave to amend under Rule 16(b)(4) since the deadline to add new parties has long since expired.  Plaintiffs motion fails to meet the standard for amendment under Rule 15(a)(2), and Plaintiffs have never requested leave to amend the scheduling order to extend the deadline to add new parties, and therefore, Plaintiffs motion must be denied.

---

[4] This claim (if allowed) is subject to dismissal under the Acts of State Doctrine. (See Section VC(1).)

Rule 15(a)(2) permits a party to amend its pleadings only by leave of court or written consent of the adverse party.  Rule 15(a)(2) allows a district court to "freely give leave when justice so requires."  Nevertheless, a motion to amend is appropriately denied (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001).  Thus, as a threshold matter, the moving party must establish it filed the motion as soon as the necessity for altering the pleading became apparent and the lack of prejudice to the adverse party if the amendment is allowed. *Ocean Front Apartments, Inc. v. Wright National Flood Insurance Company*, 2023 WL 4571959 (11th Cir. 2023).

When a party seeks to amend after a deadline imposed by a scheduling order, Rule 15(a)'s liberal "freely give" standard is superseded by Rule 16(b)'s more stringent requirement of "good cause" for modifying a scheduling order. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-1419 (11th Cir. 1998).  Thus, a party seeking leave after a scheduling order deadline must satisfy *both* the Rule 16(b) and Rule 15(a) standards.  This good cause standard precludes modification unless the moving party proves the schedule could not "be met despite the diligence of the party seeking the extension." (*Id*. at 1418, quoting Rule 16 advisory committee's note; and citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992).  In *Sosa*, the "good cause" requirement was not met where the plaintiff delayed seeking leave to add a defendant, especially where it was within the control of the moving party to do. (*Id*. at 1418, fn 2.)  Similarly, in *Johnson*, 975 F.2d 610, the moving party failed to establish "good cause" for modifying the scheduling order and hence the court denied the motion to amend brought four (4) months after the cut-off date for amendment had expired.

## IV.   THE MOTION SHOULD BE DENIED AS THE AMENDMENT EXCEEDS THE SCOPE OF LEAVE GRANTED TO AMEND THE COMPLAINT.

Amended pleadings may not exceed the scope of leave granted by the district court. *Barnes v. Sea Hawai'i Rafting, LLC, D. Hawai'i 2020*, 493 F.Supp.3d 972, 978 (D. Hawaii 2020), affirmed 2022 WL 501582 (plaintiff exceeded grant of leave to amend claim against certain parties.)  Thus, when leave is granted to amend certain claims against specific parties, the district court may dismiss and strike any portions of the amended pleading not expressly permitted. (*Id*. at 978-979.)  "The rule applies even if the court did not expressly bar amendments other than the one(s) it <u>did</u> allow." (*Id*. at 979, quoting *Raiser v. City of Los Angeles*, No. CV 13-2925 RGK RZ, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014).)

Here, the October 24, 2024 order did not authorize Plaintiffs to add a new party. (Doc. 45.)  Further, the deadline to add a new party was March 29, 2024. (Doc. 19, p.1.)  At no time did Plaintiffs request to extend that deadline, nor do Plaintiffs make any such request in the pending motion. (Doc. 47.)  As such, Plaintiffs have failed to make any showing, let alone a sufficient reason, to extend the deadline to add a new party to this litigation.  Therefore, leave to add Martin Wadley as a new party must be denied.[5]

## V.   THE MOTION SHOULD BE DENIED AS THE AMENDMENT FAILS TO MEET RULE 15'S STANDARD FOR AMENDMENT.

Federal district and appellate courts across this Country have consistently denied leave to amend a pleading where the moving party delays seeking the amendment and/or seeks to change its legal theory, damages, or defenses after or near the close of discovery.

---

[5] If this Court were to excuse Plaintiffs failure to comply with the requirements of Rule 16, the motion should still be denied because the amendment fails to satisfy the requirements of Rule 15.

A.    **Plaintiffs Delay and Attendant Undue Prejudice Requires Denial of The Motion.**

1.    Legal Authority.

In  *Nece v. Quicken Loans, Inc.*, 292 F. Supp. 3d 1274, (M.D. Fla 2018)   (vacated   and superseded on other grounds by No. 8:16-cv-2605-T-23CPT, 2018 WL 4279803 (M.D. Fla. Mar. 15, 2018), plaintiff sought leave to amend the complaint *prior* to the close of fact discovery. (*Id*. at 1279.)  The amendment changed the liability theory of the case. (*Id*.)  In denying leave to amend, the court assessed the new theory of liability would cause undue prejudice by requiring the defendant to engage in further discovery regarding the new matters. (*Id*.)  The court rejected plaintiff's effort to justify the delay in bringing the motion by attributing the delay to depositions of the defendant's corporate representatives who purportedly "confirmed" the basis for seeking amendment - yet the plaintiff identified no new information uncovered through the depositions to explain or justify the delay in seeking amendment. (*Id*.)

In *Equal Rights Center v. Archstone Smith Trust*, 603 F. Supp. 2d 814 (D. Md. 2009), aff'd, 602 F.3d 597 (4th Cir. 2010), the plaintiff moved for leave to amend its complaint after fact discovery had closed. (*Id*. at 602-603.)  The proposed amendment included a claim for contribution that changed the defendant's exposure to a damages award. (*Id*. at 603-604.)  The district court denied the motion, and the appellate court affirmed because the amendment would have unduly prejudiced the defendant. (*Id*.)  Specifically, the parties had completed fact discovery, and allowance of the amendment would have required the court to reopen discovery to allow the defendant to conduct discovery on the basis for the new theory. (*Id*. at 603.)  The amendment would also result in undue prejudice to the defendant because prior to the motion to amend was filed, the defendant prepared its defense based on the existing legal theory pled, and allowing the change in damages theory meant the defendant would be prejudiced in its ability to assess

rationally its exposure to a damages award. (*Id*.)  The court also noted that had plaintiff asserted that damage claim earlier, the defendant would have sought specific discovery regarding the basis therefore. (*Id*.)  The court also noted that during fact discovery the plaintiff objected to and resisted discovery by the defendant that would have been relevant to the new damage theory. (*Id*. at 603-604.)

Numerous district and appellate courts across the United States have denied motions to amend on similar grounds.  See *Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) [denying motion to amend answer to remove admission relied on by the plaintiff when conducting discovery]; *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) [denying leave to amend answer to raise new issues that would have required additional discovery and  threatened to reshape the landscape of the litigation]; *Georgiou Studio, Inc. v. Boulevard Invest, LLC*, 663 F. Supp. 2d 973 (D. Nev. 2009) [Shopping center management company would be prejudiced if the shopping center owner were allowed to amend the complaint to add claims against new third-party defendants resulting in extra discovery and defense costs]; *McCarthy v. Komori America Corp.*, 200 F.R.D. 507 (E.D. Pa. 2001) [denying motion for leave where defendant would have been prejudiced in its ability to prepare a defense to a punitive-damages claim]; *Spartan Concrete Products, LLC v. Argos* USVI, Corp., 929 F.3d 107, 116, 117 (3d Cir. 2019) [denying motion to amend where the amendment raised "new theories of recovery that would require different discovery" even though the amendment was brought within 10 days of learning of the basis for the amendment and nine (9) months before trial]; *Svoboda v. Trane Co.*, 655 F.2d 898, 900 (8th Cir. 1981) [denying motion to amend brought one year after the lawsuit was filed and after the close of discovery, where the amendment sought to introduce new theories

10

of liability]; *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740-741 (7th Cir. 2007) [denying motion to amend where the proposed amendment affects the defendant's discovery and trial strategy.]

      2.    <u>Argument.</u>

      a)    Mr. Wadley Should Not Be Added as a Party.

In *Lichtenstein v. Kidder, Peabody & Co., Inc.*, 777 F. Supp. 423 (W.D. Pa. 1991), the plaintiff sought, after the close of discovery, to add the defendant's employee whom the plaintiff had dealt. The district court denied the motion explaining "It would be unduly prejudicial to require Mr. Chewing, who has not participated in discovery, to attempt now to formulate a defense to the plaintiff's allegations, particularly when discovery is already closed." (Id. at 427.) Similarly, in *Feldman v. American Memorial Life Ins. Co.,* 196 F.3d 783, 793 (7th Cir. 1999), the plaintiff moved for leave to add an additional defendant after the close of discovery where the plaintiff waited five (5) months to file the motion after discovering the facts necessitating the amendment and resulting prejudice to the existing and new defendant. (Id.)

Here, the proposed amendment reflects the type of gamesmanship and "gotcha" style litigation tactics that courts loathe. The amendment to add Mr. Wadley comes after the close of discovery and nearly eight (8) months after the deadline to add a new party. Plaintiffs offer no legitimate excuse or justification for their delay to add Mr. Wadley as a defendant. Mr. Wadley was known to Plaintiffs long before this lawsuit was filed as was his involvement in the alleged wrongful conduct. (Farrow Decl., paras. 2-3.) Yet, Plaintiffs choose not to name him as a defendant in this litigation, then chose not to name him as a defendant before the March 29, 2024 deadline to add new parties, and never sought leave to extend the deadline to add Mr. Wadley as a defendant. The facts set forth in the motion as the purported grounds to name Mr. Wadley as a defendant were known to Plaintiffs long before September 12, 2024 – and likely known before the March 29, 2024 deadline to add new parties. In fact, the motion is silent as to what information

Plaintiffs learned (and when) that led them to decide now to add Mr. Wadley as a defendant.  Given

the inordinate amount of time that passed since Mr. Wadley was deposed in this matter on June

20, 2024 (at which time Plaintiffs learned the supposed information they now claim justifies adding

Mr. Wadley as a party) Plaintiffs claim they decided to add Mr. Wadley as a party on or about

September 12, 2024 when they "confirmed his participation in the unlawful acts" at his second

deposition. (Doc. 47, p. 10.)  That is 100% untrue. In fact, Plaintiffs state on page 11 of their

motion they told Defendant's counsel on August 20, 2024 they intended to add Mr. Wadley as a

defendant.  Even if it were true that Plaintiffs decided to wait to amend until they "confirmed" Mr.

Wadley's testimony on September 12, 2024 – that is not a justifiable excuse for the delay.

*Nece*, 292 F. Supp. 3d 1279 (rejecting plaintiff's effort to justify the delay in bringing the motion

by attributing the delay to depositions of the defendant's corporate representatives, who

purportedly "confirmed" the basis for seeking amendment.)  The most reasonable explanation for

adding Mr. Wadley as a party so late into these proceedings is to pressure Mr. Wadley to settle the

case.  (Farrow Decl., para. 18.)  As the motion makes clear, Plaintiffs waited until *after* this Court

dismissed the heart and sole of their case – the false advertising claims. (Doc. 47, p. 10.)  Knowing

it was unlikely they would be able to maintain those claims – they sought to rachet up the pressure

on Mr. Wadley by suing him personally for alleged acts they do not deny knowing about prior to

the March 29, 2024 deadline to add new parties.  Further, adding Mr. Wadley as a party will most

assuredly cause further delays in these proceedings, force him and Defendant to spend more in

legal fees to conduct discovery and further motion practice (i.e., a motion to dismiss for lack of

personal jurisdiction and motion to dismiss for failure to state a claim), and otherwise alter the

deadlines in the scheduling order.  (Farrow Decl., paras. 19-20.)  Plaintiffs falsely assert "Mr.

Wadley has already had the opportunity to engage in discovery and, through Soltura, did engage

in discovery regarding each of Plaintiffs' claims" (Doc. 47, p. 10.)  Plaintiffs provide no evidence of such because there is none. If added as a party, Mr. Wadley would have the right, as does every defendant, to receive initial disclosures from Plaintiffs and thereafter conduct discovery into the factual claims asserted against him personally, and disclose experts to support his defense to the new claims.  That discovery would include written interrogatories and document requests, and taking depositions of Plaintiffs corporate representatives and possibly third parties identified by Plaintiffs with information to support their claims against him.  The fact that Plaintiffs declare in their motion that Mr Wadley is not entitled to conduct any discovery to protect himself speaks to "gotcha" style tactics that are rightly denounced by courts.  Thus, this Court should deny the motion to add Mr. Wadley as a party.

b)        The New Liability and Damage Theories.

The amendments reflect a wholesale change to the legal theories and damages that have been the subject of discovery for nearly a year.  Had this Court known Plaintiffs agreed to limit their recovery to disgorgement of Defendants profits (see Farrow Decl, para. 8m-8n) it likely would not have been so generous when granting Plaintiffs leave to allege facts, if they could, to establish standing - i.e., an injury that harmed Plaintiffs rather than the Cuban government. (Doc. 45, p. 13.)  Plaintiffs took advantage of that opportunity - all to the prejudice of Defendant.

The amendment raises two new theories.  First, Plaintiffs allege that they acquired, via the May 29, 2001 assignment from the Blanco-Herrera family, all rights to be the sole and exclusive owners of everything associated with and linked to the La Tropical brewery in Cuba, and that Plaintiffs, and them alone, have the exclusive right to be associated with any beer that portends to have *any* connection, whether real or fictitious, with the "heritage" of Cuba, the familial connection of the Blanco-Herrera and Kohly families to the La Tropical brewery in Cuba, and the trade dress of the label design on the beer sold in Cuba. (See Section IIC(2), *supra*.)  A predicate to

13

determining the validity of that assignment turns on whether this Court will side with Plaintiffs and find Cuba's 1960 expropriation of assets in Cuba (including the interests of the Blanco-Herrera and Kohly families purportedly assigned on May 29, 2001) to be illegal.  If the Court declines to side with Plaintiffs, the assignment is of no effect and Plaintiffs claims fail legally and factually.[6] The second new theory is that the alleged consumer confusion is no longer between Defendant's beer and the beer sold in Cuba (which the Court has ruled is not actionable) but is now cast consumer confusion between Defendant's product and its linkage to the familial and heritage "rights" to all-things-Cuban that Plaintiffs claim exclusivity – even superior to the Cuban government. (See Section IIC(2), *supra*.)  These two theories are new and were not the subject of discovery.  Further, while Defendant did retain and disclose a survey expert witness (Mr. Thomas Maronick, former Director – Office of Impact Evaluation for the Federal Trade Commission) Mr. Maronick's survey was based on the theory pled in the *original* lawsuit, and did not take into account Plaintiffs new theory that Defendant's marketing, advertising and promotion of its beer traded off Plaintiffs exclusive "heritage" and "familial" rights to everything having to do with a Cuban beer.  Had that claim been placed at issue before Mr. Maronick prepared his report, Defendant would have had a different survey conducted.  To allow the amendment would be unduly prejudicial to Defendant. (See Farrow Decl., para. 9.)

Additionally, the amendment changes the theory from customer confusion that may cause the *Cuban government* to lose sales (Doc. 45, p. 13) to one of customer confusion causing *Plaintiff to lose sales* (Doc. 47-2, paras. 126-140.)  That new theory was never the subject of discovery because (1) that theory was not pled in the original complaint, and (2) Plaintiffs resisted discovery

---

[6] This claim (if allowed) is subject to dismissal under the Acts of State Doctrine.  (See Section VC(1).).

into *their* sales and profits and agreed Plaintiffs were only seeking disgorgement of *Defendant's profits*, and thus, no discovery into Plaintiffs sales or profits was conducted. (See Farrow Decl., para. 8.) See *Equal Rights Center v. Archstone Smith Trust*, 603 F. Supp. 2d 814 [rejecting amendment to add a new theory that was not the subject of discovery and where plaintiff had objected to and resisted discovery by the defendant that would have been relevant to the new damage theory.]  Further, this amendment would add a new and different claim for harm that was waived by Plaintiffs and for which no discovery was conducted.  Per the amendment, Plaintiffs now seek damages relating to "its reputation and goodwill" (Doc. 47-2, para. 78), Plaintiffs own lost sales (Doc. 47-2, para. 80, 137, 151), Plaintiffs "commercial and reputational harm" (Doc. 47-2, para. 153); and seeks an injunction that prohibits Defendant from using its own trade dress and trademark, tag line, and any reference to "the heritage of the Blanco-Herrera family and the original La Tropical Brewery in pre-Castro Cuba." (Doc. 47-2, p. 50(l)(v)-(viii).)  Given the lateness of the amendment, that fact discovery has closed and the resulting costs and delays that will result from the amendment, Defendant would be unduly prejudiced and therefore the motion must be denied. (Farrow Decl., paras. 9-14, 20.)

    **B.**    **Plaintiffs Bad Faith Requires Denial of The Motion.**

A showing of bad faith in submitting an amendment is sufficient to deny a motion to amend. *GSS Properties, Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379, 381 (M.D.N.C.1988) [bad faith existed where timing of the amendment suggested plaintiff had an ulterior purpose of either attempting to force defendant to settle or punishing defendant for failing to settle.]  Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage. (*Id*.)  Thus, parties have an obligation to introduce, at the earliest stage of the litigation as possible, the matters upon which they want to rely in supporting their claim or

defense to remove the element of gamesmanship from the litigation equation and allow the adverse party adequate time to conduct discovery and prepare its case for trial. (*Id.*)

On August 20, 2024, the parties herein attended an all-day zoom mediation with Harry Schafer, Esq. (See Farrow Decl, para. 15.)  In preparation for that mediation, Defendant prepared a detailed mediation brief and exposure assessment based on Plaintiffs legal theories pled in the original complaint that took into account Plaintiffs agreement <u>not</u> to seek damages for lost sales, lost profits or seek any other compensation *other disgorgement of Defendant's profits on the false advertising claims*.[7] (Farrow Decl., para. 16.)  The case did not settle. (See Farrow Decl, para. 17.) According to the motion at page 11, Plaintiffs' counsel "conferred in good faith with opposing counsel in person on August 20, 2024 regarding adding Martin Wadley as an individual defendant."  That statement is false (see Farrow Decl, para. 15) but it also evidence of Plaintiffs motivation for the late amendment.  Essentially, Plaintiffs position is that they knew by August 20, 2024 (at the mediation) of a basis to add Mr. Wadley as a defendant but declined to do so, and did so only after the case did not settle.  To avoid the obvious delay in seeking the amendment, Plaintiffs falsely declare that they did not know until after Mr. Wadley's second deposition on September 12, 2024 grounds existed to name him as a party. (Doc. 47, p. 10.)   Similar to the situation in *GSS Properties, Inc.*, there is ample evidence to suggest Plaintiffs had an ulterior purpose in adding Mr. Wadley to this case – either attempting to force Defendant to settle or punishing Defendant for failing to settle.  The motion should be denied.

**C.**   **The Motion Should Be Denied On Grounds of Futility.**

A district court may properly deny leave when the amendment would be futile. See *Taveras v. Bank of America, N.A.* 89 F.4th 1279, 1288-1289; *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255,

---

[7] As to the copyright claim, Plaintiffs also confirmed in writing on July 26, 2024 that they were only seeking statutory damages per 17 U.S.C. § 504(c) that capped exposure at $30,000.

1262–1263 (11th Cir. 2004). Thus, when the complaint as amended would still be dismissed, the district court may properly deny a motion for leave to amend as futile. (*Id.*)

        1.    <u>State of Act Doctrine.</u>

The Act of State Doctrine binds every sovereign state to respect the independence of all other sovereign states, and courts of one country will not judge the acts of another government done within the other's own territory. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 417-418, 439 (1964) ["Since the act of state doctrine proscribes a challenge to the validity of the Cuban expropriation decree in this case, any counterclaim based on asserted invalidity must fail. Whether a theory of conversion or breach of contract is the proper cause of action under New York law, the presumed validity of the expropriation is unaffected."]; *Nat'l Inst. of Agrarian Reform v. Kane,* 153 So.2d 40 (Fla. 3d DCA 1963) [refusing to declare the invalidity of a Cuban decree taking property of business, assets, personality and property, both real and personal, of stockholders in a Cuban corporation.]  Courts have examined and applied the Act of State Doctrine follow the general jurisprudence of the doctrine as developed throughout other U.S. courts. See *National Institute of Agrarian Reform v. Kane*, 153 So. 2d 40 [finding that under the act of state doctrine, a Florida court would not question validity of act of expropriation by Cuban government of property of Cuban corporation in Cuba.]

Here, the amendment proscribes a challenge to the validity of Cuba's expropriation decree, and any claim based on asserted invalidity (including the effect on the March 29, 2001 assignment Plaintiffs claim grants them rights to Cuba's nationalized property) must fail.

        2.    <u>Lack of Standing and Damages.</u>

If the Court wanted to avoid addressing the Act of State Doctrine, it can find the amendment is futile either because Plaintiffs already agreed to only seek disgorgement of

Defendants profits (and no other harms asserted in the amendment) and/or the amendment is not actionable and subject to a motion to dismiss or strike.

Plaintiffs new liability and damage claims are so thinly alleged and obtuse that the amendment still fails to allege injury and standing under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 121 (2014).  There are no facts pled regarding any alleged harm or that sales were actually lost.  That is not surprising since Defendant began selling its beer in 2018 (Farrow Decl., para. 3, Ex. A, para. 14.) whereas Plaintiffs only started selling their beer in April 2023. (Doc. 47-2, para. 3.)  Further, the notion that any person or entity can, as Plaintiffs assert, have the exclusive right to any association with a heritage, culture, or country is not found in the law.  That proposition is not only undemocratic and runs counter to nearly 250 years of  free market principles *this* Country has encouraged.  In fact, the amendment confirms that the United States Patent and Trademark Office has already rejected Plaintiffs effort to assert for themselves a logo and design that has an association with the Cuban beer brand "Cristal" which is owned by a Peruvian based company - Union de Cervecerias Peruanas Backus y Johnston S.A.A. (See Doc. 47, para. 45.)  If this Court were to entertain Plaintiffs request for judicial approval that any person or company can monopolize an association with a heritage, culture, or country, that result will have far reaching and negative consequences for American businesses.  There are entire industries in this County that manufacture products that have an association to a foreign country, heritage or culture, including "Mexican" beers, "German" lagers, and "Italian" pastas.  Those companies market their products with a romanticized connection to a foreign culture and heritage to sell their product – which is exactly what Plaintiffs want to do as well.  The difference here is that Plaintiffs want to exclude anyone and everyone from competing with them to sell a beer that, in their opinion, has an association with the history and culture of Cuban beer.  Such a tactic is unfair and unlawful.

Plaintiffs claim of "reputational harm" caused by Defendant associating itself with the Cuban community is not actionable. See *Ecomed, LLC v. Ashahi Kasei Medical Co., Ltd.*, 2017 WL 7795446 (S.D. Fla April 28, 2017) citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) ("no cause of action exists for tortious interference with a business's relationship with the community at large."); <u>see also</u> *Southern Alliance Corp. v. Winter Haven,* 505 So.2d 489, 496 (Fla. 2d DCA 1987).  Likewise, the claim for loss of "good will" is not actionable. Good will requires facts demonstrating (1) what profit the business made over and above an amount fairly attributable to the return on the capital investment and to the labor of the owner, and (2) the reasonable prospect that this additional profit will continue into the future, considering all circumstances existing and known as of the date of the valuation. No such facts are pled in the proposed amendment.  See *Kestenbaum v. Falstaff Brewing Corp.*, 575 F.2d 564, 574 (11th Cir. 1978), relying on *Standard Oil Co. v. Moore*, 251 F.2d 188, 219 (9th Cir. 1957).  Likewise, the claim for "commercial harm" is not supported by any facts to distinguish it from the other types of harm alleged and which Plaintiffs have already stated they will not pursue.  Finally, as to Plaintiffs claim for "proxy" damages (Doc. 47-2, para. 139), those too are not actionable.  In *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1355 (11th Cir. 2019) the court questioned the nature of the remedy was different from disgorgement, but ultimately rejected the remedy because the plaintiff stipulated it was not seeking any actual damages or lost profits, and had refused to provide information relating to its sales or other information to calculate lost sales or profits.  (*Id.* at 1359-1360.)  The recent November 12, 2024 decision in *National Pesto Industries, Inc. v. U.S. Merchants Financial Group, Inc.*, 2024 WL 4746280 (8th Cir. 2024) evaluated the "proxy" claim as a damage model seeking to compare the defendant's profits with

the plaintiff's lost sales and profits. (*Id*. at *3-6). As discussed above, Plaintiffs here have agreed not to seek such damages, and therefore, the claim is not appropriate.

## VI.   <u>LACK OF MEET AND CONFER</u>

Local Rule 7.3(a)(3) requires counsel for the moving party to confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties affected by the relief in a good faith effort to resolve by agreement the issues to be raised in the motion, and cautions that failure to do so may be cause for the Court to deny the motion. Where counsel fails to comply with the Local Rule 7.3(a)(3), the district can deny the motion. *Whatley v. World Fuel Services Corp.*, 20-20993-MC, 2020 WL 4818924, at *4 (S.D. Fla. Aug. 19, 2020).

Here, Plaintiffs' counsel did not conduct a "good faith" meet and confer in person on August 20, 2024 regarding adding Martin Wadley as an individual defendant. (See Farrow Decl., para. 15; Doc. 47, p. 11.) In fact, it was not until the evening of November 11, 2024 that Plaintiffs' counsel sent two emails stating Plaintiffs would be adding Mr. Wadley as a defendant in their motion to amend. (See Farrow Decl., paras. 21-22.) While Plaintiffs' counsel did send a copy of the proposed amendment to Defendant's counsel on the morning of November 13, 2024 for him to review, assess and comment on the 51-page document in a matter of hours, Defendant's counsel was unable to accommodate that narrow time frame and informed Plaintiff's counsel of the same. (See Farrow Decl., para. 23.) Respectfully, Plaintiffs failed to comply with both the letter and spirit of Local Rule 7.3(a)(3), and accordingly this Court should deny the pending motion.

Respectfully submitted this 27th day of November, 2024

*/s/ Joseph A. Sacher*

JOSEPH A. SACHER
Florida Bar No. 174920
GORDON REES SCULLY MANSUKHANI, LLP
Miami Tower, Suite 3900
100 SE Second Street
Miami, FL 33131
Telephone: (305) 428-5339
Email: jsacher@grsm.com

Jeffrey D. Farrow, Esq.
(Admitted Pro hac Vice)
MICHELMAN & ROBINSON, LLP
17901 Von Karman Avenue, 10th Floor
Irvine, CA 92614
Telephone: (714) 557-7990
Email: jfarrow@mrllp.com

*Attorneys for Defendant*
*Soltura, LLC dba Bucanero USA*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2024, the foregoing was filed with the Court's CM/ECF system, providing notice to all counsel of record.

*/s/ Joseph A. Sacher*

Joseph A. Sacher, Esq.